24 CV 02219

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

HUZHOU CHUANGTAI RONGYUAN INVESTMENT MANAGEMENT PARTNERSHIP, HUZHOU HUIHENGYING EQUITY INVESTMENT PARTNERSHIP, and HUZHOU HUIRONGSHENG EQUITY INVESTMENT PARTNERSHIP,

        Plaintiffs/Judgment-Creditors,

        v.

Judgment-Debtor HUI QIN (a/k/a MUK LAM LI, LI MUK LAM, HUI HUI QIN, KARL QIN, HUI QUIN), DUO LIU (a/k/a EMMA LIU), XUEMIN LIU, RUOLEI LIU, XUEYUAN HAN (a/k/a HANK HAN), HANGYUAN ZHANG, BRYN MAWR TRUST COMPANY OF DELAWARE, TRIDENT TRUST COMPANY, ST. TOME LLC, ST. FORTUNE GROUP LLC, LUXURY TEAM, INC., ST. GRAND CEREMONY LLC, KING FAME TRADING (BVI), PH2003 UNIT LLC, APPLEGREEN LLC, LUBAN CONSTRUCTION INC., ST HUDSON GROUP LLC, GOLDEN PEGASUS LLC, GOLDEN LITTLE ELEPHANT INC., GOLDEN KIRIN LLC, HARUSHIO LLC, GOLDEN LITTLE DRAGON, GOLDEN MERMAID LLC, HATAKAZE LLC, QYNM FAMILY HOLDING LLC, HS-QYNM FAMILY, INC. QIN FAMILY TRUST, I LOVE GLE TRUST, APPLEGREEN FAMILY TRUST, MASTERPIECE HOLDING GROUP LTD., NEW LAND CAPITAL LLC, YOUYORK MANAGEMENT LLC, GOLDEN LAND FUNDS LLC, MAXIM CREDIT GROUP LLC, HFRE, LLC, JOHN AND JANE DOES 1-20,

        Defendants.

Case No. _____

## COMPLAINT

Plaintiffs/Judgment Creditors Huzhou Chuangtai Rongyuan Investment Management Partnership ("Chuangtai Rongyuan"), Huzhou Huihengying Equity Investment Partnership ("Huihengying"), and Huzhou Huirongsheng Equity Investment Partnership ("Huirongsheng") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby allege the following against Judgment Debtor Hui Qin ("Qin") (a/k/a Muk Lam Li, Li Muk Lam, Hui Hui Qin, Karl Qin, Hui Quin), Duo Liu (a/k/a Emma Liu), Xuemin Liu, Ruolei Liu, Xueyuan Han, (a/k/a Hank Han), Hangyuan Zhang, Bryn Mawr Trust Company of Delaware, Trident Trust Company, St. Tome LLC, St. Fortune Group LLC, Luxury Team, Inc., St. Grand Ceremony LLC, King Fame Trading (BVI), PH2003 Unit LLC, Applegreen LLC, Luban Construction Inc., St. Hudson Group LLC, Golden Pegasus LLC, Golden Little Elephant Inc., Golden Kirin LLC, Harushio LLC, Golden Little Dragon LLC, Golden Mermaid LLC, Hatakaze LLC, Qynm Family Holding LLC, HS-QYNM Family, Inc., Qin Family Trust, I Love GLE Trust, Applegreen Family Trust, Masterpiece Holding Group Ltd., New Land Capital LLC, YouYork Management LLC, Golden Land Funds LLC, Maxim Credit Group LLC, HFRE, LLC, and John and Jane Does 1-20 (collectively, the "Defendants"):[1]

---

[1] Unless otherwise indicated, all references to "ECF" are the docket filings in *Huzhou Chuangtai Rongyuan Investment Management Partnership et al. v. Qin*, 1:21:cv-09221-KPF (S.D.N.Y. Nov. 8, 2021). All references to "Dep" are Qin deposition transcripts filed in the above-referenced case. Pages 1-227 of the deposition are Qin's January 30, 2023 deposition in ECF 108-11; Pages 228-392 of the deposition are Qin's April 24, 2023 deposition in ECF 176-9; Pages 393-482 are Qin's April 25, 2023 deposition in ECF 176-10; Pages 483-599 are Qin's May 3, 2023 deposition in ECF 176-11. References to Bates-stamped documents are documents that have been produced to Plaintiffs through post-judgment discovery.

**Table of Contents**

I. Summary ........................................................................................................ 7

II. Background of Debt .................................................................................... 12

III. Jurisdiction ............................................................................................... 13

IV. Venue ......................................................................................................... 17

V. Debtor Qin's Concealment of Assets and Transfers ................................. 17

    A. History of the Proceeding to Obtain Information with Reasonable Diligence. ............... 17

        1. Qin Violates the Expedited Discovery Order ........................................ 20

        2. Qin Violates the January 23, 2023 Order Setting Qin's Deposition ..................... 22

        3. Qin Violates This Court's January 30, 2023 Order to Answer Questions ............... 23

        4. Qin Repeatedly Violated Court-Ordered Interrogatories and Deposition Processes to Conceal His Assets and Use of Shills and Alter-Egos ................................................ 25

    B. Qin Lied to This Court and Other Courts ...................................................... 27

    C. Qin's Lies About Assets and Business Records ............................................ 29

        1. Qin Denies or Contradicts Representations Made by His Counsel ............... 37

        2. Qin Breaks the Law and Uses Fake IDs ......................................... 40

        3. Qin's Story of Unparalleled Charity from Unknown Friends ................. 41

    D. Qin Destroys Documents and Conceals the Sham Transfers. ..................... 43

        1. Qin Destroys Assets, Spoliates Evidence, Refuses to Produce Documents, and Violates a Restraining Notice Issued Under CPLR 5222(b) ................................... 43

        2. Qin Creates a Fraudulent Document: The Fake Schedule of Assets ............. 50

    E. Qin Lies About Where He Lives ..................................................................... 51

    F. Qin's Fake Divorce ....................................................................................... 53

VI. Entities and Persons Involved as Shills, Alter-Egos, and Conspirators. .................. 57

    A. Duo "Emma" Liu ........................................................................................... 57

    B. Emma and Qin's Co-Conspirators ................................................................ 63

        1. Xuemin Liu ......................................................................................... 63

        2. Ruolei Liu ........................................................................................... 64

        3. Xueyuan Han, a/k/a Hank Han ........................................................ 65

        4. Hangyuan Zhang ............................................................................... 66

        5. Bryn Mawr Trust Company .............................................................. 66

        6. Trident Trust Company ..................................................................... 66

    C. Emma and Qin's Entities are Shams and Part of the Schemes ................... 67

    D. SMI Holdings Group Limited ........................................................................ 69

    E. St. Fortune Group LLC .................................................................................. 70

    F. St. Tome LLC .................................................................................................. 71

    G. St. Hudson Group LLC .................................................................................. 73

    H. St. Grand Ceremony LLC ............................................................................. 74

I.   PH2003 Unit LLC...........................................................................................75
J.   Golden Pegasus LLC.....................................................................................76
K.   Golden Little Elephant Inc............................................................................77
L.   Golden Kirin LLC..........................................................................................78
M.  Harushio LLC................................................................................................79
N.   Golden Little Dragon LLC, Golden Mermaid LLC & Hatakaze LLC.............79
O.   Qynm Family Holding LLC............................................................................79
P.   HS-QYNM Family, Inc. .................................................................................80
Q.   Luban Construction, Inc................................................................................80
R.   Qin Family Trust...........................................................................................81
S.   I Love GLE Trust...........................................................................................82
T.   Applegreen Family Trust or Applegreen Trust...............................................82
U.   Other Offshore Entities Qin Uses with No Explanation..................................83
VII.   Qin's Assets Hidden Through Disguised Ownership and Control....................83
A.   39 Applegreen Drive......................................................................................84
B.   Penthouse Suites at the Plaza Hotel..............................................................85
C.   377 Rector Place...........................................................................................88
D.   35 Applegreen Drive......................................................................................89
E.   Luxury Vehicles – Rolls Royce and Mercedes................................................89
VIII.   Bank Accounts Used in the Scheme ............................................................91
A.   Qin's Standard Chartered Bank Account (█████).........................................91
B.   Qin's Cathay Bank Account (█████) ...........................................................93
C.   Qin's Chase Bank Account ████████████████..................................93
D.   Qin's transfers from SMI HSBC Account.......................................................94
E.   Qin's transfers from Li Muk Lam alias (HSBC account)..................................94
F.   Emma Duo Liu's Bank Accounts ...................................................................95
     1.   East West Bank Accounts.......................................................................95
     2.   Chase Bank Accounts ............................................................................98
G.   TD Ameritrade.............................................................................................100
H.   Axos Bank....................................................................................................101
I.   Qin's Securities Account with Guotaijunan International (████████████) and
     Five Undisclosed Citibank Accounts.............................................................101
J.   Seiden Law LLP's TD Bank Account (████████) ......................................102

IX. Sham Fraudulent Transfers From Qin to His Co-Conspirators .......................................... 102

   A. Transfers from Qin to Duo Liu ...................................................................................... 102

   B. Transfers from Qin to ███████ ................................................................................ 103

   C. Transfers from Qin to Qin .............................................................................................. 103

   D. Transfers from Hank Han to Qin and Various Entities ............................................... 103

   E. Total amount of Qin's St. Tome Credit Cards .............................................................. 103

   F. St. Tome LLC Payments to Qin ..................................................................................... 103

   G. Attorney's Fees Payments to Seiden Law Group and Xue & Associates ...................... 103

   H. TD Ameritrade Transfers ............................................................................................... 103

X. Count 1 – Disregard of Sham Transactions ......................................................................... 103

XI. Count 2 – Declaration of Alter Ego ................................................................................... 105

XII.    Count 3 – Racketeering/Civil RICO .............................................................................. 107

   A. The Racketeering Enterprise ......................................................................................... 107

   B. Objectives of the Enterprise .......................................................................................... 108

   C. RICO Conspiracy ........................................................................................................... 109

   D. Means by which the Object of the Conspiracy was to be Accomplished ....................... 110

   E. Relatedness and Continuity ........................................................................................... 111

   F. Injury .............................................................................................................................. 112

   G. Overt Acts ...................................................................................................................... 112

      1. Qin's Failure to Perform His Contractual Obligations to Plaintiffs ....................... 112
      2. The CIETAC Award and Plaintiffs' Efforts to Enforce it in New York ................. 115
      3. Defendants' Fraudulent Transactions Regarding Qin's Assets ............................... 115
      4. Qin's Concealment of His Bank Accounts ............................................................. 119
      5. Defendant Qin's Interstate Travel and Procurement of Fraudulent Florida Driver's
         License in Furtherance of the Activities of the Qin Enterprise .............................. 120
      6. Qin's Obstruction of Justice ................................................................................... 121
      7. Wire Fraud .............................................................................................................. 122

XIII.   Count 4 – Violation of GBL §133 (Use of Name or Address with Intent to Deceive) .. 127

XIV.   Count 5 – CivilizAsian Foundation is a Sham Charity ................................................. 128

XV.   Count 6 – Conspiracy .................................................................................................... 130

   A. Objects of the Conspiracy .............................................................................................. 130

   B. Manner and Means of the Conspiracy .......................................................................... 130

   C. Overt Acts ...................................................................................................................... 130

XVI.   Count 7 – Preliminary and Permanent Injunction ....................................................... 131

XVII.   Count 8 – Alternate Claim for Fraudulent Transfer (actual) ....................................... 132

XVIII.   Count 9 – Alternative Claim for Constructive Fraudulent Transfer ......................... 135
XIX.   Prayer for Relief................................................................................................ 135

## I.    Summary

1.      Judgment Debtor, Mr. Hui Qin (a/k/a "Muk Lam Li," "Li Muk Lam," "Hui Quin," "Hui Hui Qin," "Karl Qin")[2], was on the Forbes' list of billionaires in 2018. Now despite sometimes living in two penthouse apartments at the Plaza Hotel, or sprawling mansions on Long Island, or another penthouse apartment in a luxury residential building near Battery Park, and despite driving multiple Rolls Royces and a Maybach—Qin claims to be impoverished. He, individually, owes Plaintiffs over $500 million. *See* ECF 411 at 20 ("The Judgment at issue exceeds $500 million; the interest alone is accruing at a rate of more than $80,000 per day."). This Court issued the judgment. Plaintiffs file this suit to disregard or unwind Qin's sham transactions and his creation of sham entities, assess liability on his alter egos and conspirators, and prevent Qin's assets from moving further.

2.      This Court dissolved the automatic stay on collection because of the "well-founded risk that [Qin] is concealing or will conceal assets to avoid collection of the judgment," and put Qin's counsel "on notice that [Plaintiffs' counsel] believes that Qin is hiding assets and is transferring them"; and Qin's transfers of multimillion-dollar properties for ten dollars each to family and in-laws may not be "for genuine business purposes." *See* ECF 61 at 2-3; ECF 64 at 2; ECF 106-10 at 23:22-25. The Court has since reaffirmed that "so far as the Court has been able to intuit from this litigation," Qin's assets "are scattered all over the world, and some appear to have been transferred to others to prevent their discovery." ECF 411 at 20.

3.      Qin tells "an incredible story about his lifestyle being funded by the generosity of friends whose names [Qin] has conveniently forgotten." ECF 136 at 20:9-18.[3] Qin lived with his

---

[2] Qin was arrested prior to fleeing the country using the passport and driver's license of Muk Lam Li. As of this Complaint, he remains in federal custody.

[3] For example, Qin ███████████████████ Dep. 15:8-19:21.
███████████████████████████████
██████████ *Id.* at 113:14-114:3; 106:20-107:16; 135:19-136:6. Likewise, the Singapore nightclubs paying Qin are ████████████████████████████████
*Id.* at 290:2-5. Qin did not produce Singapore tax records by the Court's deadline. Qin justified his failure to

supposed "ex" wife for years after their purported divorce – Duo "Emma" Liu ("Liu" or "Emma"). Qin regularly causes a friend to pass money ████████████████████ ████████████████████████████████████████████ Dep. 436:5-10. ████████████████████████████████████████████

████ . *Id.* at 437:5-19. ████████████████████████

████████ *See Id.* at 37:10; 38:15-20; 40:7; 80:17; 87:16-17, 22; 109:14-19. A few weeks later, ████████████████████████████████████████ *Id.* at 316:6-12. Reversing himself again, ████████████████████████████████████ ████████████████████████████████████████████

████████ *Id.* at 494:17-495:3; 495:14-17; 496:7-12; 502:5-20; 565:17-566:4. ████████████████████ *id.* at 496:13-16, ████████████

████████████████████████████████████ *Id.* at 439:17-440:2.[4]

According to a criminal detention application against Qin by the federal government, over the past half-decade, Qin has frequently flown on privately chartered aircraft, using fake names, to China and Europe. *See USA v. Hui*, No. 2:23-mj-00865-JMW (E.D.N.Y.), ECF 5 at 3-4.

    4.    Qin would rather destroy assets than let creditors seize them. ████ ████████████████████████████████████████████

timely produce these records by telling the unbelievable story that ████████ ████████████████████████████████████████ *Id.* at 337:18-339:8.

---

[4] Qin can easily disappear. The federal government successfully applied for Qin to be detained without bond based on his ability to flee the country. *Hui*, No. 2:23-mj-00865-JMW, ECF 8 at 1-3. The federal government noted that Qin often traveled internationally using fake names, and that Qin had illegally purchased fake documentation, including a fake passport and fake ID card under the name Muk Lam Li. *Hui*, No. 2:23-mj-00865-JMW, ECF 5 at 2. The High Court of Hong Kong held: "[Qin] holds a HKID card in the name of Li Muk Lam (李木林) which bears a date of birth different from that stated in his passport"; in four months, Qin made "4 arrival 4 departure records under the name 'Li Muk Lam.'" *See* ECF 106-8 (*Goldteam* ¶ 12). Qin testified that he "████████ ████████████████████████" Dep. 202:3-203:2. (The names Li Muk Lam and Muk Lam Li are variations of each other, with the difference depending on whether one puts the family name "Li" first, according to Chinese usage, or last, according to Western usage.) Qin's sworn deposition testimony that ████████ ████████████ contradicts Qin's statements to the FBI, during which Qin stated that he purchased the Muk Lam Li identification from a corrupt Chinese official by using around 100,000 of an unknown currency in 2008. *Hui*, No. 2:23-mj-00865-JMW, ECF 5 at 2. Qin stays in hotels under other people's names, and he uses "████████████████" or "████████████████████" Dep. 112:10-113:2; 114:21-115:5. Qin declared he wants to "████████." *Id.* at 334:-17-18. Qin has a "████████████████" *Id.* at 290:11-12.



Dep. 184:2-8. ██████████████████████████ .[5] *See also* ECF 411 at 7 (THE COURT: Qin ████████████████████████████ ").



5.      The District Court sanctioned Qin twice and held him in contempt twice for violating "each and every one" of the Court's discovery orders. ECF 136 at 17:8-11; ECF 243 at 1-3; ECF 237-1 at 101:17-102:3.

6.      The District Court found "strong evidence" that Qin "engaged in the spoliation of evidence." ECF 234 at 2. Among other things, Qin spoliated evidence by giving it to an assistant to remove it from the United States. Specifically, ███████████████████ " St. Tome LLC (the company based in his house), but " ███████████████████████

████████ " Dep. 210:11-211:7; *see also* ECF 136 at 18:24-19:12 (THE COURT: "Even worse, he has completely refused to produce documents that he admits exist and are responsive to petitioners' requests. For instance, he had an assistant take a responsive document, a written consulting agreement with St. Tome, a company from which he receives funds each month, to Singapore, and he refuses to produce a schedule of assets connected with a deed of gift for his

---

[5] ██████████████ " *Id.* at 184:22-24. ████████████████████████████ . *Id.* at 185:2-4. But, ████████████████████████████████████████████████████ *Id.* at 185:11-13.

███████████████████████████████████████████████████

███ ."). Despite having a $15 million mansion and two penthouses, Qin claimed he had sent

the consulting agreement to Singapore because ███████████████████████

█████████ " and " █████████████████████████ ." Dep. 211:4-7.

    7.    Later, ████████████████████████████████████████

████████████████████████████████████████████████ .

ECF 176-13 at 15-16. Qin then claimed that, ███████████████████████████

███████████████████████████████████ Dep. 534:1-10; *id.* at

451:7-13 ██████████████████████████████ Not only did this testimony

contradict Qin's previous testimony ████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████ . Qin's counsel previously

represented that "Qin has no responsive documents, Your Honor [about] storage facilities," ECF-

106-1 at 33:23-34:1, and Qin had sworn he never used storage units: "█████████████

████████████████████████████ " Dep. 589:16-590:4.

    8.    Despite a November 1, 2022 court order expediting discovery, Qin failed to

produce "a single document in the three months following the entry of the Judgment." ECF 411

at 5; *see also* ECF 106-1 at 35:19-24 (January 20, 2023 hearing transcript) (Qin's counsel: "We

have been producing documents – we started on January 10th. . . . This is the beginning."). The

Court entered a production deadline of April 21. *See* ECF 136. Qin failed to produce a single

responsive email, WeChat, or text message prior to this deadline.

    9.    Qin provided a plethora of excuses for failing to produce documents by the

Court's deadlines. As to Qin's failure to produce any WeChat and text messages prior to April

21 deadline, Qin testified that it was because █████████████████████

████████████████████ ." Dep. 465:8-10. Similarly, after failing to produce a single

email by the Court's deadline, Qin testified: " ████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ *Id.* at 260:3-10; 301:12-13; 430:10-11; 430:19, 467:24-25; 574:13; 576:25-577:2; 577:12-13.

      10.    On April 18, 2023, the District Court ordered Qin to produce his WeChat messages with ten people; for nine, Qin produced no communications predating the 4/18 order. Qin admitted: ████████████████████ *Id.* at 461:24-25. This Court ██████████ ████████████████████████ ; it was ████████." *Id.* at 359:4-10. ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ *Id.* at 461:23-24. Qin rejects this Court's judgment: ██████████████████ *Id.* at 287:16-21. Asked if he will "██████ Qin announced: ████████████████████

████████████████████████████████████████████████████████

██████████████████████ *Id.* at 288:14-23; *see also* ECF 237-1 at 77:25-78-3 (THE COURT: "So when he says, 'I will never pay. Even if you shoot me dead right now or you lock me up in jail or you put me in jail, I will not,' I should not worry about that? It just seems to me like contempt."). Indeed, the District Court found Qin in contempt.

      11.    Qin claims not to know who pays for his lifestyle. But he has ████████████ ████████████████████████████████████████████████ " Dep. 107:9-16. "██████████████████████████████████████████████████████ ██████ *See* ECF 108-9. ██████████████████████████████ ████████████████████████████████████ . Dep. 218:10-219:8.

      12.    ████████████████████████████ . Dep. 165:16-166:3 ████████████████████████████████████████████████ . *Id.* at 140:18-141:8 ██████████████████████████████████ ") ████████████ ██████████████████████ . *Id.* at 141:9-11; 148:3-149:11.

13.    Because of this, Plaintiffs only know about *some* of the shills and conspirators involved in Debtor's hiding of assets. It is likely that others exist. Any delay in bringing this action was the result of Qin's efforts to conceal, including his misrepresentations, and the delayed production of documents from (and deposition of) Emma Liu, his main conspirator and wife. As the Court held, albeit in a different context, "it is due to [Qin]'s gamesmanship, and not some failing on [Plaintiffs'] counsel's part"; this is because Qin "has stymied Petitioners at every step of discovery." ECF 411 at 20. In particular, the Court described "Qin's impenitent refusal to abide by court orders, particularly insofar as they pertain to post-judgment discovery." *Id.* at 1.

## II.    Background of Debt

14.    This suit aids in the collection of the judgment entered by this Court on October 11, 2022, against Qin in an action entitled *Huzhou Chuangtai Rongyuan Inv. Mgt. Partnership et al. v. Qin*, Case No. 21 CIV. 9221 (KPF) (S.D.N.Y. Oct. 11, 2022) (the "Confirmation Action").

15.    On September 26, 2022, this Court granted summary judgment in favor of Plaintiffs in the Confirmation Action (the "Sept. 26 Order"). In the Sept. 26 Order, this Court determined that the underlying China International Economic and Trade Arbitration Commission ("CIETAC") arbitral award ("CIETAC Award") should be enforced because none of the four defenses to enforcement under the New York Convention articulated by Qin applied. *See* ECF 44 at 13-27. Specifically, this Court found that (i) the Supplemental Agreement between the parties was valid; (ii) Qin was given proper notice of the arbitration and was able to present his case; (iii) the arbitration was conducted in accordance with the terms of the Supplemental Agreement; and (iv) public policy considerations support enforcing the award. *Id.*; *see also* ECF 411 at 3.

16.    On October 11, 2022, this Court entered a final judgment (the "Judgment") in the Confirmation Action. The Judgment awards Plaintiffs:

(i) money damages in favor of Plaintiffs in the following aggregate amounts:

   a.  For Chuangtai Rongyuan: $148,648,643.71, plus ongoing contractual daily interest of $29,311.88;

    b.  For Huihengying: $147,428,491.49, plus ongoing contractual daily interest of $29,348.48;

    c.  For Huirongsheng: $147,382,728.28, plus ongoing contractual daily interest of $29,350.67;

(ii) specific performance, ordering Qin to transfer the 5% equity in Chengdu Run Yun held by Qin and Shenzhen SMI Shengdian Cultural and Media Group Co. Ltd. to Plaintiffs, to be evenly distributed among Plaintiffs; and

(iii) post-judgment interest as mandated in 28 U.S.C. §1961. *See* Confirmation Action, ECF 46.

17.    As of the date of this Complaint, the outstanding Judgment is $490,105,709.38. More than one year after the Court entered the Judgment, not one penny of the Judgment has been paid.

18.    Instead of paying any of the Judgment, or the CIETAC Award, Qin fraudulently used go-betweens, shills, and sham transactions with alter-ego entities and conspirators to hide his assets from creditors.

### III.   Jurisdiction

19.    The Court has subject matter jurisdiction under 28 U.S.C. §1331 (federal question), based on 18 U.S.C. §1961(4) (RICO statute), and 28 U.S.C. §1367 (ancillary jurisdiction). This Court also has jurisdiction and the inherent power to interpret and enforce its own orders relating to the conduct of Qin, as his violations of orders (often in concert with others) constitute some of the complained of wrongs.

20.    Personal jurisdiction exists over each Defendant.

21. Personal jurisdiction exists over Qin because, inter alia, Qin resides in this District. This Court established jurisdiction over Qin in the Confirmation Action.

22. Personal jurisdiction exists over Liu because Liu resides in this District. Qin's racketeering enterprise worked with Liu in this District.

23. Personal jurisdiction exists over Xuemin Liu because Xuemin Liu resides in this District and the actions of the conspiracy were directed towards real property located in this District.

24. Personal jurisdiction exists over Ruolei Liu because Qin directed money to him in China from this District and Ruolei Liu directed wires into New York, making them on behalf of Qin and as a shill and part of the conspiracy. Upon information and belief, Ruolei Liu also currently resides in this District. ███████████████████████, an entity used by Qin as part of his conspiracy and scheme operated from addresses in this District.

25. Personal jurisdiction exists over Xueyuan Han because Xueyuan Han resides in this District, owns property in this district, and the actions of the conspiracy were directed towards real property located in this District. Xueyuan Han is also listed as the CEO of HS-QYNM Family Inc, an entity used by Qin as part of his conspiracy operated from addresses in this District.

26. Personal jurisdiction exists over St. Tome LLC because St. Tome was formed and funded by Liu in 2019. St. Tome has its principal place of business at 39 Applegreen Drive (the "39 Applegreen Property") in Woodbury, NY, and Liu is Qin's primary contact at St. Tome. St. Tome paid Qin $60,000 in 2021. The nature of St. Tome's payment to Qin was described by him as ███████████ St. Tome holds an account at East West Bank, which it used to receive cash injections from Liu, and has been used to pay expenses. ████████████████ ███████████████████ herein and that card was delivered to a New York address and used in New York.

27. Personal jurisdiction exists over St. Fortune Group LLC because St. Fortune Group LLC has its principal place of business in Qin's house on Applegreen Drive. St. Fortune

Group LLC was used by Qin as part of his conspiracy and schemes operated from addresses in this District. St. Fortune Group LLC holds banks accounts registered to the address on Applegreen Drive. St Fortune Group LLC's member, Liu, resides in the District. Upon information and belief, St. Fortune Group LLC's member, Ruolei Liu, resides in the District.

28.     Personal jurisdiction exists over PH2003 Unit LLC because PH2003 Unit LLC is registered in this District and its sole asset is real estate in this District.

29.     Personal jurisdiction exists over St. Grand Ceremony LLC because St. Grand Ceremony was formed by Liu on April 26, 2019 at the 39 Applegreen Property for the purpose of purchasing a property in New York and its asset, 1 Central Park S #2009, New York, 10019, which was purchased from Luxury Team Inc. on February 5, 2020, is in New York. It was used as part of the conspiracy and schemes that are described below.

30.     Personal jurisdiction exists over Luban Construction Inc. because Luban Construction Inc. was formed by Liu in 2016 for the purpose of purchasing a property in New York and its sole asset was in New York. Luban Construction's principal place of business is in this District. Luban Construction was used as part of the conspiracy and schemes that are described below.

31.     Personal jurisdiction exists over Golden Land Funds LLC as its principal place of business is in this District.

32.     Personal jurisdiction exists over New Land Capital LLC as its principal place of business is in this District.

33.     Personal jurisdiction exists over King Fame Trading Limited (BVI) because its principal place of business is the 39 Applegreen Property. King Fame Trading Limited (BVI) was the former, sole owner of the 39 Applegreen Property from March 2011 to April 2020.

34.     Personal jurisdiction exists over Applegreen LLC because it holds the property which is Liu's current residence in this District.

35.     Personal jurisdiction exists over Luxury Team, Inc. because its principal place of business is in this District.

36.    Personal jurisdiction exists over QYNM Family Holding, LLC because its principal place of business is in this District.

37.    Personal jurisdiction exists over HFRE LLC because its principal place of business is in this District.

38.    Personal jurisdiction exists over HS-QYNM Family Inc because its principal place of business is in this District.

39.    Personal jurisdiction exists over Golden Little Elephant Inc. because its principal place of business is in this District.

40.    Personal jurisdiction exists over Golden Little Dragon LLC because its principal place of business is in this District.

41.    Personal jurisdiction exists over Golden Mermaid LLC because its principal place of business is in this District.

42.    Personal jurisdiction exists over Golden Pegasus LLC because its principal place of business is in this District.

43.    Personal jurisdiction exists over Golden Kirin LLC because its principal place of business is in this District.

44.    Personal jurisdiction exists over Harushio LLC because its principal place of business is in this District.

45.    Personal jurisdiction exists over Hatakaze LLC because its principal place of business is in this District.

46.    Personal jurisdiction exists over Hangyuan Zhang because, upon information and belief, he resides in this District. Hangyuan Zhang is registered as the service of process agent for New Land Capital LLC and Golden Land Funds LLC, two limited liability companies registered in this District.

47.    Personal jurisdiction exists over YouYork Management LLC because its principal place of business is in this District.

48.    Personal jurisdiction exists over Masterpiece Holdings Group Ltd. because it made significant transactions with entities that are registered or have their principal place of business in this District.

49.    Personal jurisdiction exists over Bryn Mawr Trust Company because it made significant transactions with assets located in this District and entities that are registered or have their principal place of business in this District.

50.    Personal jurisdiction exists over Maxim Credit Group, LLC because it is registered to conduct business in this District and actively transacts business in this District.

51.    Personal jurisdiction exists over Trident Trust Company because it received funds from this District to establish and maintain a trust on behalf of residents of this District.

52.    Does 1-20 are persons whose identity are unknown but who acted as shills or "assistants" to Qin in his scheme, holding money or assets for him, or owning entities that he uses and controls. This Complaint will be supplemented with their true identities when they become known.

53.    For the reasons set forth above, each Defendant is subject to this Court's personal jurisdiction.

### IV.    <u>Venue</u>

54.    Venue is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events and omissions giving rise to this action occurred in this judicial district and a substantial part of the properties and assets subject of this action are situated in this judicial district.

### V.    <u>Debtor Qin's Concealment of Assets and Transfers</u>

### A.    History of the Proceeding to Obtain Information with Reasonable Diligence.

55.    On October 11, 2022, the Judgment was entered in Plaintiffs' favor.  As of the filing of this Complaint, Qin has not paid any of the Judgment and the Judgment remains unsatisfied.

56.    Over ten months after the Judgment was entered, the District Court stated that Qin had "violated each and every one" of the District Court's discovery orders, including its orders issued on November 1, 2022 (expediting discovery); January 23, 2023 (setting deposition); January 30, 2023 (compelling Qin to answer questions); April 18, 2023 (compelling production of documents by April 21); and August 17, 2023 (compelling production of documents and passwords) (the "August 17 Contempt Hearing") ECFs 243; 64; 106-1; 100; 108-11; 136; 237-1; 243.  This history is set forth in more detail below.

57.    On October 28, 2022, the Court dissolved the automatic stay imposed by Rule 62(a) to permit Plaintiffs to immediately enforce the Judgment.  *See* ECF 61.  In doing so, the Court acknowledged that "accelerated collection is necessary...to prevent Qin from concealing or dissipating his assets."  *Id.* at 1-2.

58.    On November 1, 2022, this Court granted Plaintiffs' request for expedited discovery.  *See* ECF 64.

59.    At a November 18, 2022 conference, counsel for Qin told this Court that "we have all responsive documents that the Xue firm had," that "we are working . . . to collect responsive documents," and "assure[d]" the Court that they would not "produce something less than [they] should." ECF 85 at 20-22. However, until January 9, approximately three months after the Judgment, Qin had failed to produce a single document. ECF 108 at 2-3. As further stated below, Qin has refused and failed to produce documents even after the District Court ordered him to do so multiple times. Even at the District Court's August 17 Contempt Hearing,

Qin's counsel admitted that almost all the document requests were still outstanding. ECF 237-1 at 61:9-15, 61:20-62:15, 63:4-5, 63:24-65:12, 67:5-11, 69:5-6, 70:8-10, 71:5-72:12.

60.    Despite the Court's order for expedited discovery, Qin did not produce a single page of documents until January 10, 2023, the "day after Petitioners filed their letter request" seeking a court conference to discuss Qin's compliance with post-judgment discovery. ECF 411 at 5. Qin "produced 82 documents, 81 of which were public, including court documents." *Id*; *see also* ECF 111 at 6.

61.    On January 20, 2023, the Court conducted a conference, and found that Qin's productions were "woefully inadequate"; the Court has also described Qin's "meager productions" as "obstructionist," full of "deficiencies" and "shortcomings," and "focused on publicly available documents." ECF 106-1 at 16; ECF 411 at 4-5. At the conference, the Court ordered Qin to appear for a deposition on January 30, 2023, which was subsequently continued three times. During the January 20, 2023 conference, the Court held that "it defies belief that [Qin] can live the lifestyle he leads and have no money." In addition, the Court also made it clear that Qin's counsel had not "[satisfied] their obligations," and "Mr. Qin [had not] satisfied his obligations based on everything [the court is] hearing." ECF 106-1 at 46:21-25.

62.    Throughout his depositions, Qin lied, evaded questions, and concealed transfers by continuing to lie about where his assets were, where he lives, his purported divorce, and the nature of his control of his assets. Those lies delayed discovery of the assets and claims brought herein. Qin's deposition testimony was "obstructionist" and consisted of "irrelevant speaking objections rather than answering the questions posed." ECF 411 at 5.

63.    On April 18 of 2023, the Court held that Qin violated three of this Court's orders in his effort to conceal his use of shills, sham transfers, and other fraudulent transactions: (1) the

November 1, 2022 order expediting discovery (ECF 64); (2) the January 23, 2023 order setting Qin's deposition (ECF 100); and (3) the January 30, 2023 order requiring Qin to answer deposition questions (Dep. 67:23-68:13). *See* ECF 136 at 17.

### I.    *Qin Violates the Expedited Discovery Order*

64.    On November 1, 2022, this Court ordered expedited post-judgment discovery into Qin's assets. Despite this order, Qin produced nothing—not one page—for the next ten weeks. One day after Plaintiffs informed this Court of Qin's noncompliance, Qin's counsel suddenly produced 82 documents. But 81 of these were public records (73 of them court judgments against Qin).[6]

65.    On January 13, 2023, Qin produced 47 documents, almost all public records. *32 were duplicates* of documents in the original minimal production. Qin produced a Deed of Gift, which refers to an attached Schedule of Assets. *But the Schedule of Assets was affirmatively removed.*

66.    At 11:46 P.M. on January 19, 2023, the night before a pre-motion conference, Qin produced 49 documents. 46 were public records. Qin produced an amended tax return that *he had created two days earlier*. The original (filed in April 2022) says Qin is married, while the amended return (█████████████████████████████████████████        ████████ █████████

67.    On January 20, 2023, this Court told Qin's counsel: "Respondent's production has been woefully inadequate. . . . [Y]ou had said to me at a prior conference, these things were

---

[6] The District Court found that Qin's "strategy is to produce copious public records on the eve of court deadlines to divert attention from his uncooperativeness" *See* ECF 136 at 19:13-22; *see also* ECF 411 at 10. Qin timed his productions to be on the immediate eve of deadlines and hearings about discovery, apparently to disrupt Plaintiffs' filings and arguments. Qin's January 13, 2023 production was the same day as Plaintiffs' reply letter motion was due; Qin's next production came on January 19, 2023 at *11:46 P.M.*, the night before a pre-motion conference. On February 13, 2023, the eve of Plaintiffs' filing of their motion to compel, Qin's counsel likewise made a production of 5 documents. Qin's counsel admitted in the August 17 Contempt Hearing that "[Qin] produced some public records...even though public records are not the most helpful things to produce." ECF 237-1 at 70:17-19.

gathered together, they were going to be produced. They haven't been." ECF 106-1 at 15:5-6; 24:13-16. If documents are not produced, "there's going to be sanctions." *Id.* at 31:10-11. Further:

> I think it should be clear that I don't think Respondent's counsel has satisfied their obligations. . . . I do not think that Mr. Qin has satisfied his obligations based on everything that I'm hearing. It defies belief that he can live the lifestyle he leads and have no money. It defies belief that he could have no records of his money and that . . . what has been produced is the vast majority of what's going to be produced.

*Id.* at 46:21-47:5.

68.    On January 24, 2023, Qin produced 29 public records, one duplicate, and one other document. On February 2, 2023, Qin produced four more duplicates (removing Defendant's improper redactions).

69.    As of the time of Plaintiffs' motion to compel (filed on February 14, 2023) 200 of the 213 documents produced (94%) were public records. 42 (20%) were duplicates, including five of the 13 non-public documents. Qin produced nothing for 11 of 20 document requests. More than half the pages in Qin's productions were ancient annual reports (2017 or earlier); these documents predate the timeframe in the Requests and were thus nonresponsive.

70.    In response to Plaintiffs' deposition subpoena on written questions, Qin's counsel (Seiden Law Group) identified four banks Qin uses: Cathay Bank, JPMorgan Chase, Standard Chartered Bank, and Citibank. But Qin's former counsel (Xue Law Firm) identified an additional bank: HSBC. *See* ECF 108-13. During Qin's deposition, Qin identified ████████ ████████ Dep. 154:8-9. Pressed about this, ████████████████ . *Id.* at 154:10-23. Qin produced no other bank records, and no records showing the name, address, and phone number of counterparties for transfers greater than $9,000, as required in Request No. 10. Qin's Cathay Bank statements showed a balance of ██████ . But Qin's counsel represented that Qin lives in *both* a $29 million Plaza Hotel penthouse *and* a $15 million mansion. *See* ECF 108-1 at 3. As the Court held, this "defies belief." ECF 106-1 at 46:21-47:5.

71.    Qin produced nothing in response to a request for documents identifying trusts held or controlled by Qin or relevant persons. Yet even the sparse Cathay Bank records refer to a "Qin family trust" and a "Trident Trust." *See* ECF 108-2. ███ transferred ███ to the "███ ███████████████", and again on ██████████, just before this Court's summary judgment ruling in the Confirmation Action. *Id.*

### 2.    *Qin Violates the January 23, 2023 Order Setting Qin's Deposition*

72.    Before being asked one question at his court-ordered deposition on January 30, 2023, Qin announced: ███████████████████████████████████████████" Dep. 10:21-23; ECF 411 at 6.

73.    Over the next 80 minutes, Qin refused to answer questions *24* times. *See id.* at 16:19 ("██████████████████"); 17:14 (same); 18:21-22 (same); 18:25-19:5 ("█████████████████████████████████████" and ████████████████████ ██████"); 19:20-21 ("██████████████"); 24:17-20 █████████████"); 26:9 (██████ █████"); 26:10-11 ("████████████████████████████████████"); 26:17-19 (same); 27:17-19 (same); 27:5-6 (same); 29:11-13 (███████████); 29:16-18 ("█████████ ██████████████████████████████████████████████████"); 29:22-25 ("████████████████████████████████"); 30:16-20 ("████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████"); 31:6 ("██████████████"); 31:12-13 ("███████████ ██████"); 31:15-16 ("████████████████████████████.."); 31:19-22 (████████████████████"); 32:2-5 (███████████████); 37:16-19 (same); 37:22-23 (same); 38:4-6 (same); 38:8-9 (same).

74.    On none of these occasions did Qin's counsel instruct him not to answer.

75.    The Court found Qin's deposition testimony "was obstructionist" and, "[f]rom the inception of his deposition," Qin "made irrelevant speaking objections rather than answering the

questions posed." ECF 411 at 5-6. For "more than an hour of questioning," Qin gave "little substantive response." *Id.* at 6.

### 3.    *Qin Violates This Court's January 30, 2023 Order to Answer Questions*

76.    Plaintiffs sought a court order that Qin answer questions. During colloquy, Qin's counsel attempted to mislead this Court by falsely asserting that ███████████████████ ████████████████████████████████" Dep. at 56:3-5. The Court has found that Qin's counsel was "being misleading" in its "statements to the Court." ECF 411 at 6 n.3.

77.    The Court told Qin's counsel:



Dep. at 59:2-60:24.

78.    This Court then repeated this order directly to Qin:



*Id.* at 67:23-68:16.

79.    Qin responded: "███████████████████████████████████ ██████████████████." *Id.* at 69:4-7.

80.    The deposition restarted, but Qin still refused to answer questions: ████████ ████████████████████████████████████████" *Id.* at 89:8-11; 76:22 ("████████████████"); 88:8-9 (████████████████████████"); 88:12-14

(same); 88:16-17 (same); 114:2-3 ("█████████████████████████

████"); 135:8-9 (████████████████); 135:12-18 (same); 136:10 ("███████████████████.");

136:23 ("No").

81.     Qin also filibustered the deposition with long, off-topic speeches. Asked "██████

████████████████████████████████████████████████████" Qin's

response included: "███████████████████████████"; "

█████"; and "████████████████████████████████████████." *Id.* at 80:22-81:9. As the

District Court found in its April 18 order, "even after the Court's intervention, even after the

Court's instruction, [Qin] continued to flout the proceeding, filibustering with long stories

unrelated to the questions asked, and telling an incredible story about his lifestyle." ECF 136 at

20:4-21.

82.     Asked "███████████████████████████████████████

████████████████████ Qin's response included: "███████████," "[

███████████████████████████"; and "███████████████████████

█████████████████" Dep. at 83:22-84:24.

83.     Asked "███████████████████████████████████████

███████" Qin stated: "█████████████████████████"; and "[

█████████████████████." *Id.* at 96:24-97:25.

84.     In response to "████████████████████████████████ Qin's

answer included: "██████████████████████████████████████" *Id.* at

133:7-11.

85.     Asked if "███████████████████████████████████████," Qin

said: "███████████████████████████████" and "████████████████████

██████████████████." *Id.* at 166:10-167:12.

86.     Qin ignored repeated requests to stop speechifying. *See, e.g., id.* at 9:16-10:10;

25:11-13 ("███████████████████████████████████████

████████████"); 80:7-81:16; 96:24-98:4.

87.    Qin . Qin " ", *see id.* at 15:15. Qin often id. at 29:16-20; 29:22-23; 35:6-8; 81:19-22; 175:13; 198:25, and id. at 12:24-13:3; 28:16-17; 37:12-13; 38:17-18; 39:14-15; 39:16; 74:14-15; 77:2-8; 79:4-5; 87:5-8.

#### 4.    *Qin Repeatedly Violated Court-Ordered Interrogatories and Deposition Processes to Conceal His Assets and Use of Shills and Alter-Egos*

88.    Qin's false answers to court-ordered interrogatories (*see* ECF 136) misled Plaintiffs and wasted deposition time.

*See* ECF 176-12.

89.    The 4/18 Order found that Qin had "violated the Court's order compelling his deposition," through his "recalcitrance" and "lack of cooperation," "thwart[ing]" Plaintiffs by "intentionally fill[ing] the time with unrelated anecdotes and non sequiturs." ECF 136 at 14:1, 14:14-15, 20:4-5, 20:10. Qin "refused to answer nearly every question." *Id.* at 20:7-9. Indeed:

> [E]ven after the Court's intervention, even after the Court's instruction, respondent continued to flout the proceeding, filibustering with long stories unrelated to the questions asked, and telling an incredible story about his lifestyle being funded by the generosity of friends whose names respondent has conveniently forgotten. . . . The Court ordered [Qin] to respond to the questions in good faith, and he did not.

*Id.* at 20:11-21; *see also* ECF 411 at 7 (the Court describing Qin's "numerous transgressions" and "specific violations" of the Court's orders, including violating "its January 23, 2023 order setting Respondent's deposition, and its January 30, 2023 oral decision requiring Respondent to answer deposition questions").

90.    Because of the "severity of [Qin's] violations," "willful violations," and his "repeated efforts to evade disclosure of his assets," this Court held that "a contempt finding could be justified on the existing record." ECF 136 at 21:2-3, 21:19, 23:11-13. This Court

ordered Qin to "answer all questions" at his continued deposition. *See id.* at 15:25. ▮▮▮▮▮
▮▮▮▮▮. *See* ECF 176-13(▮▮▮▮▮).[7]

91.    Plaintiffs ▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.,* Dep. at 238:2-6;
245:5-10; 245:13-17; 250:14-17; 250:22-24; 258:4-9; 267:15-18; 355:15-20; 361:18-25; 364:9-
12; 364:19-20; 366:16-367:3 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮."); 374:5-7; 414:15-22; 429:22-
24; 448:18-19; 453:17-19; 462:5-8; 463:3-6; 464:20-465:4; 521:11-17; 526:4-6; 526:22-527:1;
537:13; 568:18-19; 584:21-22; 586:8-10; 587:18-19.

92.    Asked "▮▮▮▮▮▮▮▮▮▮▮," Qin gave a non-
answer: "▮▮▮▮▮▮." *Id.* at 304:19-21. Asked again, Qin wasted time quarreling:
"▮▮▮▮▮." *Id.* at 304:22-305:2.

93.    Some questions Qin never answered. Asked ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮," *id.* at 256:22-
25. Asked again, he repeated: "▮▮▮▮▮▮▮▮▮
▮▮▮▮" *Id.* at 257:2-8.

94.    Qin ▮▮▮▮▮▮▮▮▮" because
"▮▮▮▮▮▮." *Id.* at 308:6-11. He refused to say what ▮▮▮▮▮
▮▮▮▮▮▮▮▮ *Id.* at 358:19-359:3.

95.    Plaintiffs had to ask ▮▮▮▮▮▮▮▮▮▮▮▮.
*Id.* at 458:14-15; 24-25; 459:15-17; 22-25. Plaintiffs had to ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮. *See id.* 261:25-278:24. Plaintiffs asked Qin ▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮" *Id.* at 280:4-5;
280:19-24; 281:4-10; 281:16-22; 281:23; 282:5-9. Asked about St. Fortune, Qin said: "▮▮▮▮



---

[7] After the parties "▮▮▮▮▮," Qin called Plaintiffs' counsel "▮▮▮▮▮▮▮▮▮▮," Dep.
425:10-426:19. Qin admitted: "▮▮▮▮▮▮▮," including "▮▮▮▮▮," but claimed: "▮
▮▮▮▮▮▮▮" *Id.* at 426:9-19; 428:17-429:9.

████████████████████████████████████████████████████

██████████████████████████████████." *Id.* at 283:4-14. One question later,

Qin admitted: "████████████████████." *Id.* at 283:15-20.

### B.    Qin Lied to This Court and Other Courts

96.    In the Confirmation Action, Qin swore to the Court that "Petitioners knew that I had been living in the United States with my family since 2019." Declaration of Hui Qin (ECF 33), ¶¶ 27-28. Qin's frivolous filings denying service in the underlying arbitration are based on this lie. *See* ECF 67 at 8 (falsely claiming that Qin "has been living in the US since 2019") (quoting ECF 33-6 at 2); ECF 67 at 8 (quoting ECF 33-8 at 2-3); ECF 67 at 17.

97.    Qin testified that, in 2019, he ████████████████████████

████████" Dep. 100:6-103:2-12. Contrary to his sworn assertion ████████████

████████████████████████████████████. *Id.* at 101:5-23; 104:16-24.

98.    Finding Qin in contempt the first time, the District Court held: "[Qin] has lied to me and he has lied at his deposition." ECF 237-1 at 101:8-15 (emphasis added); *see also id.* at 40:8-17 (Qin said "that he understood my orders [and] he would abide by them, but then he didn't. [Qin] has said a number of things, but then they just haven't come true."); *id.* at 37:1-3; 40:2-7 (Qin's testimony "is internally inconsistent" and "makes no sense"); *id.* at 36:10-15 ("I have read the deposition testimony. I just find it incredible. . . . I find that so difficult to believe."); *id.* at 32:4-10 ("I find it impossible to believe").

99.    Qin's 2020 Divorce Decree—obtained by his arbitration counsel during the arbitration—lists the "Building Address" as Qin's "registered address." ECF 56-1 at 7. But Qin falsely swore to this Court someone forged the Building Address in the Supplemental Agreement:

"I did not write it nor do I know who wrote it." ECF 33 at 6.[8] In fact, 89 of the 213 documents Qin initially produced (over 40%) were court judgments naming the Building Address as Qin's address. Plaintiffs requested these judgments in *October 2022*. Qin withheld them until *January 2023*, even though they are not privileged. *See* ECF 108 ¶ 24; ECF 106-1 at 36:8-9 ("[I]t's true, we didn't need the Protective Order [to produce] them."). By withholding the judgments, Qin's counsel prevented Plaintiffs from citing them in the briefing on Qin's Motion for Reconsideration.

100.    The Building Address is just Qin's latest claim of forgery. In 2010, a Hong Kong court held: "Qin Hui's . . . assertion that some unknown person had forged his signature . . . [is] hollow and self-serving" and "is not capable of belief." *See* ECF 106-6 at 1, 11-12. "Qin Hui . . . disputed the authenticity of his signature on the minutes of that meeting as well as that of Mr Qin Hong, his brother," but this "forgery defence flies in the face of the [facts]." *Id.* at 8, 12.

101.    In 2020, Qin again told a court that a "document appears to contain a forgery of my signature," despite the signature having been witnessed. *See* ECF 106-7 at 5. Qin's "defence of forgery . . . bears a striking resemblance to the defence he ran . . . in 2010." *Id.* "[T]he underlying facts . . . are sufficient to show Mr. Qin's dishonesty." *Id.* at 9. There is "a good arguable case that Mr. Qin is a dishonest man" and "the risk of dissipation is shown by solid evidence." *Id.* at 12, 22. Qin's actions had the "sole effect" of causing his creditors to "rack up costs." *Id.* at 41.

102.    In 2021, the High Court of Hong Kong held that "the allegations advanced by [Qin] are incredible," "wholly incredible," "not capable of belief," and "bears all the hallmarks of a recent fabrication and is incredible." *See* ECF 106-8 ("*Goldteam*"), ¶¶ 68, 67, 75, 71. The court held: "There is not a shred of document in support of [Qin]'s allegations," which are

---

[8]   *See also* ECF 28 at 19 (denying "Building Address w[as] Respondent's . . . domicile, habitual residence, or mailing address . . . [] or . . . last known place of business [or] domicile [or] mailing address"); ECF 44 at 17-19, 33 ¶¶ 26-27 (similar); ECFs 66-69 (similar).

"flimsy" and contradict testimony Qin presented under oath in a separate proceeding. *Id.* ¶ 55. There is "a good arguable case that [Qin] is a dishonest man." *Id.* ¶¶ 72, 59, 75.

103.    During the arbitration proceedings, Qin denied receiving a notice sent to him in 2018, even though, as the Arbitration Tribunal later held, Petitioners "presented original mail vouchers, which contain the signature of the recipients." *See* ECF 7-2 at 49.

104.    Qin falsely denied service at an address on Jiangtai Road. ECF 7-1 at 2. Service papers were delivered there but returned by an unidentified individual. *Id.* At his deposition, Qin testified that ██████████████████," which "██████████" and that "████████████████████████." Qin also stated that it is ████████████ ██████████" ████████," where Qin keeps his "████████████" ("████████"). During his deposition, Qin displayed ████████████████████████████ ████████████████████████████████████ ████████████████ Dep. 39:10-18; 102:3-11; 184:1-6; 515:11-516:9.

### C.    Qin's Lies About Assets and Business Records

105.    At the August 17 Contempt Hearing, Qin stated that he only has "a few thousand dollars" and the Court found that it is "just so difficult to believe" that "he is living on the kindness of strangers, or the kindness of friends." ECF 237-1 at 33:21-22, 36:10-15. The Court expressed to Qin's counsel: "There is a disconnect, though, between your current representations to me that your client has no assets and has fallen on hard times and your statement just a moment ago that he conceives of transactions in numbers larger than we can think of and therefore it was not a big deal to burn that money. I don't think there is a way you can reconcile that." *Id.* at 79:14-25. Qin's counsel responded: "I am not sure that I can, Your Honor." *Id.*

106.    Qin refused to satisfy the judgment in favor of Plaintiffs. As the District Court emphasized during the August 17 Contempt Hearing, Qin stated that he would "never pay [the Plaintiffs]. Even if you shoot me dead right now or you lock me up in jail or put me in jail, I will

not." The Court then rhetorically asked if, "I should not worry about that." ECF 237-1 at 77:25-78:3.

107.    On November 28, 2023, Qin's counsel (Seiden Law LLP) filed a motion to withdraw. ECF 332-2. In that motion to withdraw, Seiden Law LLP states that, it "is clear that Qin has not provided Seiden Law with information material to the post judgment discovery process in this action, and failed to cooperate with . . . requests that he provide full and complete disclosure of his assets as required." *Id.* at 2. According to this motion, Qin told the FBI that, between 2017 and May 2021, Qin used the Muk Lam Li alias to wire approximately $5.4 million to accounts in the United States. ECF 332-2 at 4. None of the funds were used to pay off his debt to the Petitioners.

108.    During post-judgment discovery in the Confirmation Action, Plaintiffs obtained various financial records for Qin dating back to March 2017.  Qin was insolvent at all times since 2017 because he had obtained cash from Plaintiffs by deceit and owed damages in excess of his assets. [9] When asking about Qin's assets, the responses have been unbelievable, bald-faced lies.

109.    For example, Qin claims ████████████████████████████████████
████████████████████████████████████████████████████████████████.
*Id.* at 296:20-22; 564:7-24. Asked how he ████████████████████████████
████████), Qin gave a nonsensical answer:

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

---

[9] Qin admits ████████
       *See* Dep. 125:7-10 ("
             ."); 133:18-134:3 ("
████████████████████████████████████████████████████
████████████████████████████████████████████████████





*Id.* at 293:13-296:13.

110.   Qin claims poverty but spends evenings sleeping in ███████████ ███████████████████████. *See* ECF 169-13 (███████████ ███████). This Court held: "It defies belief that he can live the lifestyle he leads and have no money." ECF 106-1 at 46:25-47:5.

111.   Qin claims not to know ████████████████████████. Dep. 547:6-14 ("████████████████████████████████████.").

112.   Qin claims ████████████████████████████████████████████████." *Id.* at 285:17-18. Qin says: "████████████████████████████████████████████ ████████████████████████████████." *Id.* at 344:19-24; 349:22-24.

113.   Qin testified "████████████████████████████████ █████████████████████████████████████████████ ██████████ *Id.* at 297:6-298:4; 298:13; 403:6-404:9; 515:11-516:9. "████ █████████████████████████████████████████" *Id.* at 298:22-299:5. Qin ██████████████████████████████████████████████ ██████." *Id.* at 297:17-298:5; 402:25-403:5.

114.   Qin regularly ████████████████████████████████ ████████████████████████████████████. *Id.* at 436:5-10.

115.    A friend loaned Qin ███████████████████████████████
███████ . *Id.* 437:5-19. ███████████████████████████████████
███████ *See id.* at 37:10; 38:15-20; 40:7; 80:17; 87:16-17, 22; 109:14-19.

116.    A few weeks later, *Qin denied* ████████████████████████ ."
*Id.* at 316:6-12. Reversing himself again, Qin admitted ████████████████
████████████████████████████████████████████████████████████████████
████████████████████████ " *Id.* at 494:17-495:3; 495:14-17; 496:7-12; 502:5-20;
565:17-566:4. He also admitted that he █████████████████████████████████
████████████████████████████████████████ . *Id.* at 104:7-
13; 105:4-13. A complaint filed by the U.S. government against Qin in a criminal case alleges
that Qin used the Li alias to travel on private aircraft internationally including to Finland,
mainland China, Hong Kong and Taiwan beginning in 2017. *Hui,* No. 2:23-mj-00865-JMW,
ECF 5 at 2-3.

117.    Qin claimed █████████████████ (Dep. 496:13-16), but also said ██
████████████████████████████████████████████████████████ *Id.* at
439:17-440:2.

118.    Qin initially insisted "█████████████████████████████
███████████████████ . *Id.* at 506:7-19, 507:17 █████████████████████
████████████████████████████████████████████████████████████████████
███████ . *Id.* at 507:18-509:2.
████████████████████ *Id.* at 508:15-19, 509:3-10. Plaintiffs believe Qin maintains a legal or
beneficial interest in the property.

119.    Qin testified "█████████████████ " for his children and he "
████████████ " because "████████████ ." *Id.* at 416:15-23.

120.    After this, Qin admitted: "███████████████████████████ ." *Id.* at
421:4-5. Despite ████████████████████████████████████████████ ," Qin

testified: "███████████████████████████████████████

██████████ *Id.* at 497:22-498:9.[10]

    121.   Asked ███████████████████████████████████

██████████████, Qin stated: "████████████████████████████████

████████████████████████████████████████████████ *Id.* at

523:23-524:3.

    122.   Qin admits that, █████████████████████████████████

███████████████." *Id.* at 524:24-525:4. ████████████████████████

████████████████████████████████████████████████████████

*Id.* at 541:11-13. ██████████████████

████████████████████████████████." *Id.* at 514:23-515:6; 540:25-541:3. When

asked for ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ *Id.* at 192:25-193:16; ECF 411 at 7.[11]

    123.   Qin does not give straight answers. Qin and his counsel both represented that Qin

uses the Plaza Suites. *See* ECFs. 106-2 at 3, 106-14 ¶ 7. Then, at his deposition, Qin claimed "█

████████████████████████████" Dep. 20:25-21:4, 22:3-5 (emphasis added). In a

declaration, ████████████████████████████████████████████████████

████████████████████," *see* ECF 108-9 ¶ 13; the penthouse "██████████████

████████████████████████████████████████████████." Dep. 21:22-22:5;

71:23-72:10. Then, *after* this testimony, Qin reversed himself and testified: "██████████████

████████████████████████████████████████████████████████

*Id.* at 535:4-537:12.

---

[10] Because Emma Duo Liu never took the Qin surname, ████████████████████████. Dep. 498:10-24.

[11] Qin stated ████████████████████████████████████████████

                   *Id.* at 535:4-537:12.

████████████████████████████████████████████████████████." *Id.*

124.    Qin admitted that, to get ███████████████████████████
██████████████████████████████████████████████████████████
███. *Id.* at 529:18-530:3.

125.    Unbelievably, ████████████████████████████████████
██████████████████████████████████████████." *Id.* at 268:8-20.
Qin had been King Fame's director and owner. ECF 176-1 at 23.

126.    Qin misreported King Fame's ownership structure to commit tax and immigration
fraud:



Dep. 269:7-21.

127.    *After all this,* Qin testified: "██████████████████████████
████" *Id.* at 528:23-529:9.

████ Qin lived in New York. Qin's attorneys represented Qin ██████████
████████████████████████ But at his deposition, Qin testified: "████████
██████████████████████████████████████████████████████████████
██████████████████████ *Id.* at 20:25-21:4; 22:3-5. Plaintiffs then questioned
Qin about ████████████████████████████

██████████████████████████████████████████████████████
████████
██████████████████████████████████████
██████████
██████████████████████████████████
████



*Id.* at 342:2-12.

129.    Despite swearing he "████████████████," Qin also testified that, █
████████████████████████████████████████████████████████████████████
████████████████████" *Id.* at 200:4-24. ████████████████████████████
████████████████████████████████████████████████████████████████████
████" *Id.* at 21:22-22:5; 71:23-72:10.

130.    Likewise, Qin claimed: "█████████████████████████████████████
██████████████████████████████████████████████ *Id.* 283:9-
14. But in his Responses, Qin swore ██████████████████████████████
███████████████████████████████████ ECF 176-1 at 43. Ms. Duo
Liu is Emma Duo Liu, Qin's wife.

131.    Qin's unbelievable denials include "████████████████████████
████████████████████████████████████████████████████████████████████
and "███████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████ *Id.* at 430:10-19; 576:2; ECF 80 at 5. Meanwhile, other
counsel for Qin (*e.g.*, Seiden) also ███████████████████████████████
████████████████████████████████████

132.    Qin says he doesn't know what ███████████████ Dep. 276:9-24. Asked
if has ███████████████████████████, Qin said "██." *Id.* at 326:25-327:3.
When pressed ("████████████████████████"), Qin's answer changed: "████
████████████████████████" *Id.* at 327:4-10. Asked for the ██████████████
████████████████████" *Id.* at 327:11-19.

133.    Qin ██████████████████████████████████████████████████████
███████████████████████. *Id.* at 324:11-14. ██████████████████████████
█████████████████████. *Id.* at 324:11-12; 326 at 16-18. Qin claimed ██████
████████████████████████████████████████████████████████████████████



. *Id.* at 242:10-24. Qin did " ▮▮▮▮▮

▮▮▮▮▮

▮▮▮▮▮ *Id.* at 326:11-24.

▮▮▮▮▮ *Id.* at 325:13-16. Qin refused to ▮▮

▮▮▮▮▮

▮▮▮▮

134.    Qin conceals information about real estate transactions. The Plaza Hotel Penthouse 2003 where Qin lives was transferred to PH 2003 Unit LLC for $10 and unidentified consideration. New York State transfer taxes were $406,000, indicating a total value of $29 million.[12] Penthouse 2009 was transferred for $10 to St. Grand Ceremony LLC—which shares Qin's 39 Applegreen Drive address. Penthouse 2009 is currently listed for sale for 40 million.[13]

135.    In a tax filing, Qin ▮▮▮▮▮

▮▮▮▮ *See* ECFs 108-3; 108-12.

▮▮▮▮▮

▮▮▮▮▮

▮▮▮▮ *See* ECF 108-4.

136.    Qin lied about what the source and use of his money was. He used cash to peddle influence and violate banking laws. In discovery responses, ▮▮▮▮▮

▮▮▮▮▮ That was untrue.

In fact, Qin testified "▮▮▮▮▮

---

[12] New York State real estate transfer tax before July 1, 2019, is calculated as (a) two dollars for each $500 plus (b) 1% of the sales price ("mansion tax") for residences with consideration of $1 million or more. N.Y. Tax Law, §§ 1402, 1402-A; *see also* N.Y. State Department of Taxation and Finance, Real Estate Transfer Tax, *available at*: https://www.tax.ny.gov/bus/transfer/rptidx.htm. If the $116,000 and $290,000 components are calculated respectively under these two rates, the corresponding consideration figures are each $29,000,000.

[13] *See* https://www.zillow.com/homedetails/1-Central-Park-S-PENTHOUSE-2009-New-York-NY-10019/2052864825_zpid/ (last visited March 18, 2024) (originally listed for $45 million on February 9, 2024, price decreased $5 million on February 29, 2024).

█████████████ ." Dep. 285:11-13. ███████████████████████
███████████████████████ (*Id.* at 436:18-437:2.)

137.    Qin lied about his wiring and holding money for foreign nationals. "███████████
████████████████████████████████████████████ " (ECF 176-1 at 4). Yet, in his deposition he admitted "███████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████ ." (*Id.* at 302:10-17.)

138.    Qin lied about having the Rolls Royce(s) shown in LIU0001805, 1814-15. In his deposition he admitted "████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████ ." Dep. 297:12-20.

139.    Qin lied about not having a trust. He claimed in his deposition that ██████████████
████████████ . *Id.* at 497:1 ("███████████████████ ."); *Id.* at 416:21-23("████████
█████████████████████████████████████████ "). However, in his responses to Petitioners' document requests, he stated: "████████████████████████
███████████████████████████████████████████████████████████
██████████████ " ECF 176-1 at 10.  In Qin's production, ██████████████████████
███████████████████████████████████████████████████████████
████████████████████████ ".

*1.    Qin Denies or Contradicts Representations Made by His Counsel*

140.    This Court held it "defies belief that he could have no records of his money" or that he could lack other responsive records. Defying belief, on January 24, 2023, Qin's counsel wrote that ███████████████████████████████████████ . ECF 108-1. This assertion proved to be untrue.

141. Qin's counsel represented "███████████████████████████████████
█████████████████████████████). *Id.* at 2. But Qin testified (████
████████████████████████████████████████████████ Dep. 128:19-
23.[14]

142. Qin's counsel represented that "████████████████████████████████
███████████████████████ ECF 108-1 at 2. But Qin testified that he communicates
"███████████████████████████████████████████████████████████. Dep.
147:10-12. Qin also testified █████████████████████████████████████████
██████████████████████. *Id.* at 141:9-11; 148:3-149:11.[15] Yet Qin
failed to produce any WeChat communications regarding ███████████.

143. Qin's counsel represented that █████████████████████████████████
██████████████████████████." ECF 108-1 at 2. ████████████████████████
████████████████████████████████ ECF 108-8 at 18. But Qin had



[14] ████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████
█████████████████████████████████
██████████████████████████████████████
Dep. 128:24-131:14.

[15] Contradicting his sworn Responses, at Qin's deposition, he denied ████████████████
█████████████████████████████████████████ (Dep. 292:17-24),
(*Id.* at 263:6-14),                              and
█████████████████████████ (*id.* at 263:5-18),  ███████████ (*id.* at 271:17-25, 273:4-12),
████████████████████████████████████████████████████████ (*id.* at
367:4-6). Qin testified: "███████████████████████████████████████████
████████████████████████████████████████████?" *Id.* at 263:6-18; 271:17-25;
273:4-12; 278:20-279:7; 292:17-24; 367:4-6.

initially testified that ███████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████"; and "████████████████████████████████████████
███████████████████████████████████." Dep. 178:3-23. ██████████
████████████████ *Id.* at 178:24-25.

144.    Shown that St. Fortune Group shares Qin's own address (39 Applegreen Drive),
Qin modified his testimony: "███████████████████████████████████████████
█████████████ *Id.* at 180:19-181:3. "██████████████████████████
████████████████████████████████████████████████████████████
█████████████████" *Id.* at 181:6-21; 182:5-12.
████████████████████████████████████. *Id.* at 180:24-181:3; 182:13-25. "████
███████████████████████ *Id.* 183:2-4.

145.    Qin's counsel represented that "████████████████████████████████
██████████████████████████████████ ECF 108-1 at 2. But Qin
testified ███████████████████████████████████████████ Dep.
191:5-193:16.

146.    Qin's counsel represented that "████████████████████████████
█████████████" ECF 108-1 at 3. But,
██████████████████████████████. Dep. 213:12-19; *see also id.* at 170:5-10. At 8:51 P.M.
on February 13, 2023 (the night before Plaintiffs' motion for contempt was due), Qin's counsel
emailed a "████████████████████████████████████████████████████
██████████████" ECF 108-9 ¶ 19. ████████████████████████████████
████████████████████████████████. *Id.* ████████████████████
███████████████████████████████████████ remains missing and has never
been produced.

147.    Qin's counsel set Qin's initial deposition for 11 A.M. because, allegedly, "Qin
will be traveling from Long Island" -- *i.e.,* the Applegreen Drive Mansion. ECF 106-18. But this

turned out to be false; Qin "█████████████" and Qin testified that he ██████
██████████████████████████████████." Dep. 71:23–72:10;
*see also* ECF 411 at 6.

### 2.    *Qin Breaks the Law and Uses Fake IDs*

148.    Qin falsely testified: "██████████████████." *Id.* at 14:6–18. But,
contradicting █████████, the federal government's detention application against Qin states
that Qin is "also known as . . . 'Hui Quin,' 'Muk Lam Li' and 'Karl.'" *Hui*, No. 2:23-mj-00865-
JMW, ECF 5 at 1. In addition, the High Court of Hong Kong held: "[Qin] holds a HKID card in
the name of Li Muk Lam (李木林) which bears a date of birth different from that stated in his
passport"; in just four months, Qin made "4 arrival 4 departure records under the name 'Li Muk
Lam.'" *See* ECF 106-8 (*Goldteam*, ¶ 12).

149.    Qin eventually testified that he "██████████████████
████" Dep. 202:3–203:2. Qin admitted ███████████████████
██████████████████████████." *Id.* at 112:10–113:2;
114:21–115:5.

150.    In the criminal case where Qin was the defendant, he testified and admitted that
"in or about 2008, [I] purchased the alias 'Muk Lam Li' from a PRC government official for sum
of currency." *Hui*, No. 2:23-mj-00865-JMW, ECF 1 at 2. If Qin's statement to the U.S.
government is true, then Qin lied in his deposition while under oath ████████████, and
he admitted to the federal government that he obtained the ID through bribing a PRC official.

151.    The federal government's detention application against Qin also noted that Qin
"proffered false documents that purported to be statements from Bank of America and Macy's,
Inc." and that Qin's "proffered documents falsely set forth [a] Miami address and bore the name
'Hui Quin.' The defendant's scheme worked and on or about December 21, 2020, the [Florida
Department of Highway Safety and Motor Vehicles] issued the defendant a Florida Driver's
License bearing the defendant's photograph, the name 'Hui Quin' and the false Miami address."

*Hui*, No. 2:23-mj-00865-JMW, ECF 5 at 3. The detention application further states: "On or about June 23, 2022, the defendant provided the fraudulently-obtained Florida Driver's License to the New York State Department of Motor Vehicles ('DMV') to secure a New York State Driver's License from the DMV." *Id.* Then, between April and June 2021, Qin "provided the fraudulently-obtained Florida Driver's License identification to JP Morgan Chase Bank . . . and Cathay Bank . . . in connection with accounts that the defendant maintained" and also, in February 2022, "provided the fraudulently-obtained Florida Driver's License to the Bullen Insurance Company." *Id.*

152.    Qin testified that he and Emma  Dep. 159:4-20.

" *Id.* at 156:10-157:15; 161:11-162:11. Bizarrely, Qin claimed

*Id.* at 199:2-20.

153.    Qin

*Id.* at 157:7-9.

### 3.    *Qin's Story of Unparalleled Charity from Unknown Friends*

154.    Qin tells "an incredible story about his lifestyle being funded by the generosity of friends whose names [Qin] has conveniently forgotten." ECF 136 at 20:9-18.[16]

155.    Qin testified: 

. Dep. 106:20-107:8; 112:20-114:9.

" *Id.* at 186:5-10.

156. . *Id.* at 109:9-19.

*Id.* at 117:22-118:4.

. *Id.* at 183:5-21; 185:20-25.

*Id.*

157.    Qin made frequent, unbelievable assertions that he does not know the names of his friends, or his assistants, or the people who give him money, or the addresses where he often stays:





*Id.* at 111:23-112:7; *see also, e.g., id.* at 19:4-5                    ."); 73:12-21 ("                    "); 178:3-7 (regarding an entity                    "); 108:4-17                    "); 116:13-19                    "); 123:2-4 ("                    ); 191:5-9                    "); 278:20-279:7 ("                    ); 283: 15-20 (                    ); 296:20-22 (                    331:18-21 ("                    "); 332: 5-8 (



158.    Qin's assertion that he does not even know who pays for his bills or to whom he sends money supports Plaintiffs' conclusion that the "owners" of Qin's assets are mere shills. The transactions were mere shams.

### D.    Qin Destroys Documents and Conceals the Sham Transfers

#### 1.    *Qin Destroys Assets, Spoliates Evidence, Refuses to Produce Documents, and Violates a Restraining Notice Issued Under CPLR 5222(b)*

159.    Qin claims to have transferred assets to his mother-in-law, Xuemin Liu, through a deed of gift. Asked where one could find a "



*Id.* at 197:7-198:25.

160.    On January 20, 2023, Plaintiffs served a restraining notice under CPLR 5222(b). *See* ECF 108-7. Ten days later, Qin testified that, ██████████████████████████ Dep. 186:24-187:19.

161.    Qin refused to produce documents. Qin's counsel admitted during the August 17 Contempt Hearing that almost all the document requests were still outstanding. ECF 237-1 at

61:9-15 (MS. BLEECHER: "Number 1, the bank records of Qin. . .. I would agree it's partially outstanding..."), 61:20-62:15 (MS. BLEECHER: "Number 2, Mr. Qin I think tried to get American Express records, but that's overseas and was unable to get them. . . . Number 3, Mr. Qin does not have them. . .. Number 4 . . . Mr. Qin has continued to ask. . . . So it remains outstanding. . . Number 5 is partially outstanding. . .."), 63:4-5 (THE COURT [regarding Qin's testimony as to Number 6, the Schedule of Assets]: "He recalled three or four pages. He gave one [page]."), 63:24-65:12 (MS. BLEECHER: "With respect to number 6, he has produced what was given to him. I don't know that he can represent this is the actual schedule. What he can represent is this is what was provided to him by a counterparty of that agreement. Number 7, Mr. Qin is going to be producing his most recent tax returns. . . . The St. Tome agreement is . . . number 8. . . . the storage unit disposed of everything that was in the unit. . . . So it's outstanding, but . . . it's been disposed of by the storage unit."); 67:5-11 (MS. BLEECHER: "With respect to the boat and the plane, he says he does not have any documentation regarding the sale, that it was somehow used to satisfy a debt. . . . And my understanding is the boat and the plane were used to satisfy some other creditor obligation."); 69:5-6 (MS. BLEECHER: "He does not have any documents to provide regarding the Plaza 2003 or Plaza 2009."); 70:8-10. (MS. BLEECHER: "I am going to say there is nothing to give for number 11. . . . Number 12 . . . . He does not have any records regarding the property tax. . . ."); 71:5-72:12. (MS. BLEECHER: "I think it's accurate the items that have been produced in response to 13. . . . It's the same thing for number 14. . . . Number 15, their note I believe is accurate. . . . So their description is accurate and Mr. Qin does not have additional WeChat messages with those individuals. Number 16, their note is accurate. . . And number 17, their note is accurate."). Thus, Qin's counsel confirmed on August 17, 2023 that Qin had not made a complete production for a single category of documents that had been ordered produced by the Court by no later than April 21, 2023.

162.    After this Court compelled production, Qin embarked on a spoliation rampage, smashing one of his two phones, and deleting contacts and correspondence. When Plaintiffs

asked Qin █████████████████████████████████████████████

█ ████████████████████████████████████████████

████████████████████████████

████████████████████████████

███████████████████████████████████████████

*Id.* at 260:11-25.

163. The next day, Qin admitted "███████████████████████████ Dep. 404:17-20. Qin █████████████

███████████████████████████ *Id.* at 405:19-25. "████████████

███████████████████████████████████████." *Id.* at 406:21-

407:4. ██████████████████████████████." *Id.* at 407:12-14.

164. But Qin's excuse that █████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████." Dep. 134:16-21.

165. Qin had initially testified that ███████████████████

███████████████ (Dep. 404:17.) Apparently ██████████████

███████████████████████████████████████████████. *Id.*

at 562:17-25. Qin testified that ████████████████████████

████████████████████████████████████████████████████████

███████████████

166. Qin likewise admitted ████████████████████████████

███████████████. *Id.* at 574:4-14. Despite the expedited discovery order and the order

compelling production by April 21, 2023 and entering sanctions against Qin, ████████████

████████████████████████████████████████. *Id.* at 575:25-577:5.

167.    Despite this Court's order that █████████████████████████
████████████████████████████████████████████████████████████████
███████████████████  *See Id.* 207:7-15, 377:7-380:4; ECF 176-1 at 8; ECF 136 at 15:10-14; ECF 237-1 at 44:25-45:3. Asked about this, Qin ████████████████████████
███████████████████████████. Dep. 379:23-380:19; *cf.* 89:8-11 (even "█████
████████████████████████████████████); 288:14-16 ("████████
████████████████████████████████████████████████"). As the Court noted, Qin's communication ████████████████████████████████████████████████████████
███████████████████████████." ECF 237-1 at 46:16-22. Qin has provided no reason to credit his assertion ███████████████████"; in any case, even if this were true, it is likely that his communications with her would ████████████████████████████████.

168.    This Court ordered production of Qin's messages with Angela Zhu, who was with Qin during the FBI raid. *Id.* at 93:8-94:19; ECF 176-1 at 8; ECF 136 at 15:10-14. Qin instead deleted all her messages. *Id.* This Court ordered production of messages with Boss Cao. ECF 176-1 at 4; ECF 136 at 15:10-14. Qin "███████████████████████████████████████████████
Dep. 375:8-21. Qin denied ████████████████████████████████████████████████
████████████████████████████████████████████████. *Id.* at 549:23-550:7.

169.    Qin "████████████████████████████████████████████████████████
███████████████████████████████████████████." Dep. 379:12-17; 382:13-21.

170.    In 2023, Qin claimed ████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████  Dep. 383:9-18; 384:21-22. Qin ████████████████████████████████
████████  *Id.* at 382:22-383:22.

171.    Qin also ███████████████████████████████████████████████████████
████████████████████████████████████████████████████." *Id.* at 383:25-384:12.

Qin testified: "█████████████████████████████████████

████████████████ *Id.* at 461:24-25. Qin stated he "████████████

█ ██████████████████████████ ." *Id.* at 461:23-24 (emphasis added).

    172.   *Most of Qin's mass-deletions occurred after this Court's 4/18 production order.*

Qin produced almost no communications that predate the 4/18 Order. ██████████

███████████████████████████████████████████████████████

████████████████████ , Qin produced *nothing* predating April 25, 2023 ██████████ :

- Qin produced nothing prior to April 25, 2023 for ████████████
  ██████████████ even though on January 30, 2023, Qin testified he
  "████████████████████████████████████████
  ████████████ . Dep. 144:7-147:12.

- Qin's earliest produced ██████████████████████
  ████ (Dep. 107:17-21)) ████████████████████████████████
  ██████████████████████████████████████████████████ ."
  *Compare* Qin_00003391 *with* Dep. 108:3-17; 138:22-24.

- ████████████████████████████████████ (Dep. 107:17-20))
  ████████████████████████████████████████████████████
  *Compare* Qin_00003563, 3548 *with* Dep. 138:19-21, 158:24-159:3.

- Prior to April 25, 2023, *Qin produced no WeChat messages* with ████
  ████████████████████ (Dep. 107:25-108:2)
  ████████ " Dep. 139:21-140:2.

- Prior to April 25, 2023, ████████████████████████████
  ██████████████████████ , Dep. 127:24-128:18); Qin admits ████████
  ████████████████████ *Id.* at 550:24-551:8.

- Prior to April 25, 2023, ████████████████████████████
  ████████████████ (Dep. 555:24-556:9)) ████████ . ECF 176-1 at 6.

- *Qin produced no communications with* ████████████████████
  ████████████████ ." *Id.* at 107:22-23; 139:11-13;
  130:24-131:22.

- *Qin produced no communications with* ████████████████████
  ████████████████████████████████████████████
  ████████ *Id.* at 107:22-23; 109:20-110:11; 111:13-18; 129:21-

130:20; 134:8-15; 139:4-6. Asked ███████████████████████████████████
██████████████████████████████████████████████████████ " *Id.* at
110:12-16. ███████████████████████████████████████████████████
██████████████████████████████████████████████████████ ). *Id.* at
129:21-130:20.

- *Qin produced no communications with* ████████████████████ ), who Qin
  ███████████████████████████████████████ ." *Id.* at 107:23-24;
  139:14-20.

173.    Qin "██████████████████████████████████████████████████
████████████████████████████ ." *Id.* at 138:16-18; 461:23-24. ███████████████
██████████████████████████████████████████████████████████ . *See*

ECF 108-9 at 2. During the August 17 Contempt Hearing, Qin's counsel admitted that "[Qin] has

deleted in his lifetime WeChats." ECF 237-1 at 44:22-23.

174.    To hinder corruption investigations, ████████████████████████
████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████ " Dep. 336:17-23.

175.    Qin allowed financial records to be destroyed: ██████████████████
████████████████████████████████████████████████████ *Id.* at

534:1-10; *id.* at 451:7-13 ("████████████████████████████ "). Prior to

Qin's testimony ██████████████████████████████████████████████████████ ,

Qin's counsel had represented to the Court that "Qin has no responsive documents, Your Honor

[about] storage facilities," ECF 106-1 at 33:23-34:1, and Qin swore he never used storage units:

"██████████████████████████████████████████████████████████████

Dep. 589:16-590:4. These falsehoods prevented Plaintiffs from saving records from destruction.

176.    Qin testified that he had ████████████████████████████
████████████████████████████████████████████████████████████

██████    ECF 136 at 18:18-19:6 (the Court summarizing Qin's testimony). The Court found

that this testimony was an example of Qin's "conflicting and sometimes incredible responses." *Id.*

at 18:18-20.

177.    Adding to his "



Dep. 561:25-562:16.

178.    Qin originally claimed



" *Id.* at 210:24-211:7. Qin then claimed

ECF 176 at 9; Dep. 359:4-10; 588:16-21. Qin *denied*

" *Id.* at 359:25-360:4.

179. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮," Qin stated—▮▮▮▮▮▮▮▮▮▮▮▮▮▮," *Id.* at 592:20-23—"▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.* at 592:12-20.

180. St. Tome "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



*Id.* at 593:1-14.

181. As noted in the CIETAC Award's factual findings, and undisputed by Qin, SMI is 100% owned and controlled by Qin. ECF 7-2 at 36.

### 2. *Qin Creates a Fraudulent Document: The Fake Schedule of Assets*

182. Qin produced a "Deed of Gift" without its referenced attachment, a Schedule of Assets. Qin then gave this nonsensical answer when asked if he recognized the Deed of Gift:



Dep. 194:6-196:14. Qin testified, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮ *Id.* at 197:7-14; 198:13-25. Qin did not produce it by the Court's production deadline, unilaterally deciding "▮▮▮▮▮▮▮▮▮▮ *Id.* at 348:19-349:16.

183. At his April 24, 2023 deposition, Qin repeatedly described ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



*Id.* at 354:3-356:20.

184.    After lunch, ██████████████████████████████████



Dep. 354:3-356:20. Qin's counsel told the Court that Qin could not stand behind the produced document as being genuine: "I don't know that he can represent this [document] is the actual schedule." ECF 237-1 at 63:24-65:12; *see also id.* at 62:20-21 (THE COURT: "That document with one asset, that's the schedule of assets?"); *id.* at 63:4-5 (THE COURT: "He recalled three or four pages. He gave one [page].").

### E.    Qin Lies About Where He Lives

---

[17] In its entirety: ████████████████████████████████████
████████████████████████████" (Qin_00003344).

185.    Qin is a serial service denier who denied or evaded service in five litigations. ECF 82 at 5-7.

186.    In the Confirmation Action, Plaintiffs initially served Qin at 377 Rector Place. *Id.* at 5. The mailing was delivered, signed for, and then returned without explanation by an unidentified person. *Id.* But Qin testified that his "address in downtown" is 377 Rector Place. *See* Dep. 75:14-24. Qin also ███████████████████████████████████████████. *See* Qin_00003589. Most importantly, service clearly succeeded: the next day, Qin's litigation counsel began billing time. Yet Qin returned the service papers, and his arbitration counsel denied Qin used Rector Place. ECF 47 at 24-27. Qin vexatiously caused delay and expense from the moment the Confirmation Action began, by dodging service in this action.

187.    Plaintiffs next served Qin at Plaza Hotel penthouses 2003 and 2009. Qin's (alleged "ex-") wife Emma refused service: "do not send me any more documents about Hui Qin" because the two of them are "not living together." *See* ECF 56-1 at 3.

188.    Plaintiffs served 39 Applegreen Drive, which is listed as Qin's residence in his Divorce Decree. Emma Liu refused service again: "[D]o not send me any more mail about Hui Qin. I have no . . . relationship with Hui Qin now, and he no longer lives here." *See* ECF 51-4 at 2. After Emma Liu sent this letter, but before it arrived, Plaintiffs served Qin by following him *as he drove his Rolls Royce out of 39 Applegreen Drive.* Served personally, Qin responded by flinging the service papers out the window of his Rolls Royce.

189.    On November 28, 2022, Qin's counsel █████████████████████ ████████████████████████.' *See* ECF 108-5 at 4. The Plaza Hotel has no 22nd floor. On January 24, 2023, *two months later*, Qin's counsel finally wrote that the "███████████ █████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████" ECF 108-1 at 3. But Emma Duo Liu refused service at both those addresses.

190.    Asked whether he agreed with ███████████████████████████ ████████████████████████████ Qin testified: "████████████████████████████



█████████████████████████████████████████████
████████████████████████ ." Dep. 20:25-21:4; 22:3-5. Plaintiffs then confronted Qin with
█████████████

*Id.* at 34:2-12. As noted above, *Qin filed his* ████████████ *on January 17, 2023.*

191.    Despite swearing he "████████████████" Qin eventually admitted under questioning that, as to 39 Applegreen Drive, "█████████████████████████████████████████████████████████████████████████ ." *Id.* at 200:4-24.

192.    Likewise, Qin testified that ████████████████████████████████████████████████████ " *Id.* at 21:22-22:5; 71:23-72:10.

193.    ███████████████████████████████ . *See, e.g.,* *id.* at 76:17-23 ███████████████████ 76:24-77:24 ████████████████████████████████████████████████████████████████████████ ████████████ *See id.* at 85:5-88:4 ██████████████████████████████████████████████

F.    **Qin's Fake Divorce**

194.    Qin claimed he divorced his wife in 2020 but has continued telling others he is still married to Emma Duo Liu, including as recently as 2023. Emma, Qin's alleged ex-wife, has also told the public she is married to Qin, even inviting Qin to events and functions as her husband in 2023. As described in more detail below, Liu described Qin as "her husband" on a website for an organization she runs (the CivilizAsian Foundation), only removing this language in July 2023 after Plaintiffs informed the Court of this language. Emma ███████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████ (Qin_0002479-2495).

195.    Qin lived with his wife at the house on 39 Applegreen Drive for years after the supposed divorce.  Qin's supposed income comes from █████████████████

██████.

196.    Qin testified that he and Emma Duo Liu "████████████████

████████████████████" Dep. 341:2-11. Qin claims ████████████

█████████████████████████. *Id.* at 509:18-24, 511:16-24.

197.    The divorce is a sham. During the contempt hearing, the Court commented: "I am just saying, not that I have ever been divorced, but I can't imagine, If I were, that my former husband, which I have difficulty even saying, would be paying a million dollars of my legal fees." ECF 237-1 at 85:5-8. Qin's counsel laughed and the court expressed "I am not sure why Mr. Kushner finds this funny and is laughing, but he'll tell me at some later point." *Id.* at 85:11-13.

198.    On April 27, 2020, a month after Plaintiffs commenced the Arbitration, Liu retained the services of the law firm Xue & Associates, located in Glen Cove, New York, █

███████████████████████████ (XUE_0000008). The Xue firm represented Qin in various matters, before and after representing Liu in connection with █████████

█████████████, including representing Qin in the Confirmation Action. The Xue Firm withdrew as Qin's counsel after this Court confirmed the arbitration award and entered the

Judgment, but on December 7, 2023 began representing Qin again in the criminal action in which Emma Duo Liu is named as a witness. See *Hui*, No. 2:23-mj-00865-JMW, ECFs 5 at 8; 23.

199.    When Liu refused service on behalf of Qin during the Confirmation Action (even though Qin continued residing in her home, as observed by private investigators), Liu sent Plaintiffs a copy of a Chinese "Divorce Decree" dated December 10, 2020. Together with the "Divorce Decree," Liu also falsely wrote to Plaintiffs that Qin did not live at any of the residences she shared with him. The Divorce Decree revealed that Qin was represented in the matrimonial matter by the same Chinese lawyer who represented Qin in the CIETAC arbitration. This same lawyer refused to accept service from Plaintiffs in the Confirmation Action – just like Liu – and refused to provide an address where Qin could be served.

200.    Qin's divorce and arbitration lawyer stated, during the arbitration, that Plaintiffs should have contacted Qin's lawyers to ask for his address in order to successfully serve him. However, when Plaintiffs actually contacted this same lawyer to ask her for Qin's address or to accept service on Qin's behalf, she wrote back: "please stop sending me the mail or any other court documents in connection with this case." ECF 51-1.

201.    Liu, Qin and Qin's lawyers manufactured this divorce to shield Qin from his creditors; in particular, from Plaintiffs, who were seeking and received an arbitration award for nearly $500 million against Qin.

202.    The Court noted Qin "transferred ownership of his home in Old Westbury, New York, to his ex-mother-in-law and ex-wife for only ten dollars in a series of transactions occurring shortly after the underlying arbitration was commenced." ECF 61 at 2. The "timing . . . [and] the minimal consideration . . . suggest that the transfer was not made for genuine business purposes." *Id.*

203.    Indeed, in April 2022—months after the Confirmation Action began—Qin filed taxes as ███████████████ and listed his home as 39 Applegreen Drive. On January 17, 2023, Qin *created* ██████████████████████ in the Confirmation Action – and indeed produced it two days later, on January 19, the night before a court

conference. But Qin continued ████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████ Dep. 192:2-5; 193:3-16.

204.    Liu initially lied by claiming she had "no . . . relationship" with Qin, and "he [] no longer lives here." ECF 51-4. When deposed, she ██████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████

205.    Qin testified that he "████████████████████████████████████
██████████████████████" Dep. 80:22-81:5; 82:18-25. Qin ██████████████. *Id.* at 81:23-82:25. He ████████████████████████. *Id.* Qin testified that ██████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████ *Id.* at 42:11-13; 84:13-15.

206.    Emma Duo Liu is the chair of an organization called the CivilizAsian Foundation. Until July 2023, the website's description of Liu stated: "Ms. Liu lives in New York with her husband and their two children." ECF 196-9 at 2. After Petitioners informed the Court of this language, the website bio was changed to remove the words "her husband." Additionally, Liu ██████████████████████████████████████████████████████████████████
██████████████. Dep. 495: 14-17.

207.    Despite paying *none* of the judgment, Qin testified he repeatedly transferred between ████████████████████████████████████████████████, including two such payments in ████████████ *Id.* at 181:16-186:13. Qin testified that he didn't "████████
██████████████████████████████████████████████████████████████████
██████████████ *Id.* at 183:5-21; 185:11-12.

208.    Qin testified that he receives ████████████████████████████████
which has a registered address at 39 Applegreen Drive (Qin's home); St. Tome's ownership is connected ████████████████████████████████████████████████████████ St.



.” *Id.* at 123:2-129:20; 168:10-169:8; 203:11-12.

209.    Qin initially testified that ████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████ *Id.* at 34:14-25. At his deposition, ██████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████ *See id.* at 34:15; 36:1-25; 72:6; 92:2; 99:13; 99:15; 100:8; 151:25; ECF 109 ¶¶ 6, 8.

## VI.    <u>Entities and Persons Involved as Shills, Alter-Egos, and Conspirators.</u>

### A.    Duo "Emma" Liu

210.    Liu (also known as Emma Liu) is a U.S. citizen and U.S. resident. She resides in Old Westbury, New York. (Liu_0001207; Qin_0002479-2495.)

211.    Throughout his January 30, 2023 deposition, Qin repeatedly ████████████████
█████" Dep. 34:15; 35:5, 7, 19; 72:6; 82:3; 92:2; 99:13, 15; 151:25; 162:24. He also spoke at length ██████████████████████████████████████████████████████████████
██████████████████████████████████████████." *Id.* at 132:4-9. He emphasized that ██████████████████████████████████████████████████████████████████
████████████████." Qin also spoke with great pride about Duo Liu's "████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████." *Id.* at 132:4-18.

212.    As discussed above and herein, Liu is Qin's chief aide and co-conspirator, though the exact names and roles of several other "assistants" used by Qin are unknown. According to

Qin himself, ███████████████████████████████. Liu has been the main go-between for Qin and his sham entities. She even ████████████ ████████████████████████████████████. Since March 2017, just a few days after entering into the Supplemental Agreement with Plaintiffs, Qin has been funneling millions of dollars into Liu's personal accounts with the purpose of shielding assets from creditors.

213.    Starting on ███████████████, ████ personally transferred approximately ████████████ to ████████████████████ (JPMC_0000696; 702; 706; 712; 719; 724; 725; 731; 742; and 761). Notably, these transfers coincide with the ████████████████ ████████, a purchase made from the very same personal Chase account that received ████████ ████████ of fraudulent transfers from ████ (JPMC_0000730). As demonstrated herein, ████ fraudulently transferred over ████████████ into ████████████████████████. (JPMC_0000696, 702, 706, 712, 719, 724, 725, 730, 731, 736, 742, 761, 972, and 999; AXOS_0003164-3165; and SCBNY000003). ████████████████ demonstrate the integral role she played in the conspiracy to hide Qin's assets through the use of sham entities and the purchase of real estate.

214.    ██████████████████████████████████████████████ ████████████████████████████████████████████████ (LIU_0001929; LIU_0000146-0000147). ████████████████████████████████ ████████████████████████████. LIU_0001956-8. HS-QYNM Family, Inc. is also supposedly owned by Xueyuan "Hank" Han. (See Compl., *St. Hudson Grp. LLC, et al. v. Singularity Future Tech. Ltd., et al.*, No. 22-cv-10290 (S.D.N.Y. filed Dec. 5, 2022), ECF 1 ¶ 14 (misspelled "HS-QYN" Family Inc.).

215.    In her responses and objections ████████████████████████ ████████████████████████████████████████ (*See* ECF 207-7 at 7). Golden Pegasus LLC is registered at 39 Applegreen Drive, Liu's home.

216.    Emma participated so fully in Qin's sham transactions and fraudulent transfers, that when deposed on these issues, she took the Fifth on dozens of specific fact-based questions posed about her interactions with Qin and holding assets for him, summarized in the chart below.



| Name of Entity/Property/Relationship/Statement | Liu "Take 5th" Transcript p. |
|---|---|
| **KING FAME Trading Ltd.** | |
| | 96:24-97:1 |
| | 97:2-4 |
| | 96:18-20 |
| | 99:17-100:16 |
| | 99:17-100:16 |
| | 20:22-24 |
| **ST. FORTUNE GROUP** | |
| | 78:7-10 |
| | 78:11-14 |
| | 78:15-21 |
| | 78:22-25 |
| | 80:21-23 |
| | 80:24-81:1 |
| | 81:2-4 |
| | 20:22-24 |
| **LUBAN CONSTRUCTION INC.** | |
| | 24:25-25:3 |
| | 25:12-26:24 |
| | 76:2-4 |
| | 76:5-8 |
| | 76:9-12 |
| | 20:22-24 |
| **HS-QYNM FAMILY, INC. (aka HS-QYN Family Inc.)** | |
| | 124:9-13 |
| **Qynm Family Holding LLC** | |

| Name of Entity/Property/Relationship/Statement | Liu "Take 5th" Transcript p. |
|---|---|
| | 112:13-15 |
| **Oin Family Trust** | |
| | 60:2-4 |
| | 60:9-14 |
| | 73:12-14 |
| | 73:9-11 |
| | 61:10-13 |
| | 60:5-8 |
| | 59:4-6 |
| | 59:9-12 |
| | 59:16-19 |
| | 59:21-25 |
| | 85:11-14 |
| | 85:25-86:3 |
| **Golden Little Elephant** | |
| | 20:22-24 |
| **I LOVE GLE TRUST** | |
| | 60:22-24 |
| | 60:25-61:3 |
| | 61:4-8 |
| | 20:22-24 |
| **16 HICKORY DRIVE** | |
| | 69:14-16 |
| | 103:22-24 |
| **35 APPLEGREEN DRIVE** | |
| | 75:10-12 |
| **39 Applegreen Drive** | |
| | 69:8-10 |
| | 40:21-23 |
| | 37:18-20 |
| | 40:24-41:9 |
| | 105:7-11 |
| | 105:13-17 |
| | 105:19-24 |

60

| Name of Entity/Property/Relationship/Statement | Liu "Take 5th" Transcript p. |
|---|---|
| **Plaza Hotel Suite 2003** | |
| | 39:9-13; 68:16-21 |
| | 68:13-15 |
| | 68:9-15 |
| | 68:24-69:3 |
| **Plaza Hotel Suite 2009** | |
| | 69:5-7 |
| **377 Rector Place** | |
| | 72:12-16 |
| **Applegreen LLC** | |
| | 25:12-26:24 |
| | 112:24-113:1 |
| | 20:22-24 |
| **St. Tome LLC** | |
| | 71:21-23 |
| | 72:3-5 |
| | 71:24-72:2 |
| | 25:12-26:24 |
| | 71:9-17. |
| | 24:4-6 |
| | 24:7-9 |
| | 24:4-24 |
| | 116:11-117:10 |
| | 20:22-24 |
| **St. Hudson Group LLC** | |
| | 121:15-21 |
| | 121:22-122:7 |
| | 20:22-24 |
| **St. Grand Ceremony LLC** | |
| | 31:25-32:10 |
| | 34:5-7 |
| | 20:22-24 |
| **Golden Little Dragon LLC** | |
| | 113:15-17 |
| | 113:18-20 |
| | 113:24-114:2 |

| Name of Entity/Property/Relationship/Statement | Liu "Take 5th" Transcript p. |
|---|---|
| | 114:3-8 |
| | 114:10-12 |
| | 20:22-24 |
| **PH2003 Unit LLC** | |
| | 33:5-10 |
| | 34:8-10 |
| | 33:5-13 |
| | 20:22-24 |
| **CivilizAsian Foundation** | |
| | 43:1-5 |
| | 44:25-45:3 |
| | 43:11-14 |
| | 43:15-17 |
| | 43:18-25 |
| | 20:22-24 |
| **Sham Marriage** | |
| | 18:4-11 |
| | 18:13-19:14 |
| | 19:15-18; 19:25-20:2 |
| | 19:19-24 |
| | 20:22-24 |
| | 21:19-22:19 |
| | 22:20-24; 23:20-24:3 |
| | 132:20-25 |
| **Spoliation of Documents** | |
| | 51:16-20 |
| | 51:22-25 |

| Name of Entity/Property/Relationship/Statement | Liu "Take 5[th]" Transcript p. |
|---|---|
| ███████████████████████ | 57:23-58:6 |
| ████████████████████████████ | 58:9-11 |
| ██████████████████████████ | 74:15-18 |
| ████████████████████████ | 74:19-22 |
| ████████████████████ | 74:1-10 |
| ███████████████████████ | 128:2-7 |

217.    For each of these responses in which Liu asserted her Fifth Amendment right against self-incrimination an adverse inference may be presumed in favor of Plaintiffs and against Liu and Qin.

### B.    Emma and Qin's Co-Conspirators

#### 1.    *Xuemin Liu*

218.    Xuemin Liu is a citizen of the People's Republic of China and a U.S. resident. (Qin_2577-2478, 2496-2499). Upon information and belief, she resides in Flushing, New York.

219.    Xuemin Liu is Duo Liu's mother. Dep. at 194:23-24.

220.    Xuemin Liu conspired with Qin and Liu to execute complex and fraudulent transfers to shield 39 Applegreen from creditors. On April 2, 2020, just four days after Plaintiffs commenced the CEITAC Arbitration, ████████████████████



████████████████████████). At the time, ███████████████

(LIU_0000046). Xuemin then transferred 39 Applegreen from King Fame to herself for nominal consideration (LIU_0000004) and then again to herself and Liu as joint owners with right of survivorship for nominal consideration (LIU_0000021-24). From there, the complex scheme continued with the transfer of these interests to Applegreen LLC, a sham entity ████████████

████████████████████████████████████████████. This string of transfers demonstrates Xuemin's participation as a co-conspirator in shielding Qin's assets from creditors.

221.    She was a willing shill for Qin in transferring the real estate assets of an offshore shell company (King Fame) to her daughter, Emma. She neither understands English nor speaks it, but █████████████████████████████████████████████████████ ██████. Emma Liu ███████████████████████████████████████████ ████████████████████████████.

### 2.    *Ruolei Liu*

222.    Ruolei Liu, Emma Liu's father, is a citizen of the People's Republic of China and a resident of New York.

223.    Qin claims his father-in-law is ████████████████████ and that ██ ████████████████████ These transfers occurred after ██████████████. Liu and her father, Ruolei Liu, each own a 50% interest in St Fortune Group. Using St. Fortune (discussed above) ████████████████████████████████████ (presumably illegal) process.

224.    When pressed on this, Qin admitted that █████████████████████ ████████████████████████████████████████████████████████████ ████████████████████. Dep. 436:5-10.

225.    A friend █████████████████████████████████████████ ██████████. *Id.* at 437:5-19.

226.    Qin's mother-in-law and father-in-law are part of the conspiracy. Qin claims he █████████████████████████████████. By doing so, Qin concealed the true owner of the money

as part of the scheme to keep money in the hands of shills and use unofficial means of transferring and controlling assets to further that concealment.

### 3.    Xueyuan Han, a/k/a Hank Han

227.    Qin structured certain business and property interests through Xueyuan "Hank" Han, including 39 Applegreen Drive. For example, Qynm Family Holding LLC is owned by Xueyuan "Hank" Han. LIU_0000049. On December 29, 2020, Duo Liu and Xuemin Liu took out a $8,000,000 mortgage on 39 Applegreen Drive with Qynm Family Holding LLC as mortgagee. LIU_0000051. Also on December 29, 2020, Qynm Family Holding LLC indemnified the title company Liberty Land Abstract, Inc. for loss, claims, or damages arising out of the Goldteam Action. (LIU_0000048-49).

228.    Qynm Family Holding LLC is "owned" by Xueyuan "Hank" Han, one of Qin's and Liu's co-conspirators. LIU_0000049. Qin is the real owner of this entity. Qynm Family Holding LLC has an address of 377 Rector Place, Unit PH-B, New York, NY 10280 (LIU_0000051), where Qin initially denied service in the Confirmation Action before listing it as his residence ▮▮▮▮▮▮▮▮▮▮▮▮▮. Xueyuan Han resides at 377 Rector Place with his "ex"-wife and their two children, and, like Qin, Han and his wife may also have had a sham divorce in an effort to avoid creditors. (See Zhang, et al. v. Han, et al., No. 21-cv-01625 (S.D.N.Y. filed Feb. 24, 2021) ECF 1 at 15)).

229.    The word "Qynm" is likely an intentional misspelling of the name "Qin" and used to distance the LLC from Qin. On December 29, 2020, Duo Liu and Xuemin Liu took out a $8,000,000 mortgage on 39 Applegreen Drive with Qynm Family Holding LLC as mortgagee. LIU_0000051. Also on December 29, 2020, Qynm Family Holding LLC indemnified the title company Liberty Land Abstract, Inc. for loss, claims, or damages arising out of the Goldteam Action. (LIU_0000048-49).

230.    Likewise, HS-QYNM Family, Inc. is a sham entity created to hide Qin's assets, using the same purposeful misspelling of his name. HS-QYNM Family, Inc. is also "owned" by

Hank Han and registered at 9-07 Prince Street #4c, Flushing, NY 11354, but Qin is the real owner of this company. On ███████████████████████████████████████ ███████████████████████████████████████████████ (LIU_0001929; LIU_0000146-0000147).

    231.   Hank Han also received or sent money related to Qin through some entities as discussed below.

### 4.   *Hangyuan Zhang*

    232.   Upon information and belief, Hangyuan Zhang assisted Qin and Liu in forming the sham entities used to further their scheme. He is a ██████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████ (LIU_0000327-331). Hangyuan Zhang is the CEO of Golden Land Funds LLC and New Land Capital LLC.

### 5.   *Bryn Mawr Trust Company*

    233.   JP Morgan Trust Company ███████████████████████ ████████████████████████████████. (LIU_0001720.) It was replaced ████████████████████████████████. *See* LIU_0001715. On ████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████████████████████. (LIU_0001714; LIU_0001643.)

### 6.   *Trident Trust Company*

    234.   Upon information and belief, Trident Trust Company is located in South Dakota and is the trustee of the Qin Family Trust.

235. 

Qin_00000512; ECF 207-7 at 11

Qin_00000570-573).

236.     As trustee, it can be sued for the trust.  Trident Trust Company takes instructions from either Qin or Liu, or both.

**C.    Emma and Qin's Entities are Shams and Part of the Schemes**

237.     The following entities, incorporated at 39 Applegreen Drive, are in fact owned and controlled by Qin, regardless of titular ownership or control, they are his alter-egos in fact, and they are part of his shams (as discussed elsewhere herein):

   a.   St. Tome LLC (Qin_00002437);
   b.   St. Grand Ceremony LLC (Qin_00002208);
   c.   Luban Construction Inc. (Reg. No.5042662);
   d.   Golden Kirin LLC (Reg. No. 5014434);
   e.   Golden Little Dragon LLC (Reg. No. 5761694);
   f.   Golden Mermaid LLC (Reg. No. 5852657);
   g.   Golden Pegasus LLC (Reg. No. 5014433);
   h.   Grand Ceremony LLC (Reg. No.5540043);
   i.   Harushio LLC (Reg. No. 5019592);
   j.   Hatakaze LLC (Reg. No.5019554);
   k.   St. Fortune Group LLC (Reg. No. 6709129).

238.     The following entities, associated with 39 Applegreen Drive and Qin, are in fact owned and controlled/continue to be controlled by Qin and they are his alter-egos in fact and part of his shams as discussed below:

   a.   Applegreen LLC (owns and has address at 39 Applegreen Drive);
   b.   QYNM Family Holding, LLC (owned 39 Applegreen Drive and sold to Applegreen LLC);
   c.   Golden Little Elephant (principal executive office address).
   d.   King Fame Trading Limited (putative former owner) (Qin_00000838)

239.    The following chart lists sham entities and the persons involved in moving money that Qin controlled away from Qin's creditors, including the assets thus far identified.

| Person/Entity | Asset |
| --- | --- |
| Luban Construction | 35 Applegreen Drive |
| King Fame Trading Ltd. | 39 Applegreen Drive |
| Qin Family Trust | Money and other assets |
| Duo "Emma" Liu | Money, other assets, 39 Applegreen Drive, ownership of various entities including Golden Little Elephant, St. Fortune Group, St, Tome, St. Hudson Group, St. Grand Ceremony, PH2003, Golden Pegasus, Golden Kirin, Harushio LLC, Golden Little Dragon, Golden Mermaid, Hatakaze, Qynm Family Holding, HS-QYNM Family, I Love GLE Trust Applegreen Family Trust and Trident Trust. |
| Xuemin Liu | Ownership of King Fame, 39 Applegreen Drive |
| Golden Little Elephant Inc. | Money and "▮▮▮▮▮▮▮▮▮▮▮▮ and (as the co-buyer with Qin) a ▮▮▮▮▮▮▮▮. |
| St Fortune Group LLC | Money |
| St. Tome LLC | Money |
| St. Hudson Group LLC | Money |
| St. Grand Ceremony LLC | Money and Plaza Suite Hotel 2009 Penthouse |
| PH2003 Unit LLC | Money and Plaza Suite Hotel 2003 Penthouse |
| Golden Pegasus LLC | Money |
| Golden Kirin LLC | Money and the ▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| Harushio LLC | Money and the ▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| Golden Little Dragon LLC | Unknown at this time |
| Golden Mermaid LLC | Unknown at this time |
| Hatakaze LLC | Unknown at this time |
| Qynm Family Holding LLC | Money and 377 Rector Place |
| HS-QYNM Family, Inc. | Money |
| I Love GLE Trust | Money |
| Applegreen Family Trust | Money |
| Ruolei Liu | Money |
| Xueyuan Han, a/k/a Hank Han | Money and 377 Rector Place |
| Hangyuan Zhang | Money |
| Trident Trust Company | Money |
| Bryn Mawr Trust Company | Money |
| Axos Bank | Money and 2009 and 2003 Penthouse mortgages |

240.    As discussed above, a key part of the sham is using Qin's use of his fake divorce and supposed ex-wife, as well as other co-conspirators, to hold assets in alter-ego sham companies to hide assets. The following describes how Qin and his co-conspirators used these alter-ego sham companies.

### D.    SMI Holdings Group Limited

241.    Starting ██████████████, just a few days after Plaintiffs entered into the Supplemental Agreement, and through approximately April 2018, SMI Holdings Group Limited ("SMI Holdings"), an entity wholly controlled by Hui Qin, and an affiliate entity of Respondents in the initial Arbitration, began to funnel and transfer ████████████████████ ████████ (JPMC_0000696; 702; 706; 712; 719; 724; 725; 731; 742; and 761).

242.    SMI Holdings was also responsible for transferring at least ████████████ ██████████████████████████████████ (JPMC_0001878; 1884; 1890; 1890; 1896; 1902; 1914; and 1930). Golden Little Elephant was an entity owned and operated by Ms. Liu that has since been dissolved. Prior to its dissolution, ████████████ ██████████████████████████████ (AXOS_0003162; AXOS_0003163;    JPMC_0000855;    JPMC_0000876;    JPMC_0000876;    JPMC_0000876; JPMC_0000876;    JPMC_0000880;    JPMC_0000884;    JPMC_0000891;    JPMC_0000897; JPMC_0000898; JPMC_0000920; JPMC_0000922; JPMC_0000929; JPMC_0000995.

243.    To further demonstrate the financial opportunity that the Supplemental Agreement presented Qin and his co-conspirators, and to further highlight Liu's role as the chief aid and co-conspirator in ████████████████████████████████ ██████████████████████████████ ██████1 (JPMC_0000724; 725; 736; 972; and 999). In addition to the transfers sent from ██, these transfers were used to purchase Qin's properties, specifically PH 2009 and PH 2003.



Notably, the ███████ transactions included notes describing the purpose of the transactions. Specifically:



244.   The ████████████████████████████████████ ████████████████████ (JPMC_00001924).

**E.   St. Fortune Group LLC**

245.   St. Fortune Group LLC is an alter ego of Qin.  Qin controls St. Fortune either directly or indirectly through Liu. Qin frequently uses St. Fortune Group LLC's bank account at East West Bank to fund his expenses.  These funds are directed by Qin without any conditions and are his.

246.   Using this entity, ██████████████████████████. SLG_0000015. ████████████████████████████████████████ ██████████. *Id.*

247.   █████████████████████████████████████ █████████████████████████████████████

248.    According to an information subpoena response from East West Bank, St. Fortune Group LLC has at least one bank account at East West Bank, ███████████. The account was opened on ███████████████████████████████████████████████ ██████. This money is actually Qin's. When asked about Qin's actual control over the entity, Liu, in an effort to defraud, ████████████████████████████████████████████ ████████████████████████.

### F.    St. Tome LLC

249.    ███████████████████████████████████████████████
███████████████████████████████████████████████████

(Qin_1761). Liu is the titular owner of St. Tome LLC, and Qin's purported "boss" – though neither was able to identify what ███ actually does for St. Tome LLC.

250.    St. Tome LLC is paying for Qin's lavish lifestyle (living at the Plaza Hotel penthouse suite and the 39 Applegreen mansion, driving the Rolls Royce "company car", having his credit card bills paid by the company, having his cellphone services paid by the company) and whatever remaining cash he has he will transfer back to Liu (pursuant to some mysterious prenuptial and divorce agreements) in order to shield them from creditors.

251.    ███████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████

███████████████████████████████████████████████
███████████████████████
███████████████████████████████████████████████
███████████████████████



c.  ███████████████████████████████
    ████████████ (XUE0000142)

d.  ███████████████████████████████
    ██████████████ (XUE0000142)

e.  ███████████████████████████████
    (XUE0000143)

f.  ███████████████████████████████
    ████████████ (XUE0000143)

g.  ███████████████████████████████
    ████████████ (XUE0000143)

h.  ███████████████████████████████
    ████████████ (XUE0000144)

i.  ███████████████████████████████
    ████████████ (XUE0000144)

252.   According to an information subpoena response from East West Bank, St. Tome
LLC holds at least one account at East West Bank, ████████████████. The account was opened
on ████████████████████████████████████████████████████████. There is
another St. Tome LLC account at East West Bank, ending in █████. See LIU_0001819. St. Tome
LLC used its East West Bank account ending in █████ to issue a credit card to Qin, to which he
charged at least $████████████████████████████████:

a.  ███████████████████████████████
    ███████████████████████████████
    █████████████████████████████; EWB account
    number ending █████ (LIU_0001819)

b.  ███████████████████████████████
    ████████████████████████ containing restaurant



253.    Qin has ████████████████████████████████████████
████████████████████████████████████████████████████. Qin_00003346.

254.    St. Tome LLC is actually an alter ego of Qin.  He uses it to conceal his illegal
activities and his assets.  The payments by St. Tome LLC and use of it by Qin personally to
cover his daily expenses show his personal control over the entity.

255.    Upon information and belief, St. Tome Holding Group Limited ("St. Tome Hong
Kong"), St. Tome (China), and St. Tome Pte Ltd. ("St. Tome Singapore") are all related entities
that Qin uses as shills to launder his money and hide his assets.

**G.    St. Hudson Group LLC**

256.    Similar to St. Fortune Group LLC and St. Tome LLC, St. Hudson Group LLC is
another entity that is an alter ego of Qin. Qin uses it for his personal expenses. Qin is in actual
control over it (though Emma is titular manager), and it paid for Qin's legal expenses:



a.    ████████████████████████████
       ████████████████ XUE0000145
b.    ████████████████████████████
       ████████████████ XUE0000146; LIU_0001874

257.    St. Hudson Group LLC also ██████████████████████████████████ ██████████ LIU_0001070. Qin's address ████████████████████████████ ██████████

258.    Payments by ███████████████████ were directed by ███ to ███████████ ██████ because he is secretly in control of the entity as a part of his sham to claim poverty. St. Hudson Group LLC is ███████████████████, even though he does not list ███████████ ███████████████████████████████████████████████████ Qin uses to fraudulently obtain benefits from banks and credit cards.

### H.    St. Grand Ceremony LLC

259.    St. Grand Ceremony LLC, registered at 39 Applegreen Drive, ████████████████ ████████████████████████████████" ECF 207-7 at 6, 7. However, Qin actually controls this entity and Liu is a shill for him and co-conspirators.

260.    As discussed in more detail herein, through St. Grand Ceremony LLC and PH2003 Unit LLC, Liu claims to control ownership of Suites 2003 and 2009, respectively, in the Plaza Hotel, located at 1 Central Park South, #2003/#2009, New York, NY 10019.

261.    On February 5, 2020, St. Grand Ceremony LLC purported to purchase Suite 2009 from Luxury Team, Inc. (Qin_00002208-12 (deed)); LIU_0000762, 781 (Certification of Title for Suite 2009).

262.    On March 18, 2021, Liu transferred ██████████████████████████ ███████████████████████████████████████████████████████ (LIU_0000153). These were part of the sham to act for Qin, to hinder creditors, and to deceive others as to the true control of the ownership.

263.    On April 28, 2021, just six days after the CIETAC Award was issued in favor of Plaintiffs, ████████████████████████████████████████████████ ████████████████████████████. Qin_00003463-3531. Pursuant to that agreement, █████ ████████████████████*Id.*████████████████

███████████████████████████ (*id.* at Qin_00003471). Upon information and belief, Axos Bank utilized credit, books, or other representations of Qin or companies under Qin's control as part of its decision to lend on the penthouse. Upon information and belief, Axos Bank knew or should have known that it was placing a lien on the penthouse as part of Qin's actual intent to hinder his creditors because, at the time of Axos Bank loan, Qin faced significant judgments that were public record. Upon information and belief, Axos Bank's loan was made as part of Qin's attempt to hinder collection by his creditors and act in concert with Liu in the conspiracy.

264. St. Grand Ceremony LLC is a shill used by Qin and his co-conspirators to hinder his creditors and hide his assets.

### I. PH2003 Unit LLC

265. Like St. Grand Ceremony LLC, PH2003 Unit LLC is a sham entity used to hide Qin's actual ownership of the Penthouse Suites at the Plaza Hotel.

266. According to Liu, ███████████████████████████ ███████. ECF 207-7 at 6, 7. However, Qin actually controls this entity and Liu is a shill for him and co-conspirators.

267. ████████████████████████████████████████ ████ (Qin_00000944-48 ████). This was a sham use of the LLC to disguise Qin's actual control and ownership.

268. On the same day, PH2003 Unit LLC and Luxury Team, Inc. entered into a mortgage agreement with Maxim Credit Group LLC as mortgagee for $27,000,000. (*See* Qin_00003406-07 (mortgage agreement). Upon information and belief, Xueyuan "Hank" Han's girlfriend Junjun Feng works as an investment banking analyst at Maxim Credit Group LLC.

This mortgage was based on financial information that Qin and Liu have concealed to continue to hinder creditors and perpetuate the false image of separateness.

269.    On February 23, 2021, Maxim Credit Group LLC assigned to Axos Bank the $27 million mortgage that PH2003 Unit LLC and Luxury Team Inc. made for the Plaza Suites. Qin_00003393-3402. The mortgage was assumed and modified by St. Grand Ceremony LLC, Luxury Team Inc. and Maxim Credit Group LLC. St. Grand Ceremony LLC, PH2003 Unit LLC and Luxury Team Inc. are alter-egos of Qin.

270.    On March 18, 2021, ██████████████████████████
█████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████.
(LIU_00000148.). This was part of the sham to act for Qin, to hinder creditors, and to deceive others as to the true control of the ownership.

271.    On April 28, 2021, just six days after the CIETAC Award was issued in favor of Plaintiffs, Axos Bank entered into a loan agreement as lender, with PH2003 Unit LLC and St. Grand Ceremony LLC as borrowers. Qin_00003463-3531. Pursuant to that agreement, Axos Bank loaned the borrowers $26,300,000. *Id.* ████████████████████████████
██████████████████████████████ (*id.* at Qin_00003471). Thus, Axos bank bought the mortgage on the Plaza Suites less than a week after the CIETAC award was issued.

## J.    Golden Pegasus LLC

272.    █████████████████████████████████████████████
with its address at 39 Applegreen Drive. ████████████████████████
████████████████████████████ (LIU_0001929; LIU_0000146-0000147).

273. 

t. (LIU_0001956-8.) Also in May 2022, Golden Pegasus .

274. In Golden Pegasus LLC's East West Bank statements there are many other transactions exceeding $10,000:



a. ████████████████████

   (LIU_0001932/1929).

b. ██████████████ (LIU_0001929).

c. ████████████████████

   ██████ (LIU_0001942; 1956; 2028).

d. ████████████████████

   (TD_0001363).

e. ████████████████████

   (LIU_0001913).

f. ████████████████████

   ██████████ (LIU_0001942/1927).

g. ████████████████████████ (LIU_0001936; 1938;

   1942; 1956).

275. Upon information and belief, Golden Pegasus LLC conducts no business, let alone has operations to justify these significant transactions. Rather, it is just a shill used by Qin to hide his assets and launder his money.

**K.   Golden Little Elephant Inc.**

276. Golden Little Elephant Inc. was formed by Liu (as a shill for Qin), but she says it was ██████." ECF 207-7 at 7; *see also* ECF 176-1 at 25 (██████████████████

██████

277. ███████████████████████████████████. (LIU_0001071.)
████████████████████████████████████████ to Golden Little Elephant Inc.

278.    Between ████████████████████████████████████
████████████████████████ Chase accounts (-2801 and -5208) (LIU_0002052; JPMC_0000956;    JPMC_0000941;    JPMC_0000940;    JPMC_0000922;    AXOS_0003144; JPMC_0000898;    JPMC_0000871;    JPMC_0000872;    JPMC_0000866;    JPMC_0000860; JPMC_0000798;    JPMC_0000851;    JPMC_0000846;    JPMC_0000841;    JPMC_0000837; JPMC_0000829;    JPMC_0000824;    JPMC_0000818;    JPMC_0000812;    JPMC_0000804; JPMC_0000793;    JPMC_0000770;    JPMC_0000768;    JPMC_0000760;    JPMC_0001930; JPMC_0000742).

279.    ████████████████████████████████████
████████████████████ (JPMC_1884-1914).

280.    Golden Little Elephant Inc. in reality is a shell entity used by Qin to hold high-value assets.  For instance, Golden Little Elephant Inc. ████████████████
████████████████████████████████████████████ (discussed further herein).  For a company that reported only making ████████████████ (AXOS_0005037) ████████████████████████████████████
████████████ (LIU_0001809).

### L.    Golden Kirin LLC

281.    Golden Kirin LLC, also registered at 39 Applegreen Drive, is owned by Liu as a shill for Qin and was formed ████████████████████████ ECF 207-7 at 7. In fact, like Golden Little Elephant Inc., Golden Kirin LLC is actually a sham entity through which Qin ████████████████████████████.

282.    ████████████████████████████████████
████████████████████████████████████████

█████ " LIU_0001807. ████████████████████

████████████████

283.    Qin uses Golden Kirin LLC as a sham entity through which to conceal the true nature of his ownership of assets.

### M.    Harushio LLC

284.    ████████████████████████████ ECF 207-7 at 7.  In actuality, Qin controls and owns Harushio LLC.

285.    ████████████████████████

████████. LIU_0001808. ████████████████

████████████████████████████████████

████████████████████

286.    ████████████████████████████. ECF 52 ¶ 8; *id.* at 14 ████████████████

### N.    Golden Little Dragon LLC, Golden Mermaid LLC & Hatakaze LLC

287.    Golden Little Dragon LLC, Golden Mermaid LLC and Hatakaze LLC are additional LLCs created by Liu and registered at 39 Applegreen Drive.

288.    There are no records of any business or other legitimate purpose for the creation of Golden Little Dragon LLC, Golden Mermaid LLC or Hatakaze LLC and they appear to be additional shills set up to further Qin's scheme of concealing his assets.

289.    Additional investigation may establish Qin's control and use of Golden Little Dragon LLC, Golden Mermaid LLC, and/or Hatakaze LLC to conceal his assets.

### O.    Qynm Family Holding LLC

290.    Qynm Family Holding LLC is "owned" by Xueyuan "Hank" Han, one of Qin's and Liu's co-conspirators. LIU_0000049. Qin is the real owner of this entity. Qynm Family

Holding LLC has an address at 377 Rector Place, Unit PH-B, New York, NY 10280 (LIU_0000051), where Qin initially denied service in the Confirmation Action before listing it as his residence on ███████████████.

291.    The word "Qynm" is likely an intentional misspelling of the name "Qin" and used to distance the LLC from Qin.

292.    . LIU_0000051.

(LIU_0000048-49).

293.    Qynm Family Holding LLC is Qin's alter ego, a sham entity created by Qin to hide assets.

### P.    HS-QYNM Family, Inc.

294.    Likewise, HS-QYNM Family, Inc. is a sham entity created to hide Qin's assets, using the same purposeful misspelling of his name. HS-QYNM Family, Inc. is also "owned" by Hank Han and registered at 9-07 Prince Street #4c, Flushing, NY 11354, but Qin is the real owner of this company.

295.     (LIU_0001929; LIU_0000146-0000147).

296.    Upon information and belief, this transfer was directed by Qin to further distance his assets from Plaintiffs.

### Q.    Luban Construction, Inc.

297.    Luban Construction, Inc. was formed by Liu "███████████████ 35 Applegreen Drive, Old Westbury, NY 11568. ECF 207-7 at 6.

298.    ██████████████████████████████████████

███████████████. Upon information and belief, there is no legitimate construction done

by Luban Construction and it is an alter-ego of Qin and a shill. No contracting license exists for

that "construction" entity, nor is there a phone number, business front, or any other evidence it

does business.

299.    Luban Construction, Inc. is, on information and belief, used solely to launder

Qin's money with the impression that it is the former Luban Construction, an entity that formerly

operated in New Jersey years ago.

**R.    Qin Family Trust**

300.    The Qin Family Trust is Qin's alter ego, a sham created by Qin to hide assets

(after he knew he had defrauded creditors in China). *Id.* at 11. ████████████████████

███████████████████ *Id.*

301.    ██████████████████████████████████████

███████████████████████████████████████████

██████ Qin_00000512; ECF 207-7 at 11 ████████████████████

███████████████████████████████████████████

██████████████████████ (Qin_00000570-573).████████████

███████████████████████████████████████████

██████████

302.    This trust is a mechanism Qin is using to hide away his money. In Qin's

deposition, he was shown the ██████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████ (Dep. 497:22-25, 498: 2-4.) ███████

████████████████████████████████████████ (*Id.* at 415:16-

19.)

303.    Qin has ownership, direction, and/or control over the Qin Family Trust by directing his agents, conspirators, and shills to act for it. The Trust was formed for the purpose of a criminal tax fraud. When questioned about Qin's actual control and use as mechanism for fraud, ███████████████████████████████████████████████████.

### S.    I Love GLE Trust

304.    On March 12, 2021, ████████████████████████. LIU_0000680. ██████ ████████████████████ LIU_0000679-80; LIU_0000159. ████████████████ LIU_0000680, 746. ███████████████████████████████████ ████████ LIU_0000690. ███████████████████████████████



305.    ███████████████████████████████████████████

███████ *See infra* (LIU_0000148, 153).

306.    Qin has ownership, direction, and control over the I Love GLE Trust using Emma Liu as a shill. It is his alter ego and part of the scheme, and contributions to the I Love GLE Trust are assets of Qin.

### T.    Applegreen Family Trust or Applegreen Trust

307.    ████████████████████████████████████████████



LIU_0001609; ECF 207-7 at 11. The beneficiaries are Liu and her children. *Id.*

308.    Additional investigation may establish: Qin's ownership, direction, and control over the Applegreen Family Trust; contributions to the Applegreen Family Trust; and disbursements from the Trust.

309.    As discussed in detail above, ███████████████████████

███████████████████████████████████████████████████████.



. Qin and his co-conspirators use trusts as shams to hide his money from his creditors.

### U.    Other Offshore Entities Qin Uses with No Explanation

310.     ██████████████████████████████████████ (Qin_00002364-Qin_00002419). But Qin testified he has no ██████████████ adding: ██████████████████████████████████ Dep. 271:17-25; 273:4-12. As to Luxury Team Inc., a company associated with Qin's wife, ████████ ██████████████████████████████████████" *Id.* at 278:20-279:7.

311.     Qin claims he made ████████ in ██████████████████████████ ██████████████████████████ *Id.* at 289:10-20. ████████████ ██████████████████████████████████████ ██████████████████████████████████████ ████ See ECF 176-1 at 17-23; (Qin_00000396-Qin_00000439); (Qin_00000885-920). ██ ██████████████████████████████████ Dep. 367:4-6.

312.     Qin's claims of ignorance are not believable. These entities and others formed by Qin and Liu have no apparent business purpose.  They are, upon information and belief, part of Qin's scheme and alter-egos of Qin.

## VII.    Qin's Assets Hidden Through Disguised Ownership and Control

313.     As discussed above, a key part of the sham is Qin's use of his fake divorce and supposed ex-wife, as well as other co-conspirators, to hold assets in alter-ego sham companies to hide assets. The following assets are Qin's, held using one scheme or another, but actually under

Qin's disguised ownership and control. The District Court held there is "a reasonable doubt about the bona fides of the transfer of assets between" Qin and his wife (ECF 296 at 5); *see also* ECF 237-1 at 37:1-3; 85:4-8 (THE COURT: Qin's explanation as to "his wife . . . makes no sense to me"; "I can't imagine [why an ex-wife] would be paying a million dollars of [her ex-husband's] legal fees"). ███████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████ Dep. 42:11-13; 84:13-25. It is █████████████████████████████████. *Id.* at 535:4-537:12. Qin claims he was somehow simultaneously divorced in the U.S. and not divorced in China. *Id.* at 509:18-24; 511:16-24. They "█████████████████████████████████████

████████" *Id.* at 341:2-11.

### A.    39 Applegreen Drive

314.    On March 7, 2011 Qin originally purchased 39 Applegreen Drive, Old Westbury, NY 11568 ("39 Applegreen Drive") from Steven and Mindy Kantor for $15,880,000 through the BVI entity King Fame Trading Limited, of which Qin was the sole shareholder. (*See* Nassau County Public Records Search; ECF 115 ¶ 19 (Qin Decl.); ECF 193 ¶ 96 (Qin Decl.); LIU_0000046, 47).

315.    On a document purportedly dated August 30, 2018, ████████████████

██████████████ (ECF 193 ¶ 96 (Qin Decl.); LIU_0000047; LIU_0000001-3; Qin_00003342-44; Qin_00002496 (████████████████████████████████████████████

████████; Qin_00000847, 852, 848-51 ███████████████████████████████████); *see also* Dep. 267:23-266:4 ██████████████████████████████████████

███████████████████████ ")).

316.    On April 2, 2020 (just four days after Plaintiffs commenced the underlying CIETAC arbitration, *see* ECF 1 ¶ 16), Xuemin Liu as sole shareholder of King Fame then

transferred 39 Applegreen Drive to herself personally for nominal consideration of $10. (LIU_0000004-1; *see also* LIU_0000017-20.)

317.    Presented with evidence of these transfers, the Southern District of New York held that "Respondent [Qin] transferred ownership of his home in Old Westbury, New York, to his ex-mother-in-law and ex-wife for only ten dollars in a series of transactions occurring shortly after the underlying arbitration was commenced in China. . . . The timing of the transactions, as well as the minimal consideration offered for the home, suggest that the transfer was not made for genuine business purposes." ECF 61 at 2.

318.    On May 21, 2020, Xuemin Liu supposedly transferred 39 Applegreen Drive to herself and her daughter, Qin's purported ex-wife Emma, as joint tenants with rights of survivorship, for no consideration. LIU_0000021-24.

319.    Nevertheless, Qin continued to retain possession and control over the property after the transfer, residing there and listing it as his residence ███████████████. Qin_00002719-2788. ████████████████████████. Liu_0001208

320.    On April 27, 2022 (*the day after the Court denied Qin's request for a sur-reply* on Plaintiffs' summary judgment briefing, *see* ECF 41), Xuemin Liu and Duo Liu transferred ownership of 39 Applegreen Drive to Applegreen LLC for no consideration ($0), ██████████ ████████████████████████████████████████ ██████████████████████ (LIU_0001649-53; LIU_0001714). ██████████ ████████████████████████████████████████ ████████████████████████████████████████

(LIU_0001714). ████████████████████████████. *Id.*

**B.       Penthouse Suites at the Plaza Hotel**

321.    Through PH2003 Unit LLC and St. Grand Ceremony LLC, Qin's ex-wife Emma Duo Liu claims to control ownership of Suites 2003 and 2009, respectively, in the Plaza Hotel, located at 1 Central Park South, #2003/#2009, New York, NY 10019 (the "Plaza Suites" and each, "Suite 2003" or "Suite 2009"). According to Ms. Liu, █████████████████████

85

██████████████████████████████ ; likewise, St. Grand Ceremony LLC "███████████████████

██████████████████████████████ " ECF 207-7 at 6, 7.  However, Qin actually

controls these entities and Ms. Liu is a shill for him and co-conspirator as discussed below.

322.   On July 2, 2008, DJ Condo LLC purchased the deed to Suite 2003 from Plaza

Residential Owner LP. (LIU_0000867, 880.) On March 14, 2019, PH2003 Unit LLC purchased

Suite 2003 from DJ Condo LLC. (Qin_00000944-48 (███)). This was a sham use of the LLC to

disguise Qin's actual control and ownership.

323.   On October 5, 2017, Luxury Team, Inc. purchased Suite 2009 from Christian P.

Candy. LIU_0000867, 872. In response to Plaintiffs' document subpoena, Liu conspicuously did

not state whether she owns Luxury Team Inc. but merely stated it "███████████████████

███████████████████████████████████ ." ECF 207-7 at 6-7.

Luxury Team is a sham, created to disguise Qin's actual control and ownership, as discussed

below.

324.   Coincidentally, Between ████████████████████████ , Qin

transferred   over   ████████████████████████████████████

(SCBNY000003; JPMC_0000725; and 730). Specifically, Qin's alias, Li Muk Lam (a/k/a Muk

Lam Li), transferred over ████████████████████████████

████████████ .

325.   Notably, these fraudulent transfers coincide with the October 5, 2017 purchase of

Suite 2009 by Luxury Team Inc from Christopher Candy for $32,700,000 (LIU_0000871). In

fact, Liu's personal Chase ███████████████████████████████

███████████████████████ (JPMC_0000730), the same day Luxury Team Inc

purchased the property (LIU_0000871).  Specifically:

326.   ████████████████████████████████████████

████████████████████████████ JPMC_0000724.

327.   ████████████████████████████████████████

████████████████████████████ JPMC_0000725.

328. ███████████████████████████████████████
███████████████████████████ JPMC_0000736.

329. ███████████████████████████████████████
██████████████████████" JPMC_0000736.

330. The purchase of Suite 2009 was facilitated by Liu and made at the direction of Qin with funds laundered from his personal accounts and from ████████████.

331. On March 14, 2019, PH2003 Unit LLC and Luxury Team, Inc. entered into a mortgage agreement with Maxim Credit Group LLC as mortgagee for $27,000,000. (*See* Qin_00003406-07 (mortgage agreement). Upon information and belief, Xueyuan "Hank" Han's girlfriend Junjun Feng worked as an investment banking analyst at Maxim Credit Group LLC. This mortgage was based on financial information that Qin and Liu have concealed to continue to hinder creditors and perpetuate the false image of separateness.

332. On February 5, 2020, St. Grand Ceremony LLC purported to purchase Suite 2009 from Luxury Team, Inc. (Qin_00002208-12 █████); LIU_0000762, 781 ████████████
████████████.

333. On February 23, 2021, Maxim Credit Group LLC assigned to Axos Bank the $27 million mortgage that PH2003 Unit LLC and Luxury Team Inc. made for the Plaza Suites. Qin_00003393-3402. The mortgage was assumed and modified by St. Grand Ceremony LLC, Luxury Team Inc. and Maxim Credit Group LLC. St. Grand Ceremony LLC, PH2003 Unit LLC and Luxury Team Inc. are alter-egos of Mr. Qin.

334. On March 12, 2021, ██████████████████████. LIU_0000680. ████
█████████████████████████████████████████████ though Mr. Qin is using her as a shill. LIU_0000679-80.

335. ███████████████████████████████████████
██████████████. LIU_0000690. Thus, it was created to hinder creditors.

336. ███████████████████████████████████████
███████████████████████████████████████

████████████████████████████████████████████████████

(LIU_00000148.) ██████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████. (LIU_0000153). These were part of the sham to act for Qin, to hinder creditors, and to deceive others as to the true control of the ownership. The use of a bank trustee was, itself, part of the sham designed to make it harder to challenge the transfers. ███████████████████████████████████████████████.

337.    On April 28, 2021, just six days after the CIETAC Award was issued in favor of Plaintiffs, Axos Bank entered into a loan agreement as lender, with PH2003 Unit LLC and St. Grand Ceremony LLC as borrowers. Qin_00003463-3531. Pursuant to that agreement, Axos Bank loaned the borrowers $26,300,000. *Id.* ██████████████████████████████████

██████████████████████████████████ (*id.* at Qin_00003471). Thus, Axos bank bought the mortgage on the Plaza Suites less than a week after the CIETAC award was issued.

338.    Qin controls the I Love GLE Trust in reality, using his "ex" wife as a shill. Qin worked in concert with Xueyuan Han, Feng, and Liu to place the penthouse apartments out of the reach of creditors as part of his scheme.

**C.        377 Rector Place**

339.    Qin actually owns 377 Rector Place, Unit PH-B, New York, NY 10280 ("377 Rector Place"), though he uses a shill, Xueyuan "Hank" Han, as a go-between to own this property through HFRE LLC. Qin applied for a Cathay Bank credit card in June 2021 listing 377 Rector Place as one of his addresses. As discussed below, Qin is the obvious actual owner, but has used Hank as a cutout shill to hinder his creditors. HFRE LLC is the alter ego of Qin, as discussed herein.

340.    Qynm Family Holding LLC has an address at 377 Rector Place, which is another address associated with Qin but which he denies living at or owning. See ECF 51 ¶¶ 4-5; ECF 225-2, Response No. 13 (Qin's counsel listed 377 Rector Place as a "past" address).

341.    377 Rector Place was the first address that Plaintiffs attempted to serve Qin in the Confirmation Action, but service was "returned." Despite being returned, the day after service was made, Qin engaged counsel, proving that service at 377 Rector Place in fact provided Qin with notice, and that Qin's return of service was part of his efforts to defraud and evade creditors. After denying service at this address, Qin listed 377 Rector Place as his address on his 2022 federal tax return.

**D.        35 Applegreen Drive**

342.    35 Applegreen Drive, Old Westbury, NY 11568 ("35 Applegreen Drive") was a property held by Luban Construction, Inc. ██████████████████████████████ ██████████████████████████████ though she was married to Qin at the time. ECF 207-7 at 6. In July 2020, Luban Construction, Inc. obtained a $2 million loan for the property using Qin and Liu's credit. Upon information and belief, there is no legitimate construction done by Luban Construction and it is an alter-ego of Qin and a shill. No contracting license exists for that "construction" entity, nor is there a phone number, business front, or any other evidence it does business.  It is, on information and belief, used solely to launder Qin's money with the impression that it is the former Luban Construction, an entity that formerly operated in New Jersey years ago. 35 Applegreen property purportedly sold in 2021 or 2022. Liu claims she no longer owns or controls this company, but she has not accounted for the sales proceeds.

**E.        Luxury Vehicles – Rolls Royce and Mercedes**

343.    ████████████████████████████████████████ ██████████████████████████████ are owned by Qin through alter-ego entities.

344.    Qin purchased, uses, and controls at least the three Rolls Royce vehicles listed above. ████████████████████████████████████████ ████████████████████████████████████████ ██" LIU_0001805-06.

██    That vehicle is a ████████████████████████ ████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████ *Id.* This is a " ██████████████████████████

████████████████████████████████████████

346.  ████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████ LIU_0001807.

347.  ██████████████████████████████████████

██████████████████████ ECF 207-7 at 7. ████████████████████

████ LIU_0001812 ███████████████████████████████████

██████████████████████████████ LIU_0001814. Qin is the actual owner.

348.  ████████████████████████████████████

█████████████████████████████████████████████

LIU_0001810. ████████████████████████████████████████

██████████████████ . LIU_0001809.

349.  ██████████████████████████████████████

████████████ ECF 207-7 at 7; *see also* ECF 176-1 at 25 ██████████████

████████████ ). ███████████████████████████████████████

████████████████████████████████████████ (LIU_00018011.)

350.  ██████████████████████████████████████

█████████████████████████████████ " ECF 207-7 at 7.  In actuality, Qin controls

and owns Harushio LLC.  ████████████████████████████████

████████████████ . LIU_0001808. █████████████████████████

█████████████████████████████████████████████

████████████████████████████

351. ████████████████████████████████████████

███████████████████████████. ECF 52 ¶ 8; *id.* at 14 (registration). Qin owns this vehicle in reality.

352. ████████████████████████ In addition to the Rolls Royces described above, ████████████████████████████████████████

████████████████████████ LIU_0001815. ████████████████

████████████████████████████. LIU_0001817. ████████

████████████████████████████████████████

353. Additional vehicles ████████████████████████████

████████████████ (Dep. 404:34-9) and an ████████████████

████ (*Id.* at 297:23-298:5).

354. Qin also claims he keeps/owns a ████████████████████

████████████. *Id.* at 403:14-18.

## VIII.    Bank Accounts Used in the Scheme

355. Throughout post judgment discovery, Plaintiffs have received Qin and Liu's personal bank records and that of the various sham entities from institutions such as Standard Chartered Bank, JP Morgan Chase, Axos Bank, Cathay Bank, TD Ameritrade, and East West Bank. Just days after entering into the Supplemental Agreement, these financial records illustrate Qin's complex scheme to hide assets and to funnel over ████████████████████

████████████ Despite cries of insolvency, ████████████████████

████████████████████████.

356. Qin and his conspirators used a deep web of transactions to fraudulently transfer money, purchase personal and real property, and pay legal fees all while shielding assets from creditors.

## A.        Qin's Standard Chartered Bank Account ████████

357. Standard Chartered Bank U.S. holds an account for Qin, ████████████

████████. Qin made the following transactions in amounts greater than $10,000:



a. ███████████████████ (SCBNY000003);

b. ████████████████████

c. ███████████████

d. ████████████████████████

e. ██████████████████

f. ████████████████;

g. █████████████████ (SCBNY000003);

h. ███████████████████ (SCBNY000003);

i. ███████████████████ (SCBNY000003);

j. ███████████████████ (SCBNY000003);

k. ███████████████████ (SCBNY000003);

l. ████████████████ (0260579029)

m. ██████████████ (0260579029)

n. █████████████ (325096053953)

o. █████████████ (325096053953)

p. █████████████ (325096053953)

q. █████████████ (325096053953)

r. (325096053953)

s. (SCBNY000003);

t. (SCBNY000003);

u. (SCBNY000003);

v. (SCBNY000003);

w. (SCBNY000003);

x. (SCBNY000003);

y. (SCBNY000003);

z. (SCBNY000003);

aa. (SCBNY000003);

bb. (SCBNY000003);

cc. (SCBNY000003);

dd. (SCBNY000003);

ee. (SCBNY000003);

ff. (SCBNY000003);

358.    Qin funded money through this account from overseas entities he controlled. Thus, there are certain foreign entities, whose identities are unknown, that are part of this conspiracy and are alter-egos of Mr. Qin.

**B.        Qin's Cathay Bank Account** ████

359.    Qin holds a checking account (████████) and savings account (████ ████████) at Cathay Bank. *See* Qin_00000506-85. Qin made the following transactions in amounts greater than $10,000 using this account:

    a.    ███████████████████████████ (Qin_00000509).

    b.    ███████████████████████████ (Qin_00000512)

    c.    ███████████████████████████ (Qin_00000573)

    d.    ███████████████████████ ████████ (Qin_00000524)

    e.    ███████████████████████████ (Qin_00000530)

    f.    ███████████████████████████ (Qin_00000530)

    g.    ███████████████████ (Qin_00000546)

    h.    ███████████████████ ██████ (Qin_00000556)

    i.    █████████████████ (Qin_00000560) ██ ███████████████████ ███████████████████ ████

**C.        Qin's Chase Bank Account** ████████████

361.    Qin has at least two Chase bank accounts of which Plaintiffs are aware, but he has only produced records from ████████████████████. Qin_00002889-3030. Qin refuses to produce bank records from 2017 or 2021. The records he has produced show the following transactions in amounts greater than $10,000:

a.    ████████████████████████████ (JPMC_0001927);

b.    ████████████████████████
(Qin_00002926)

c.    ███████████████ (Qin_00002890).

d.    ████████████████████████████
████████████████ (Qin_00002910)

e.    ████████████████████████ (Qin_00003014).

f.    ████████████████████████
████████████████ (Qin_00002910).

362.    It appears wires of $440,000 in April 2021 and May 2021 to this account were made for illicit purposes, which were accompanied by wire transfer memoranda, including a memorandum that one of the wire transfers was a "Loan to Beneficiary". (*See USA v. Hui*, No. 2:23-mj-00865-JMW (E.D.N.Y.) at Dkt. 5). It also appears the wires used one of Qin's aliases "Muk Lam Li" to launder money as part of his sham.

**D.        Qin's transfers from SMI HSBC Account**

363.    Starting on March 22, 2017, just a few days after Plaintiffs entered into the Supplemental Agreement, and through approximately April 2018, ████████████████ ████████████ an entity wholly controlled by Hui Qin, and an affiliate entity of Respondents in the initial Arbitration, b████████████████████████ ████████ (JPMC_0000696; 702; 706; 712; 719; 724; 725; 731; 742; and 761).

364.    Between ████████████████████████████ ████████

**E.        Qin's transfers from Li Muk Lam alias (HSBC account)**

365.    The Supplemental Agreement presented Qin and his co-conspirators a financial opportunity. Qin's alias, Li Muk Lam (a/k/a Muk Lam Li), transferred over ███████████

████████████████████████████████████████████████████

████████████ (JPMC_0000724; 725; 736; 972; and 999). ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████ Specifically:

a.    ██████████████████████████████████████ JPMC_0000724.

b.    ██████████████████████████████████████ JPMC_0000725.

c.    ██████████████████████████████████████ JPMC_0000736.

d.    ██████████████████████████████████████ JPMC_0000736.

366.    █████████████████████████████████████████

████████████████ (JPMC_00001924).

F.        **Emma Duo Liu's Bank Accounts**

367.    Over the years, Liu has held bank accounts across Chase, East West Bank, and TD Ameritrade while controlling the bank accounts of several sham entities described in detail below. Each of these accounts played a role in Qin's scheme to shield his assets from creditors. Liu's personal bank accounts alone demonstrate the ███████████████████████████

████████████████████████████. Liu has blocked Plaintiffs ability to access these accounts throughout post-judgment discovery of the underlying Confirmation Action. Upon information and belief, her personal accounts yet to be produced will further demonstrate her participation and facilitation of Qin's conspiracy to commit fraud.

1.        *East West Bank Accounts*

95

368.    According to East West Bank's information subpoena response, Liu holds an East West Bank account ███████████████████████████████████████ ███████████████████████████████. Upon information and belief, Qin secretly controls this account and uses Liu's personal East West Bank account to move and shield assets across the various sham Applegreen entities.

369.    In addition to Liu's personal account at East West Bank, Liu and Qin control at least 9 accounts at East West Bank to shield their assets from Plaintiffs. These accounts regularly transfer hundreds of thousands of dollars among each other without any apparent purpose. These accounts have been used to make mortgage payments; pay for Qin's personal expenses; pay the leases for cars used by Qin; pay Qin's legal expenses; and fund personal brokerage accounts. This is but a short list of the many ways the East West Bank accounts have been used by Qin and his conspirators. Specifically, Liu and Qin control accounts for the following accounts:

a.    St Tome LLC (████████);

b.    Luban Construction Inc. ████████);

c.    St Hudson Group LLC ████████;

d.    St Grand Ceremony LLC (████████

e.    St Fortune Group LLC ████████;

f.    Golden Little Elephant Inc. (████████; and

g.    Golden Pegasus LLC ████████

370.    These accounts form an integral part of the conspiracy to commit fraud. During his deposition, Qin repeatedly testified that ████████████████████ █████████████████████████████████████████ █████████████████████████████████████████ █████████████████████████████████████████ Dep. 154:4-23. ████████████████ █████████████████████████████████████████ █████████████████████████████████████████



█████████ Dep. 454:6-455:11.)

a. ██████████████████████████

(Qin_00000536)

b. ██████████████████████████

(Qin_00000536)

c. ██████████████████████████

(Qin_00000541)

d. ██████████████████████████

(Qin_00000546)

e. ██████████████████████████

(Qin_00000546)

f. ███████████████████████████

(EWB_0000180;    EWB_0000246;    EWB_0000166;    EWB_0000232;    EWB_0000138;

EWB_0000136; and LIU_0001673).

g. ██████████████████████████

██████████████████).

372. ███████████████████████████

███████████████████████. Specifically:

a. ██████████████████████████

█████████████████ (LIU_0001956);

b. ██████████████████████████

█████████████████ (LIU_0001956);

c. ██████████████████████████

█████████████████ (LIU_0001956);

d. ███████████████████████████████
███████████████ (LIU_0001956); and

e. ███████████████████████████████
███████████████ (LIU_0001956).

373. ███████████████████████████████
███████████████████████. Specifically,

    a. ███████████████████████████
(LIU_0001932/1929).

    b. ███████████████████ (LIU_0001929).

    c. ███████████████████████████
██████ (LIU_0001942; 1956; 2028).

    d. ███████████████████████████
(TD_0001363).

    e. ███████████████████████████
(LIU_0001913).

    f. ███████████████████████████
███████████ (LIU_0001942/1927).

    g. ████████████████████████ (LIU_0001936; 1938;
1942; 1956).

374. ███████████████████████████████
███████████████████. (LIU_0001900).

## 2. *Chase Bank Accounts*

375. Liu held a number of accounts at JP Morgan Chase. These accounts were
███████████████████████████████████████████.
Specifically, in addition to Qin's personal accounts referenced herein, Liu and Qin controlled the
following accounts at JP Morgan Chase:

    a. Duo Liu Checking (███████████)

b.      Duo Liu Savings ██████████

c.      Duo Liu Savings █████████

d.      Golden Little Elephant Inc. ████████

e.      Luban Construction Inc. Checking (████████

f.      Luban Construction Inc. Savings (████████

g.      St. Grand Ceremony LLC Checking (████████

h.      St. Grand Ceremony LLC Savings (████████

i.      St. Tome LLC ██████████

376.     Duo Liu used her personal checking account ██████with funds received from Qin, to ██████████████████. Specifically:

a.      ████████████████████████████████████████████████████████████████████████████████████████████████. (JPMC_0000957; JPMC_0000929; JPMC_0000922; AXOS_0003163; AXOS_0003171; JPMC_0000898; JPMC_0000891; JPMC_0000885; JPMC_0000881; JPMC_0000877; JPMC_0000872; JPMC_0000867; JPMC_0000863; JPMC_0000859; JPMC_0000855; JPMC_0000850; JPMC_0000845; JPMC_0000841; JPMC_0000836; JPMC_0000832; JPMC_0000829; JPMC_0000823; JPMC_0000817; JPMC_0000817; and JPMC_0000811).

b.      ████████████████████████████████████████████████.

377.     Duo Liu has used her personal savings account ██████ to make the following significant transfers to ██████████████████████████

a.      ████████████████████████████████████████ (37-87217331) (JPMC_0000872; JPMC_0000867; JPMC_0000863; JPMC_0000860; JPMC_0000829).

b.      ████████████████████████████████████████████████ (LIU_0001330; JPMC_0000855; JPMC_0000829; JPMC_0000812; JPMC_0000804; JPMC_0000777; JPMC_0000742).

c. ████████████████████████████████████████

(39-7322519 and 37-82792015).

378. Duo Liu ████████████████████████████████████

█████████████████████████████████ Specifically:

a. ███████████████████████████████████████████

████████████████████████████████████ (JPMC_0000850;

JPMC_0000844;    JPMC_0000840;    JPMC_0000836;    JPMC_0000829;    JPMC_0000823;

JPMC_0000822;    JPMC_0000817;    JPMC_0000811;    JPMC_0000807;    JPMC_0000803;

JPMC_0000443;    JPMC_0000797;    JPMC_0000796;    JPMC_0000792;    JPMC_0000791;

JPMC_0000793;    JPMC_0000785;    JPMC_0000781;    JPMC_0000775;    JPMC_0000768;

JPMC_0000764;    JPMC_0000759;    JPMC_0000750;    JPMC_0000741;    JPMC_0000735;

JPMC_0000729; JPMC_0000723; JPMC_0000705; JPMC_0000701; JPMC_0000695).

379. The ████████████████████████████████████████

**G.         TD Ameritrade**

380. Post-judgment discovery revealed the movement of millions of dollars from the various sham entities into various TD Brokerage accounts held by the following entities and individuals:

a.    St. Tome LLC ██████████████████████████████████

████████████████████████.

b.    St. Fortune Group LLC ██████████████████████████

████████████████████████.

c.    St. Hudson Group LLC ██████████████).

d.    Luban Construction Inc. (█████████████████████████

████████████████████.

e.    Xuemin Liu (███████████████████████████████

██████████████████████

381. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ (TD_0000027; 2463).

**H.**        **Axos Bank**

382. ████████████████████████████████████████

████████████████████████████████████████████

████████████████

**I.**        **Qin's Securities Account with Guotaijunan International (**████████
████████**) and Five Undisclosed Citibank Accounts**

383.   In the motion to withdraw filed by Qin's counsel in the District Court, Seiden

disclosed that Qin has a securities account with ██████████████████████

████ (Qin_00007875), and that Qin's ████████████████████████████

████████████████████████████ (Qin_00008389-91), ████████████

████████████████████████████████ ECF 332-2 at 5.

384.   Indeed, Qin's counsel stated as much: "████████████████████

██████████████████████████████████████████"

ECF 332-2 at 2. ████████████████████████████████████████

████████████████████████████████████████ *Id.* at 4. ████

████████████████████████████████████████████

████████████████████████████████ *Id.* at 5. ████████

████████████████████████████████████████████

██████████████ *id.* at 7. ████████████████████

████████████████████████████████████████████

101

████████████████████████ *id.* at 7-8. "[I]t is clear that Qin is not cooperating . . . to produce all responsive documents and information." *Id.* at 8.

      J.        **Seiden Law LLP's TD Bank Account** ████████████

385.    The following transfers were made on behalf of Qin to Seiden Law LLP's bank account at TD Bank (████████) to fund Qin's personal attorneys' fees:

    a.    SLG_000015: ████████████████████████████

████████████████████████████████

    b.    SLG_000052: ████████████████████████████

████████████████████████

    c.    SLG_000053: ████████████████████████████

████████████████████████████████████

██████

    d.    SLG_000054: ████████████████████████████

████████████████████

    e.    SLG_000086: ████████████████████████████

████████████████

386.    The sources of these funds are from members of the conspiracy and part of the network of shills and alter egos Qin uses. Qin is the ultimate beneficial owner of these accounts whether they are in the name of Qin's aliases or his shills.

    **IX.**    **Sham Fraudulent Transfers From Qin to His Co-Conspirators**[18]

387.    The following transfers were made (as shams to conspirators as part of the scheme) by or on behalf of Qin. If these persons are not alter-egos of Qin, these transfers were made to hinder, delay and defraud creditors.

    **A.**    **Transfers from Qin to Duo Liu**

388.    ████████████████████████████████████████████

████████████

---

[18] As Plaintiffs receive additional statements, Plaintiffs will supplement the analysis of all the sham transfers.

**B.**      **Transfers from Qin to Ruolin Qin**

389. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮

**C.**      **Transfers from Qin to Qin**

390. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

**D.**      **Transfers from Hank Han to Qin and Various Entities**

391. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**E.**      **Total amount of Qin's St. Tome Credit Cards**

392. Records produced to date show ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮, those these records are likely incomplete.

**F.**      **St. Tome LLC Payments to Qin**

393. Records produced to date show ▮▮▮▮▮▮▮▮▮▮▮, though these records are likely incomplete.

**G.**      **Attorney's Fees Payments to Seiden Law Group and Xue & Associates**

394. Records produced to date show payments for Qin's attorneys' fees from known third parties (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮.

395. Despite incurring millions of dollars of legal fees, records of payments ▮▮▮▮

▮▮▮▮▮▮▮▮.

396. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮.

**H.**      **TD Ameritrade Transfers**

397. Records produced to date show transfers from TD Ameritrade totaling

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

398. These transfers were collectively sent and received by ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**X.**      **Count 1 – Disregard of Sham Transactions**

399.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 398 as if stated fully herein.

400.    New York courts will disregard transfers that were mere shams, deceits, tricks, frauds, and fake transactions made for criminal purposes. Fraud vitiates all it touches.

401.    New York Courts can disregard sham transactions that are form over substance and have no real purpose other than as an unfair device. The Court can disregard the lines between legally distinct entities in an effort to avoid a transaction without imputing liability. In every equity jurisdiction (especially the Second Circuit) courts are supposed to treat substance over form and this approach is routinely used to determine the character of a thing, regardless of label. Equity should consider the reality of the transfer, rather than its form.

402.    Similarly, the Court will look to the overarching transfer when examining the transaction. Sham transfers, pretended sales, simulated sales, and the like are ancient methods of keeping assets from creditors by faking a transfer that was not, in substance, an intent to change title. Shams, hoaxes, tricks, and pretenses to fool creditors are consistently disregarded by the Common Law and constitute "actual fraud".

403.    Here, the effect of the supposed transfers of Applegreen and purchase of the Penthouses are a sham. The use of entities by Qin with no business substance other than as a device to trick creditors is a sham. Qin's insiders used an arrangement with its affiliate to create an unfair device to hinder, delay, and defraud Qin's creditors.

404.    Qin manufactured a fake divorce. Qin purported to transfer substantially all of his assets to his then ex-wife while maintaining actual control using her as a shill. The assets of King Fame went to his "ex" wife, with whom he lived.

405.    Qin used the shills and subterfuges described above to keep his assets out of the reach of creditors. Qin continued to act as he has, only the paperwork claims to show a change of ownership or control, all in a dishonest effort to hinder his creditors. The paperwork is a sham – a pretense, a trick. Qin insists he does not read English, he had no intent to make the transfer in a Deed of Gift he never read or understood. He lied about the alleged transfers and attempted to conceal them. Qin and his co-conspirators had no real intent to transfer property, but this was part of his scheme to keep assets from creditors.

406.    Transfers to the trusts, entities and individuals standing as legal devices to conceal Qin's actual control should be declared to be shams and disregarded in equity.  The Transfers identified herein are shams. If they are not, they are fraudulent transfers made with the actual intent to hinder, delay, and/or defraud Qin's creditors.

## XI.    Count 2 – Declaration of Alter Ego

407.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 406 as if stated fully herein.

408.    The Plaintiffs seek a declaration that Emma Liu, Qin, Xuemin Liu, and the various entities they control (as described herein) are liable for Qin's debts to Plaintiffs because they actively participated in Qin's scheme to hide assets.

409.    Also, the Debtor uses and has used a number of aliases. Qin should be declared to be the alter ego of his aliases: (i) "Muk Lam Li," (ii) "Li Muk Lam," (iii) "Hui Hui Qin", (iv) "Hui Quin," and (v) "Karl Qin."

410.    For the entities controlled by Liu on behalf of Qin, the entities are alter egos because, as discussed above:

> a.  Qin and Liu followed no corporate formalities (no meetings of boards or managers, no resolutions, no share certificates or ledgers, no books of account, and no business has been conducted).  Indeed,

Qin ████████████████████████████████████ ;

b. Each corporate property asset has been used as individual property without compensation or written agreement with the entity, so the entity and Qin have not been kept separate;

c. Qin has total financial interest, ownership, and control over each corporation;

d. Each corporation or entity has been used for Qin's personal purposes;

e. Liu and Qin lied about their sham divorce;

f. The Liu/Qin entities have common directors, managers, or officers;

g. Each entity files consolidated financial statements and tax returns;

h. Upon information and belief, Qin used his resources to finance the entities that Liu operates;

i. Qin caused the incorporation of the entities using Liu;

j. Each of the entities operates with grossly inadequate capital – only having money put in or taken out from mysterious transfers from China or overseas, as directed by Qin;

k. The salaries and other expenses of each entity are paid by other entities;

l. The entities do no business except what they give or receive from Liu or Qin or their personal expenses, so they have no business except that given to it by Qin;

m. Qin uses the entities' property as his own;

n. The operations of the entities are not kept separate from Liu and Qin's personal life;

o. The entities have no employees (or, in one case, common employees for the Qin household);

p. The entities all have common offices;

q. The entities all have centralized accounting;

r. The wages paid by certain entities are for Qin's household staff, cooks, driver, and gardener;

s.  There are undocumented transfers of funds and assets between Qin and the entities, or from the entities and Qin;

t.  There is no clear allocation of profit and losses between the entities that operate for Qin's benefit;

u.  The payment of alleged corporate debts are made with Liu and Qin's checks and there is commingling of funds;

v.  Qin has stated he will financially back his entities;

w.  Liu and Qin use each entity for household and personal use;

x.  The entities pay for Qin's attorneys' fees and legal costs;

y.  Qin and Liu do not keep corporate and personal assets separate;

z.  The entities are not solvent;

aa. Liu and Qin siphoned company funds as a piggybank – whenever they want money they take it from one or more entities or use the entity's assets; and

bb. In general, the companies simply functioned as a facade for Qin.

411.  Overall, each of the entities (and the shills who operate them for Qin) are participating in the injustice and unfairness of a billionaire avoiding his creditors while living in a mansion, driving multiple Rolls Royces, living in multiple penthouses of the Plaza Hotel (where he was when the FBI arrested him), and paying no heed to U.S. laws on reportable transactions, using these entities and individuals for wire fraud and conspiracy.

## XII.    Count 3 – Racketeering/Civil RICO

412.   Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 411 as constituting and describing Defendants' schemes and artifices to obtain money and property through wrongful means.

### A.     The Racketeering Enterprise

413.   At times relevant to this count:

107

414.    Defendants Hui Qin (a/k/a Muk Lam Li, Li Muk Lam, Hui Hui Qin, Karl Qin, Hui Quin), Duo Liu (a/k/a Emma Liu), Xuemin Liu, Ruolei Liu, Xueyuan Han (a/k/a Hank Han), Hangyuan Zhang, St. Tome LLC, St. Fortune Group, LLC, Luxury Team, Inc., St. Grand Ceremony LLC, King Fame Trading (BVI), Applegreen LLC, Luban Construction Inc., Trident Trust Company, PH2003 Unit LLC, St. Hudson Group LLC, Golden Pegasus LLC, Golden Little Elephant Inc., Golden Kirin LLC, Harushio LLC, Golden Little Dragon LLC, Golden Mermaid LLC, Hatakaze LLC, Qynm Family Holding LLC, HS-QYNM Family, Inc., Qin Family Trust, I Love GLE Trust, Applegreen Family Trust, Masterpiece Holding Group Ltd., New Land Capital LLC, YouYork Management LLC, Golden Land Funds LLC, Maxim Credit Group LLC, HFRE, LLC, and John and Jane Does 1-20 (collectively, the "Hui Qin Enterprise Defendants") who are all "persons" as defined in 18 U.S.C. § 1961(3), were members and associates of the "Hui Qin Enterprise" an organization whose members and associates engaged in, among other things: mail and wire fraud; interstate and foreign travel in aid of racketeering; money laundering; production of a false identification document; and obstruction of justice. The Hui Qin Enterprise operated within the Southern District of New York and elsewhere.

415.    The Hui Qin Enterprise, including its leaders, members, and associates, constituted an "enterprise," as defined by 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact. The Hui Qin Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Hui Qin Enterprise engaged in, and its activities affected, interstate and foreign commerce.

**B.    Objectives of the Enterprise**

416.    The objectives of the Hui Qin Enterprise included, but were not limited to, the following:

a.      moving and transferring funds and assets through means that included mail and wire fraud and money laundering, so that Plaintiffs would be unable to collect debts owed to them by Defendant Qin;

b.      enriching the members and associates of the Hui Qin Enterprise through means that included mail and wire fraud and money laundering;

c.      concealing the financial activities of the Hui Qin Enterprise, through means that included mail and wire fraud, money laundering, producing a false identification document, and obstructing justice; and

d.      protecting the Hui Qin Enterprise by concealing the activities of its members and associates and shielding the Hui Qin Enterprise from detection by Plaintiffs and other creditors through means that included interstate and foreign travel in aid of racketeering, producing a false identification document and obstructing justice.

## C.      RICO Conspiracy

417.    Beginning on a date unknown, but no later than 2017, and continuing to the present, in New York County, within the Southern District of New York, and elsewhere, The Hui Qin Enterprise Defendants, persons employed by and associated with the Hui Qin Enterprise, which engaged in and its activities affected interstate and foreign commerce, conspired with each other and others known and unknown to Plaintiffs to unlawfully and knowingly violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Hui Qin Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of multiple acts:

a.      indictable under Title 18, United States Code, Section 1028 (Fraud and Related Activity in Connection with Identification Documents);

b.      indictable under Title 18, United States Code, Sections 1341 and 1343 (Mail and Wire Fraud);

c.      indictable under Title 18, United States Code, Section 1952 (Interstate and Foreign Travel in Aid of Racketeering);

d.      indictable under Title 18, United States Code, Sections 1956 and 1957 (Money Laundering); and

e.      indictable under Title 18, United States Code, Sections 1503 and 1512 (Obstruction of Justice and Witness Tampering).

418.    It was a further part of the conspiracy that Defendants each agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

### D.      Means by which the Object of the Conspiracy was to be Accomplished.

419.    The Hui Qin Enterprise Defendants and other members and associates of the Hui Qin Enterprise agreed to conduct the affairs of the Hui Qin Enterprise through the following means, among others:

a.      In order to protect funds and assets of Qin from Plaintiffs, including from payment of debts owed to Plaintiffs and from execution by those Plaintiffs on the award that they eventually received, the Qin Enterprise engaged in fraudulent transfers through mail and wire fraud that defrauded Plaintiffs, including (1) purchasing real property in the name of entities ostensibly in the name of Defendant Duo Liu and other persons but in actuality controlled by Defendant Qin, (2) transferring real property from those entities to other entities ostensibly in the name of Defendant Liu and others but again actually controlled by Defendant Qin, (3) purchasing vehicles in the names of entities seemingly unconnected to Defendant Qin but actually controlled by him, and (4) maintaining funds

in accounts that were not in Defendant Qin's name or were in his name but concealed from Plaintiffs.

b.     As part of the Hui Qin Enterprise, Defendant Qin used those funds and assets for his own benefit, including (1) the payment of his expenses charged to credit cards that he used, (2) payment of his legal bills, and (3) purchase of assets and real property.

c.     Defendant Qin traveled in interstate and international commerce to obtain fraudulent documents and used the documents that he obtained to conduct additional financial transactions.

d.     When Plaintiffs sought to execute the judgment confirming the arbitral award that they obtained, Defendant Qin engaged in acts of obstruction that included (a) failing to disclose the existence of assets; (b) refusing to produce relevant financial and other documents; (c) providing false testimony regarding the existence of those assets and documents; (d) providing false testimony that he was divorced from Defendant Liu; (e) providing false testimony that he had no residence; (f) manufacturing false documents; (g) destroying evidence, including electronic text data on his cellular telephones; and Defendant Qin caused others, including Defendant Liu, to engage in similar acts, all of which were intended to frustrate Plaintiffs' efforts to execute on their judgment.

### E.     Relatedness and Continuity

420.    Defendants' violations of 18 U.S.C. §§ 1028, 1341, 1343, 1503, 1512, 1952, 1956, and 1957 extended over a period of years (at least from in or about 2017 through the filing of this complaint in 2024) and involved distinct and independent criminal acts. They were neither isolated nor sporadic events but involved regular and repeated violations of law to accomplish the defendants' desired ends in the course of the business of the Enterprise.

421.    These acts were related to each other by virtue of (a) common participants—the Hui Qin Enterprise Defendants; (b) a common victim—Plaintiffs; (c) common methods of

commission—complicated financial and corporate transactions effectuated through shell companies, including off-shore shell companies in the BVI, and designed to obfuscate the transfer of wealth from Defendant Qin to Defendant Liu and their co-conspirators; and (d) the common purpose of defrauding Plaintiffs.

### F.    Injury

422.    As a direct and proximate result of, and by reason of, the activities of Defendants and their conduct in violation of 18 U.S.C. §1962(d), Plaintiffs were injured in his business or property, within the meaning of 18 U.S.C. §1964 (c).

423.    Among other things, Plaintiffs suffered damages and injury to their property, including specifically damage to their New York Judgment, including without limitation in the form of decreased value of the assets to be levied upon caused by Defendants' delay and interference; damages from Defendants' fraudulent transfers; delay and loss in the use, enjoyment, benefits, profits, revenues, interest and interests and delay and loss of opportunity to execute on and recover against the property fraudulently transferred and/or encumbered resulting from the delay and interference; damage caused by waste, loss, plunder, and devaluation of the assets committed by Defendants Qin and Liu during the delay and interference; damages in the form of attorney fees and costs resulting from the interference, including attorney fees incurred in New York and the People's Republic of China, and costs incurred in addressing the fraudulent conduct in litigation; and all other damages, injuries, and harms caused by the fraudulent transfers and interference.

424.    Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with the cost of the suit, reasonable attorneys' fees and reasonable experts' fees.

### G.    Overt Acts

#### 1.    *Qin's Failure to Perform His Contractual Obligations to Plaintiffs*

425.   In furtherance of the conspiracy and to accomplish the object of the conspiracy, on or about the following dates, the Hui Qin Enterprise Defendants and others known and unknown to Plaintiffs, committed and caused to be committed various overt acts within the Southern District of New York, and elsewhere, including the following:

426.   Overt Act No. #1.  On or about March 15, 2017, Qin, along with Shenzhen SMI Shengdian Cultural and Media Group Co., Ltd. ("SMI Shengdian"), entered into a Supplemental Agreement to the Capital Increase Agreement ("Supplemental Agreement") with the Plaintiffs. This agreement related to Capital Increase Agreements that SMI Shengdian, SMI International Cinemas Limited ("SMI International"), and Chengdu Run Yun Culture Communication Co., Ltd. ("Run Yun," collectively with SMI Shengdian, SMI International, and Qin, the "Arbitral Respondents"), entered into with each of the Plaintiffs on the same date (collectively, the "Capital Increase Agreements").

427.   The Capital Increase Agreements provided that each of the three Plaintiffs would contribute 500 million RMB to the capital of Run Yun, in exchange for an equity interest in Run Yun, with the objective of achieving the listing of Run Yun on the A-share stock market in China. The Supplemental Agreement provided that SMI Shengdian and Qin would ensure that Run Yun's audited net profit for 2017 would be at least 787.88 million RMB. If Run Yun did not meet that target, then SMI Shengdian and Qin were obligated to acquire Plaintiffs' equity in Run Yun. These agreements provided that any disputes would be submitted to arbitration before CIETAC.

428.   Within weeks of entering into the Capital Increase Agreements, Qin and his con-conspirators began transferring assets out of the SMI entities and into Qin's and Liu's own bank accounts or accounts held by entities controlled by Qin. ███████████████, just a few days after Plaintiffs entered into the Supplemental Agreement, and through approximately ███ ███ SMI Holdings, an entity wholly controlled by Hui Qin, and an affiliate entity of Respondents in the initial Arbitration, began to funnel and transfer ██████████████████ ███████████████ (JPMC_0000696; 702; 706; 712; 719; 724; 725; 731; 742; and 761).

429. SMI Holdings was also responsible for transferring at least ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (JPMC_0001878; 1884; 1890; 1890; 1896; 1902; and 1914). Golden Little Elephant was an entity owned and operated by Ms. Liu that has since been dissolved. Prior to its dissolution, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (AXOS_0003162; AXOS_0003163; JPMC_0000855; JPMC_0000876; JPMC_0000876; JPMC_0000876; JPMC_0000876; JPMC_0000880; JPMC_0000884; JPMC_0000891; JPMC_0000897; JPMC_0000898; JPMC_0000920; JPMC_0000922; JPMC_0000929; JPMC_0000995.

430. This demonstrates that Qin's intent was just to receive the capital from Plaintiffs and make use of it for his own purposes without any intent to repay or make good on his obligations under the Capital Increase Agreements.

431. Overt Act No. #2. Qin failed to perform his obligation under the Supplemental Agreement when, among other things, (a) Run Yun's audited net profit for 2017 was RMB 312,829,162.33; (b) on August 30, 2018, the China Securities Regulatory Commission denied Qin access to the securities market for five years, according to the Decision of China Securities Regulatory Commission on Market Access Denial ([2018] No. 14); and (c) several courts had ruled that Run Yun had defaulted without credit.

432. Because of these and other failures, Run Yun could not list on the China A-share stock market, and Qin, along with SMI Shengdian (of which, along with SMI International and Run Yun, Qin was the actual control person) was obligated to acquire Plaintiffs' equity interests in Run Yun.

433. Overt Act No. #3. On or about September 20, 2018, Qin accepted the Plaintiffs' Notice on the Performance of Equity Acquisition Obligation but failed to pay the obligation.

434. Overt Act No. #4. On or about December 20, 2019, Qin accepted the Plaintiffs' Notice on the Performance of Compensation Obligation, which demanded that Qin transfer his equity in Run Yun to them.

435.    Overt Act No. #5.  In or about and between late 2019 and sometime in 2020, Defendant Qin departed the People's Republic of China to move to the New York City region, in part to avoid Plaintiffs' efforts to seek redress against him as described above, including any future award imposed against him in arbitration.

### 2.    *The CIETAC Award and Plaintiffs' Efforts to Enforce it in New York*

436.    Overt Act No. #6.  At the latest, by on or about July 21, 2020, Qin received notice of a Notice of Arbitration that Plaintiffs had filed with CIETAC.

437.    Overt Act No. #7.  On or about December 22, 2020, Qin and the other Arbitral Respondents, all through the same counsel, participated in the arbitration hearing before a CIETAC arbitral tribunal.

438.    Overt Act No. #8.  On or about April 22, 2021, Qin, along with the other Arbitral Respondents, received the CIETAC Award, which awarded damages to each the Plaintiffs, which totaled approximately (when converted from RMB to USD), USD $443,500,00 plus interest.

439.    Overt Act No. #9.  From on or about April 22, 2021, through November 8, 2021, Qin did not pay any portion of the CIETAC Award, and on November 8, 2021, Plaintiffs commenced the Confirmation Action in this Court to confirm and enforce that award.

440.    Overt Act No. #10.  On or about December 23, 2021, when he was personally served with this petition and other court documents in a black Rolls Royce in front of 165 E. 60th Street, New York City, where the vehicle had stopped after driving from the 39 Applegreen property, Qin read the top page of the papers, then stated "No, no, no" before tossing the papers out of the driver's side window.

### 3.    *Defendants' Fraudulent Transactions Regarding Qin's Assets*

441.    Overt Act No. #11.  From on or about late 2017 (shortly after entering into the Capital Increase Agreements) through the present, Defendants engaged in the following acts to

conceal, disguise, and avoid execution upon assets for which Qin had paid for or funded and therefore owned, so as to avoid the obligations to Plaintiffs that are described above:

442.    The 39 Applegreen Drive property.    Qin and others unknown to Plaintiffs transferred this property, which he had purchased for $15,880,000 in the name of King Fame Trading Limited, by causing the following:

443.    On or about August 30, 2018, a ████████████████████████████
████████

444.    On or about April 2, 2020, a transfer of the property from Defendant Xuemin Liu to herself for $10 consideration.

445.    On or about May 21, 2020, a transfer of the property approximately one month later by Defendant Xuemin Liu to herself and her daughter, Defendant Duo Liu for $10 consideration again.

446.    On or about April 27, 2022, a transfer of the property by Defendants Xuemin Liu and Duo Liu to Applegreen LLC, an entity owned by Defendant Duo Liu's daughter.

447.    On or about May 20, 2022, a transfer of the property by Defendant Duo Liu's stepdaughter to the Bryn Mawr Trust Company of Delaware as Trustee for the Applegreen Family Trust, for which Defendant Duo Liu was "investment advisor."

448.    Plaza Suites, Suite 2003 property.    Qin and others unknown to Plaintiffs transferred this property, which he had purchased for $29,000,000 in the name of PH2003 Unit LLC, which was purportedly owned by Defendant Duo Liu, by causing the following:

449.    On or about March 14, 2019, PH2003 Unit LLC (along with Luxury Team, Inc., described below with regard to the Suite 2009 property) entered into a mortgage agreement with Maxim Credit Group LLC, which was listed as mortgagee for $27,000,000.

450.    On or about February 23, 2021, Maxim Credit Group LLC assigned to Axos Bank the $27,000,000 mortgage, and the mortgage was assumed and modified by St. Grand Ceremony LLC, Luxury Team Inc. and Maxim Credit Group LLC.

451.    On or about March 18, 2021, Defendant Duo Liu assigned her right, title, and interest in ██████████████████████████████████████

████████████████████████████████████████████

452.    On or about April 28, 2021 (six days after CIETAC issued its arbitral award), Axos Bank entered into a $26,300,000 loan to PH2003 Unit LLC and St. Grand Ceremony, with Defendant Duo Liu and JP Morgan Trust as Trustee of the I Love GLE Trust as guarantors.

453.    Plaza Suites, Suite 2009 property.    Qin and others unknown to Plaintiffs transferred this property, which he had purchased for $32,700,000 in the name of Luxury Team Inc., by causing the following:

454.    On or about March 4, 2019, Luxury Team, Inc. (along with PH2003 Unit LLC, described above with regard to the Suite 2003 property) entered into a mortgage agreement with Maxim Credit Group LLC, which was listed as mortgagee for $27,000,000.

455.    On or about February 5, 2020, Luxury Team transferred the Suite 2009 property to St. Grand Ceremony LLC, which was purportedly owned by Defendant Duo Liu.

456.    On or about February 23, 2021, Maxim Credit Group LLC assigned to Axos Bank the $27,000,000 mortgage, and the mortgage was assumed and modified by St. Grand Ceremony LLC, Luxury Team Inc. and Maxim Credit Group LLC.

457.    On or about March 18, 2021, Defendant ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

advisor.

458.    On or about April 28, 2021 (six days after CIETAC issued its arbitral award), Axos Bank entered into a $26,300,000 loan to PH2003 Unit LLC and St. Grand Ceremony, with

████████████████████████████████████████

459. On or about February 9, 2024, Defendants Qin and Duo Liu caused the Suite 2009 property to be listed for sale at $45 million.[19]

460. 377 Rector Place property. Defendant Qin owns this property, which is held in the name of HFRE LLC, even though Defendant Qin used the property as one of his addresses ████████████████████████████████████████), used this address for his personal financial affairs and uses this address for Qynm Family Holding LLC.

461. 35 Applegreen Drive property. Defendant Qin owned this property, which is held in the name of ████████████████████. which Defendant Duo Liu formed and which has no business other than to hold the property. The property was sold in 2021 or 2022 for unknown consideration.

462. Three Rolls Royce luxury vehicles. Although the Vehicle Identification Number (VIN) is unknown to Plaintiffs at this time, Defendant Qin owns a "████████████████████████ ██████████████████████████████" that contains unique ██████████████████ ██████████████████████████ The vehicles are more specifically described as follows:

      i.    2017 Rolls Royce Phantom, plate number ██████████████.

████ A███████████████████████████████████████

████████████████████████████████████████████

and Defendant Duo Liu at the 39 Applegreen Drive property and ████████████

████████████████████████████████████████████

████████████

      ii.    2018 Rolls Royce Phantom EWB (██████████). ████

████████████████████████████████████████████

---

[19] *See https://www.zillow.com/homedetails/1-Central-Park-S-PENTHOUSE-2009-New-York-NY-10019/2052864825_zpid/ (last visited March 18, 2024) (originally listed for $45 million on February 9, 2024, price decreased $5 million on February 29, 2024).*

 (formed by Defendant Duo Liu, but subsequently dissolved) at the 39 Applegreen Drive property and an April 30 2018, ███████████████ at the 39 Applegreen Drive property.

    iii.    2019 Rolls Royce Cullinan, ██████████████. ████ The ████████████████ at 39 Applegreen Drive.

463.    2020 Mercedes "G-Wagon" G-class, ██████████████ The ████████████████ at 39 Applegreen Drive.

**4.    *Qin's Concealment of His Bank Accounts***

464.    Overt Act No. #12.  As of on or about July 21, 2023, when Plaintiffs filed their reply brief in support of their renewed motion for contempt, as part of their efforts to execute on the Judgment, Defendant Qin claimed that he had produced his bank records, which consisted solely of Cathay Bank account statements for accounts ████ and ████ from ██████████, and JP Morgan Chase ██████████████████ Defendant Qin had also claimed that he was in the process of collecting records from Hong Kong accounts for Citibank, HSBC, and Standard Chartered Bank, but then claimed that he could not do so because he would have to make that request in person, which he was not able to do.

465.    Overt Act No. #13.  As of July 21, 2023, Defendant Qin knowingly failed to disclose the existence of the following bank accounts that he has owned or controlled, or owns or controls, including but not limited to the following transfers, which include interstate and international transfers, made for his benefit:

466.    East West bank account  ████ containing a ████████████████.

467.    Standard Chartered bank account ███, from which transfers have been made to Qin or for his benefit, as described above.

468.    East West Bank account ████████████████████████, which Qin controls and the accounts for which he uses for his own benefit.

469.    East West Bank accounts ███ and ███ held or controlled by St. Tome LLC.

470.    East West Visa credit card account ███ held or controlled by St. Hudson Group LLC and issued to "Hui Hui Qin" at the 39 Applegreen Dr. property address.

471.    Five Citibank accounts (account numbers ████████████████ ████████████████████████ (Qin_00008389-91) for which Qin has produced no documents. According to the criminal information filed by the government, Qin used these accounts to wire millions of dollars to Liu from accounts held outside of the United States. *See USA v. Hui*, No. 2:23-mj-00865-JMW (E.D.N.Y.).

### 5.    *Defendant Qin's Interstate Travel and Procurement of Fraudulent Florida Driver's License in Furtherance of the Activities of the Qin Enterprise*

472. <u>Overt Act No. #14</u>.  Plaintiffs are informed and believe that, on or about December 20, 2020, Defendant Qin traveled on an interstate flight from New York to Miami, Florida.

473. <u>Overt Act No. #15</u>.  Plaintiffs are informed and believe that, on or about December 21, 2020, Defendant Qin applied to the Florida Department of Highway Safety and Motor Vehicles for a Florida's driver's license, in which he represented he resided at an address in Miami, Florida, and provided documents purporting to be from Bank of America and Macy's, Inc., that were issued to "Hui Quin" at this Miami address, when in fact Defendant Qin never resided at the Miami address.

474. <u>Overt Act No. #16</u>.  Plaintiffs are informed and believe that, in or about and between April 2021 and June 2020, Defendant Qin provided a Florida driver's license, which he had received based on the application described above, as identification to JP Morgan

Chase Bank and Cathay Bank in relation to accounts that Defendant Qin maintained at those banks.

475. <u>Overt Act No. #17</u>. Plaintiffs are informed and believe that, in or about and between April 2021 and May 2021, ██████████████████████████ ████████████████████████████████ which was an alias that Defendant Qin had previously used.

### 6.    *Qin's Obstruction of Justice*

476.    <u>Overt Act No. #18</u>. In or about and between October 2022 and the date of filing of this Complaint, Defendant Qin has obstructed Plaintiffs' efforts to obtain discovery from Defendant Qin in aid of execution upon the confirmed CIETAC Award by:

477.    Falsely claiming to have no interest in any of the properties or vehicles described above.

478.    Falsely claiming that his expenses are paid by others as a gift, a favor, or a loan, as described above.

479.    Falsely claiming that he does not have a residential address and instead lives itinerantly at properties that he in fact controls and at hotels, as described above.

480.    Falsely claiming that he was divorced from Defendant Duo Liu, as described above.

481.    Creation of a false Schedule of Assets that he represented was three to four pages at length but when produced was one page and listed "One (1) shares (total issued shares) in King Fame Trading Limited, a company incorporated in the British Virgin Islands with limited liability," as described above.

482.    Refusing to answer questions at deposition, in violation of the Court's January 30, 2023, order, as described above.

483.    Falsely claiming that he was not properly served in the CIETAC arbitration, as described above.

484.    Refusing to provide documents, including cellular telephone texts, bank records, and documents concerning St. Tome, even though those bank records available to Plaintiffs show that Defendant Qin has received checks from this entity and Defendant Qin has claimed that he had a consulting agreement with that entity, as described above.

485.    Destroying evidence, including the intentional smashing of cellphones to render them inaccessible and deletion of text data, as described above.

486.    Overt Act No. #19.  In or about and between June 2023 and the date of filing of this Complaint, Defendant Liu, at Qin's direction, has obstructed Plaintiffs' efforts to obtain discovery in aid of execution upon the confirmed CIETAC Award as described above.

### 7.    Wire Fraud

487.    The Hui Qin Enterprise Defendants knowingly participated in a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

488.    The scheme would be based on two things: (1) Qin knew that he owed money and (2) he came up with bogus transactions with no commercial substance to distance himself from his assets, which could have been used to pay the obligation. However, Qin continued control over the assets using his shills. The following actions are indicative of how this scheme worked.



5) Qin transferred 39 Applegreen to his ex-mother-in-law for nominal consideration. (Deed of Gift (Qin_00003342-44).)

6) Qin's ████████████████████████ (Qin_00003127- Qin_00003133; Qin_00003170-Qin_00003251;    Qin_00003252-Qin_00003340;    Qin_00002710-Qin_00002717; Qin_00002718-Qin_00002788; Qin's W-2 wage and tax statement for the year of 2022)

7) ████████████████████████████████ (Dep. 125:7-10; 133:18-134:3) ████████████████████████████████████████ ████████████████████████████ (Qin_00002938; 3014; 3019; 3025; 507; 509; 519; 524; 530; 536; 541; 546; 551; 552; 556; 563; 567; 570; 578; and 3603.)

8) Qin put his Rolls Royce(s) under various entities that he refused he has any connection with.

9) A special limited edition ████████████████████████ ████████████████. (LIU_0001805.)

10) ████████████████████████████████ (LIU_0001814.)

11) ████████████████████████. (LIU_0001815.)

12) Qin has not voluntarily paid a penny to comply with the Judgment.

13) Qin (or Emma Liu under his control) incorporated shell companies using his address 39 Applegreen that had no real economic purpose as part of the sham.

489.    As described above, Qin and Liu formed the entities at Applegreen Drive to specifically assist in the fraud.

490.    The statements made by Qin and Liu as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property.

491.    Qin repeatedly lied when he denied living at 39 Applegreen, the Plaza Suites, and Rector Place. Qin transferred 39 Applegreen via King Fame. Qin denied having trusts. Qin denied owning vehicles. Those were all false and knowingly so.

492.    Each of these Defendants acted with the intent to defraud, that is, the intent to deceive and cheat. This is evidenced by lying about the actions and Liu "taking the fifth" when asked if her motives were fraudulent for several transactions.

493.    Each of these Defendants used, or caused to be used, an interstate and/or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

494.    In Qin's Chase bank statement (Qin_00002889-3030), there are ███████████ ███████████:

    a.  Qin_00002890 shows a transfer of ████████████ ████████ to what appears to be another bank located in Singapore (which may or may not be to another bank account owned by Qin). The transaction is listed as ██████████████████ ██████████████████████████ ███████████████.

    b.  Qin_00002910 shows a ██████████████████████ account from what appears to be his Standard Chartered Bank account.

    c.  Qin_00002926 shows a ██████████████████ ████████████████████. This is not Qin's Chase checking account ███████████), his Cathay Bank checking account ████████████ or any of the accounts listed in IR6687-SCBNY000008 (████████████████████ █████████████████). It would be helpful to find out where this money went.

    d.  Qin_00002938 shows a ████████████████████ ███████████████████



e.  Qin_00002990 shows two transfers, ██████████████████
    ████████████████████████████████. Both transactions
    are associated with the ████████████.

f.  Qin_00003014 shows a ████████████████████
    ████████████████. The ██████████████████.

g.  Qin_00003019 shows ████████████████. It lists the following
    transactions:

    i.   ████████████████████████████

    ii.  ████████ in the amount of ████████████

    iii. ████████ in the amount of ████████████

    iv.  ████████ in the amount of ████████████

    v.   ████████ in the amount of ██████████████

    vi.  ████████ in the amount of ████████████

h.  Qin_00003025 shows a deposit of ████████████████████
    ████████████. The deposit number is ████████████

495.  In St. Hudson Group LLC's East West Bank statements there are many
transactions exceeding $10,000 (these are examples of wire activity but not a complete list):

    a.  LIU_0001871: ████████████████████

    b.  LIU_0001874: ████████████████████

    c.  LIU_0001877: ████████████████████

    d.  LIU_0001881: ████████████████████████████

        ████████████

    e.  LIU_0001884-86: June 2022, ████████████████████

        ████████████████████████████████████

        ████████████████████████████████████

        ████████████████████████████████████



f. LIU_0001888: ██████████

g. LIU_0001900: ██████████

496.  In St. Grand Ceremony LLC's ██████████ there are many transactions exceeding $10,000:

    a. LIU_0001903: ██████████
    ██████████ in the transaction description

    b. LIU_0001905: ██████████
    ██████████ in the transaction description

    c. LIU_0001907: ██████████
    ██████████ in the transaction description

    d. LIU_0001919: ██████████

497.  In Golden Pegasus LLC's ██████████ there are many transactions exceeding $10,000:

    a. LIU_0001927: ██████████

    b. LIU_0001929: ██████████

    c. LIU_0001936: ██████████

    d. LIU_0001938: ██████████.

    e. LIU_0001942: ██████████

f. LIU_0001956: 

498.    A 2021 corporate income tax return for St. Tome LLC (LIU_0001990) has ▮▮▮▮▮▮▮ listed as proceeds from sales under short-term capital gains and ▮▮▮▮▮▮ listed as proceeds from sales under long-term capital gains (LIU_0001996).

499.    In St. Fortune Group LLC's East West Bank statements there are many transactions exceeding $10,000:



a. LIU_0002018: ▮▮▮▮▮▮▮▮▮▮

b. LIU_0002028: ▮▮▮▮▮▮▮▮▮▮.

c. LIU_0002040: ▮▮▮▮▮▮▮▮▮▮. This statement also shows two international wire transfers, ▮▮▮▮▮▮▮▮▮▮

## XIII.    Count 4 – Violation of GBL §133 (Use of Name or Address with Intent to Deceive)

500.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 499 as if stated fully herein.

501.    Defendants have violated General Business Law §133 by misusing various corporate names to deceive the creditors and others about the true ownership of assets and the true purposes of assets, including:

    a. Liu and Qin using multiple entities with the names "St. Tome" (one in New York, one in the P.R.C., and one in the Hong Kong S.A.R) to move money between them and to confuse creditors and the public,

    b. Liu and Qin's misuse of "Luban Construction", a name of a once legitimate company, to make it seem a legitimate entity owned 35 Applegreen,

    c. Qin and Liu's misuse of "QYNM" Family Holding LLC as a deliberate misspelling of another entity to conceal the true ownership of Rector Place, or a deceptive name, to hide the asset from creditors and law enforcement, and/or

    d. Qin's misuse of aliases, including Li Muk Lam, Karl Qin, Hui Hui Qin, and other aliases to put assets into other names to defraud creditors and engage in fraudulent use of false identity papers to conceal assets.

502.    All of these are but a few examples of the fraudulent misuse of names and addresses to deceive and harm the public, including creditors, and defraud those with whom these conspirators worked.

503.    The damages caused by this misuse include the delay in accessing the assets, the expense of suing additional entities, and the loss in the value of the asset while concealed using these deceptive names.

504.    Plaintiffs are entitled to an injunction against Hui Qin using his aliases and against Luban Construction and St. Tome from using their names to deceive.

### XIV.    Count 5 – CivilizAsian Foundation is a Sham Charity

505.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 504 as if stated fully herein.

506.    Liu formed and operates a charity formed under the laws of New York as a not-for-profit named "CivilizAsian Foundation Inc." ("Foundation").    Liu and Qin use the Foundation as a sham charity. They fund the Foundation and then transfer the funds to obtain personal benefits.

507.    Liu "took the fifth" when asked specific questions about the misuse of the charity for her personal benefit. She took the fifth when asked if Qin has worked with her in deceiving the public about it. In the public statements about the charity, Liu stated that she was married to Qin. If there were a divorce in China (which Plaintiffs assert is a sham), that false statement was used to solicit donations.

508.    On information and belief, and based on Liu's assertion of the Fifth Amendment privilege and refusal to produce documents, Liu and Qin used the charity to funnel money to others and as a means of laundering money as "donations". Upon information and belief, Liu and Qin are the only real donors, they used the charity for their personal benefit, and they used it to fraudulently avoid taxes.

509.    The IRS mailed Liu a determination letter at "1 Central Park S. PH2003" on August 24, 2022 that the foundation was granted 501(c)(3) status. The determination letter notified Liu that the nonprofit would have to file tax returns. None are posted on the IRS' public web service, so it appears that none have been filed despite the obligation to do so.

510.    The Foundation is insolvent because it is funded with ill-gotten money from Qin and operated by Liu as part of a conspiracy, thus it has no legitimate assets and substantial debts. By this Complaint, Plaintiffs seek a receiver *pendente lite* over CivilizAsian Foundation, Inc. and that the receiver be empowered to compel Liu to answer for her actions and transfers from it.

511.    Under N.Y. Not-for-Profit Corp. Law § 720, a receiver (or judgment creditor of a nonprofit) has standing to sue the nonprofit's "directors, officers, or key persons" to account for misuse of assets, accounting, and to set aside the unlawful transfers from the entity. Plaintiffs are not judgment creditors of the Foundation, but have cause for the appointment of a receiver over it for the reasons shown herein and the invocation of the Fifth Amendment by its officer about all of the Foundation's affairs.

512.    Alternatively, the Court is asked to declare that CivilizAsian Foundation Inc. is a sham and the alter-ego of Qin and liable for his debts.

XV. **Count 6 – Conspiracy**

513. Plaintiffs reallege and incorporate by reference paragraphs 1 through 512 as if stated fully herein.

A. **Objects of the Conspiracy**

514. Beginning on a date unknown, but no later than 2017, and continuing through the present, in New York County, within the Southern District of New York, and elsewhere, all defendants conspired with one another to a) commit and conduct voidable transfers (in violation of the Uniform Voidable Transactions Act as adopted in New York (N.Y. Debt. & Cred. §§270-281) b) to commit fraud against Plaintiffs by, among other things, concealing and misrepresenting Defendant Qin's funds and assets, c) misusing business names in violation of GBL §133, and d) working together to launder money using the sham charity, CivilizAsian. As a result of Defendants' conspiracy, Plaintiffs were damaged in that they were unable to execute upon Defendant Qin's funds and assets to satisfy the Judgement from the Southern District Court of New York.

B. **Manner and Means of the Conspiracy**

515. The objects of the conspiracy were carried out, and were to be carried out, in the manner and by the means described Section XII.D, paragraph 514 above, which Plaintiffs incorporate herein by reference.

C. **Overt Acts**

516. In furtherance of the conspiracy, and to accomplish its objects, Defendants, together with others known and unknown to Plaintiffs, committed and willfully caused others to commit the following overt acts, among others, in the Southern District of New York and elsewhere:

517.   Overt Acts Nos. 1 through 19: The overt acts alleged in Count Three of this Complaint, as set forth in Section XII.G at paragraphs 425-499 above, are incorporated herein by reference as if fully set forth herein and are alleged as the overt acts of this Count Six.

### XVI.   Count 7 – Preliminary and Permanent Injunction

518.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 517 as if stated fully herein.

519.   Plaintiffs have shown that there is a likelihood that they will succeed in obtaining a judicial determination that others are co-liable with Qin under a number of theories. Qin has shown that he will destroy documents. The Court already found "strong evidence" of "spoliation." Qin deliberately will not keep relevant documents. His wife Emma has likewise deliberately failed to preserve information. Both Emma and Qin have worked with entities and other persons to transfer assets when the creditors may be close to collecting them. Qin testified to burning money at his family home in China and he displayed a video of burning cash during his deposition. He will destroy assets rather than allow creditors to seize them.

520.   There is no harm to Emma and Qin to an injunction to preserve the status quo for documents and assets. Qin claims to be impecunious – he has nothing to lose and no bond would be required. Liu has no need to transfer money over $5,000 or assets. If Liu needs to sell a property, she can seek immediate relief from the Court. As litigation has commenced, Emma and all Defendants are already under an obligation not to destroy, mutilate, delete, alter, or fail to keep records. Balancing the burdens and harms, there is no real burden to keeping records one would already keep. Similarly, if Liu needs to convey an asset, the Court is available to permit that, upon short notice with minimal expense.

521.   However, the harm to Plaintiffs from the continued destruction of records, transferring of assets of value, and failure to preserve records is irreparable. While an injunction to not move money or sell assets would often cause merely monetary damage, here the damage is significant because just one of the Penthouses is listed for sale over $40,000,000, the judgment is

$500,000,000 and the harm from losing the sales proceeds is so significant as to become irreparable. There is little hope that, if the money is lost, it could be recovered again.

522.    Therefore, Plaintiffs seek an injunction from this Court ordering Defendants and those in active concert with them to:

    a.    Take all steps reasonably necessary to avoid any loss, destruction, alteration, deletion or other failure to preserve ESI, records, and the like.

    b.    Not transfer any asset with a value (book or market) over $5,000 (not including any liens) unless authorized by Plaintiffs in writing or authorized by the Court.

523.    There should be no bond required for the Judgment Creditor Plaintiffs, given that they are who are owed $500,000,000. That being said, a nominal bond could be posted in good faith in an amount determined by the Court.

### XVII.  Count 8 – Alternate Claim for Fraudulent Transfer (actual)

524.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 523 as if stated fully herein.

525.    The alleged transfers of assets described above in sections VIII, IX, X (Count 1), and XII (Count 3) ("Transfers") are mere shams and part of racketeering and a conspiracy. The Court should consider them meaningless in equity and impose alter ego on all supposed transferees for Qin's debts. In the alternative, if any Transfers were effective in equity, such as those made by Qin to Duo Liu, Xuemin Liu, Ruolei Liu, St. Tome LLC, St. Fortune LLC, St Hudson Group LLC, St. Grand Ceremony LLC, Golden Little Elephant Inc., and PH2003 Unit LLC, the Transfers should be voided. They were part of an actual intent to hinder, delay, and defraud creditors.

526.    The fraudulently transferred assets, and proceeds of such assets, should be applied toward satisfaction of the Judgment.

527.    Plaintiffs/Judgment Creditors hereby assert a cause of action in the alternative against each entity as transferee of the Transfers. This cause of action is stated pursuant to the Uniform Voidable Transactions Act as adopted in New York (N.Y. Debt. & Cred. §§270-281 ("NYUVTA"). In the alternative, this cause of action is stated under the NYUVTA, or analogous fraudulent-transfer legislation, as adopted in any other state or jurisdiction.

528.    Each Transfer at issue violated N.Y. Debt. And Cred. §273(a).

    a.  the transfer or obligation was to an insider – Qin transferred property to his alias, his wife, and/or his wife's companies.

    b.  the debtor retained possession or control of the property transferred after the transfer – using his wife as a shill and her companies to pay for his own lifestyle;

    c.  the transfer was concealed by Qin by lying about the dates of the contracts, faking the schedule of assets, deliberately not keeping records, deleting what records Qin did keep, lying about the ownership, deleting communications about assets, and resisting discovery;

    d.  before the transfer was made or obligation was incurred, Qin had been sued in the arbitration seeking over $400 million;

    e.  substantially all Qin's assets were placed into the trusts, his wife's companies, or other places yet-to-be found, sometimes using an alias;

    f.  Qin absconded because he was caught with a fake passport preparing to flee the country;

    g.  Qin removed or concealed assets as discussed above;

    h.  the value of the consideration received by Qin was zero – these transfers were gifts or based on fictional or nominal consideration for valuable assets transferred in the millions – cash and houses;

    i.  Qin was insolvent when each transfer was made for the reasons stated above – he owed hundreds of millions and had less than that in real assets;

       j.   the Transfers occurred shortly after Qin incurred a substantial debt to Plaintiffs; and

      k.   Qin transferred the essential assets of his to his wife that transferred the assets to her companies - an insider of the debtor.

529.    Each Transfer was made with actual intent to hinder, delay or defraud Judgment Creditors. The details of this are discussed above and incorporated here by reference.

530.    Each Transfer was made without Qin receiving a reasonably equivalent value in exchange.

531.    When each Transfer was made, Qin was engaged or was about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to the business or transaction.

532.    When each Transfer was made, Qin intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

533.    The Transfers continued after Qin was threatened with arbitration, after Qin was actually sued in arbitration proceedings, and after the entry of the arbitral award and the entry of judgment in the Confirmation and Enforcement Action.

534.    Qin was insolvent when each Transfer was made or was rendered insolvent by the Transfers. Qin received no value, and certainly no reasonably equivalent value for the Transfers.

535.    Qin concealed the fraudulent nature of the Transfers from Plaintiffs. Qin's deposition testimony and post-judgment document productions only hesitatingly revealed that Qin fraudulently transferred his assets to Defendants while he was insolvent.

536.    Under the NYUVTA, Plaintiffs seek an order avoiding each of the transfers and an order levying execution upon the assets transferred and/or the proceeds thereof to satisfy the judgment in the Confirmation and Enforcement Action.

537.   Under the NYUVTA, Plaintiffs seek an order declaring that any obligations incurred by Qin to justify any of the Transfers were themselves without real consideration while Qin as insolvent and part of a scheme to hinder creditors, and thus void.

### XVIII. Count 9 – Alternative Claim for Constructive Fraudulent Transfer

538.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 537 as if stated fully herein.

539.   Qin made each of the Transfers (discussed above) while insolvent because his assets were less than his liabilities at fair value.

540.   Qin was insolvent at the time of each of the Transfers because, as shown by his misuse of other entities, he was unable to pay his debts as they came due in the ordinary course.

541.   Qin received no value, certainly no reasonably equivalent value, for each of the Transfers.

542.   Under the NYUVTA, Plaintiffs seek an order avoiding each of the transfers and an order levying execution upon the assets transferred and/or the proceeds thereof to satisfy the judgment in the Confirmation and Enforcement Action.

543.   Under the NYUVTA, Plaintiffs seek an order declaring that any obligations incurred by Qin to justify any of the Transfers were themselves without real consideration while Qin was insolvent and part of a scheme to hinder creditors and thus void.

### XIX.   Prayer for Relief

WHEREFORE, Judgment Creditors demand judgment in their favor and against Qin in the form of:

(a) A declaration that the transactions described in Count 1 were void and shams, of no legal effect and part of a scheme to defraud.

(b) A declaration that Qin and the persons and entities identified in Count 2 are alter-egos of Qin and thus liable for his debts.

135

(c) A finding that Qin and his co-conspirators have engaged in racketeering that injured Plaintiffs and Plaintiffs are entitled to recover from him and Liu and the entities they controlled and the shills they used.

(d) A declaration that the co-conspirators are liable for Qin's debts arising from their activities in furtherance of the conspiracy, concealment, use of sham transactions and entities, and the deliberate destruction of records that would show the information.

(e) An injunction against further disposition of the assets at issue or of the loss, destruction, alteration, deletion or other failure to preserve ESI, records, and the like.

(f) In the alternative, recovery of the Transfers as fraudulent transfers.

(g) Attorney fees, costs and disbursements of this suit.

(h) Such additional and other relief as the Court may deem just and proper.

Date: March 18, 2024

New York, New York

Respectfully submitted,

Andrew Smith
Geoffrey Sant
Carol Lee
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, NY 10019
Tel: (212) 858-1000
Fax: (212) 858-1500
andrew.smith@pillsburylaw.com
geoffrey.sant@pillsburylaw.com

carol.lee@pillsburylaw.com
*Attorney for Plaintiffs/Judgment Creditors*
*Huzhou Chuangtai Rongyuan Investment*
*Management Partnership, Huzhou Huihengying*
*Equity Investment Partnership, and Huzhou*
*Huirongsheng Equity Investment Partnership*