**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

---

HUZHOU CHUANGTAI RONGYUAN
INVESTMENT MANAGEMENT
PARTNERSHIP, HUZHOU HUIHENGYING
EQUITY INVESTMENT PARTNERSHIP,
and HUZHOU HUIRONGSHENG EQUITY
INVESTMENT PARTNERSHIP,

                Plaintiffs/Judgment-Creditors,

      v.

Judgment-Debtor HUI QIN (a/k/a MUK LAM LI, LI MUK LAM, HUI
HUI QIN, KARL QIN, HUI QUIN), DUO LIU (a/k/a EMMA LIU),
XUEMIN LIU, RUOLEI LIU,
XUEYUAN HAN (a/k/a HANK HAN), HANGYUAN ZHANG,
BRYN MAWR TRUST COMPANY OF DELAWARE, TRIDENT
TRUST COMPANY, ST. TOME LLC, ST. FORTUNE GROUP LLC,
LUXURY TEAM, INC., ST. GRAND CEREMONY LLC, KING
FAME TRADING (BVI), PH2003 UNIT LLC, APPLEGREEN LLC,
LUBAN CONSTRUCTION INC., ST HUDSON GROUP LLC,
GOLDEN PEGASUS LLC, GOLDEN LITTLE ELEPHANT INC.,
GOLDEN KIRIN LLC, HARUSHIO LLC, GOLDEN LITTLE
DRAGON, GOLDEN MERMAID LLC, HFRE, LLC, HATAKAZE
LLC, QYNM FAMILY HOLDING LLC, HS-QYNM
FAMILY, INC. QIN FAMILY TRUST, I LOVE GLE TRUST,
APPLEGREEN FAMILY TRUST, MASTERPIECE HOLDING
GROUP LTD., NEW LAND
CAPITAL LLC, YOUYORK MANAGEMENT LLC, GOLDEN
LAND FUNDS LLC, MAXIM CREDIT GROUP LLC, HFRE, LLC,
JOHN AND JANE DOES
1-20, Defendants.,

                Defendants.

1:24-cv-02219-KPF

---

**MEMORANDUM OF LAW OF EMMA "DUO" LIU
AND COMPANY DEFENDANTS IN OPPOSITION
TO PLAINTIFF/JUDGMENT-CREDITORS'
MOTION FOR A PRELIMINARY INJUNCTION**

**NIXON PEABODY LLP**
Stephen P. Younger, Esq.
Paul F. Downs, Esq.
55 West 46th Street
New York, NY 10036
212-940-3085
pdowns@nixonpeabody.com
spyounger@nixonpeabody.com


*Attorneys for Defendant*
*Emma "Duo" Liu and the*
*Company Defendants*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL HISTORY ..................................................................................................... 2

    The First Action (Case No. 1:21-cv-09221-KPF) ............................................................ 3

    The Second Action (Case No. 1:24-cv-02219-KPF) ....................................................... 4

STATEMENT OF FACTS ...................................................................................................... 4

LEGAL STANDARD .............................................................................................................. 6

ARGUMENT ........................................................................................................................... 7

I.      U.S. SUPREME COURT PRECEDENT BARS HUZHOU'S
         REQUESTED INJUNCTION. .................................................................................... 7

II.     HUZHOU CANNOT ESTABLISH LIKELIHOOD OF SUCCESS
         ON THE MERITS OR SUBSTANTIAL QUESTIONS REGARDING
         THE MERITS. ........................................................................................................... 8

    A.    Huzhou's Violation of the First Action's Protective Order. .................................... 9

    B.    Each of Huzhou's "Counts" are Unlikely to Succeed
         on the Merits. ....................................................................................................... 11

        1.    "Disregard of Sham Transactions" and "Declaration of Alter Ego". ................... 11

        2.    Racketeer Influenced and Corrupt Organizations Act ("RICO"). ....................... 13

        3.    Violation of N.Y. General Business Law ("GBL") § 133 ................................... 15

        4.    Conspiracy ....................................................................................................... 16

        5.    Claim for Actual Fraudulent Transfer .............................................................. 17

        6.    Claim for Constructive Fraudulent Transfer ..................................................... 18

    C.    Huzhou Presents No Substantial Questions Going to the Merits ......................... 19

III.    HUZHOU HAS FAILED TO ESTABLISH IRREPARABLE HARM. .............. 20

    A.    Huzhou's Purported Irreparable Harm Focuses Solely on the Recovery
         of Money. ............................................................................................................ 21

    B.    Huzhou's Claim for Irreparable Harm Focuses Almost
         Entirely On Mr. Qin's Actions, Not Those of Ms. Liu
         or the Company Defendants ................................................................................ 22

IV.    HUZHOU'S DELAY PRECLUDES ANY PRELIMINARY
         INJUNCTION. ......................................................................................................... 23

V.     THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN
         MS. LIU'S FAVOR. ............................................................................................... 25

VI.      THE PUBLIC INTEREST ALSO FAVORS DENIAL OF THE REQUESTED PRELIMINARY INJUNCTION. .................................................. 27

VII.     IF THIS COURT WERE TO GRANT HUZHOU'S PI MOTION, A SUBSTANTIAL BOND IS REQUIRED. ........................................................ 28

CONCLUSION ............................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*4 K & D Corp. v. Concierge Auctions, LLC*,
   2 F.Supp.3d 525 (S.D.N.Y. Mar. 10, 2014)................................................................14

*In re 650 Fifth Avenue And Related Properties*,
   No. 08 Civ. 10934 (LAP), et al., 2021 WL 1963803 (S.D.N.Y. May 17, 2021)......................8

*Absolute Recovery Hedge Fund, L.P. v. Gaylord Container Corp.*,
   185 F.Supp.2d 381 (S.D.N.Y. 2002)..........................................................................25

*Alexander & Alexander of New York, Inc.*,
   68 N.Y.2d 968 (1986) ............................................................................................16

*Allstate Ins. Co. v. Harvey Family Chiropractic*,
   677 Fed.Appx. 716 (2d Cir. 2017)............................................................................21

*Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC*,
   No. 07CV6665(HB), 2009 WL 1803458 (S.D.N.Y. June 23, 2009)......................................17

*Aviles v S&P Global, Inc.*,
   380 F.Supp.3d 221 (S.D.N.Y. 2019)...................................................................13, 14

*Binghampton Masonic Temple, Inc. v. Bares*,
   189 F.3d 460 (2d Cir. 1999).............................................................................24, 25

*In re Biovail Corp. Securities Litigation*,
   247 F.R.D. 69 (S.D.N.Y. 2007) ...............................................................................10

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith*,
   910 F.2d 1049 (2d Cir. 1990)...................................................................................28

*Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*,
   No. 99-CV-9623, 2007 WL 1040809 (S.D.N.Y. April 4, 2007) ...........................................16

*Broker Genius, Inc. v. Zalta*,
   280 F.Supp.3d 495 (S.D.N.Y. 2017)......................................................................6, 7

*Buffalo Courier-Express, Inc. v. Buffalo Evening News*,
   601 F.2d 48 (2d Cir. 1979).............................................................................25, 26

*Chen v. New Trend Apparel, Inc.*,
   8 F.Supp.3d 406 (S.D.N.Y. 2014) ............................................................................18

*Ciambriello v. County of Nassau*,
    292 F.3d 307 (2d Cir. 2002)..................................................................17

*Citibank, N.A. v. Citytrust*,
    756 F.2d 273 (2d Cir. 1985).  ......................................................23, 24

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010)........................................................................8

*Civil Rights Corps v. Pestana*, No. 21-cv-9128,
    2022 WL 3445729 (S.D.N.Y. Aug. 17, 2022).......................................27

*Commodity Futures Trading Com'n v. Walsh*,
    3 F.Supp.3d 70 (2d Cir. 2014) ........................................................13, 19

*Corning Inc. v. PicVue Electronics, Ltd.*,
    365 F.3d 156 (2d Cir. 2004).....................................................................28

*Consumers Union of U.S. v. State*,
    5 N.Y.3d 327 (2005) .................................................................................16

*D'Arrigo Bros. Co. of New York, Inc. v. MLPP LLC*,
    No. 15–cv–2041 (RJS), 2015 WL 3526999 (S.D.N.Y. June 3, 2015)....................................26

*DoubleLine Capital LP v. Odebrecht Finance, Ltd.*,
    323 F.Supp.3d 393 (S.D.N.Y. 2018)......................................................19

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)..................................................................................27

*Elsevier Inc. v. Pierre Grossmann, IBIS Corp.*,
    No. 12 Civ. 5121, 2017 WL 5135992 (S.D.N.Y. Nov. 2, 2017) ...........14

*Federal Deposit Ins. Co. v. Malin*,
    802 F.2d 12 (2d Cir. 1986).......................................................................18

*In re Feit & Drexler, Inc.*,
    760 F.2d 406 (2d Cir. 1985).......................................................................9

*Fratelli Italiani LLC v. Miranova*,
    18 Civ. 7013 (CM), 2019 WL 3759160 (S.D.N.Y. Apr. 11, 2019)........11

*Gelfand v. Stone*,
    727 F.Supp. 98 (S.D.N.Y. 1989)......................................................22, 23

*Geo-Group Communications, Inc. v. Chopra*,
    15 Civ. 1756 (KPF), 2016 WL 390089 (S.D.N.Y. Feb. 1, 2016) ..........19

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007)........................................................................................21, 22

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
    527 U.S. 308 (1999)...........................................................................................................7, 8

*Hanson Tr. PLC v. SCM Corp.*,
    774 F.2d 47 (2d Cir. 1985)) ...........................................................................................7

*Hua Xue v. Jensen*,
    No. 19-CV-1761, 2020 WL 6825676 (S.D.N.Y. Nov. 19, 2020)...........................................16

*Hunt v. Enzo Biochem, Inc.*,
    904 F.Supp.2d 337 (S.D.N.Y. 2012).....................................................................................10

*Hurley v. Toia*,
    432 F.Supp. 1170 (S.D.N.Y. 1977) .......................................................................................9

*Hyde v. KLS Prof'l Advisors Grp., LLC*,
    500 F. App'x 24 (2d Cir. 2012) ...........................................................................................20

*ICN Pharmaceuticals, Inc. v. Khan*,
    2 F.3d 484 (2d Cir. 1993). ...................................................................................................25

*Innovative Custom Brands, Inc. v. Minor*,
    15-CV-2955 (AJN), 2016 WL 308805 (S.D.N.Y. Jan. 15, 2016) ...........................................19

*Insurance Company of the State of Pennsylvania v. Lakeshore Toltest JV, LLC*,
    15 Civ. 1436 (ALC), 2015 WL 8488579 (S.D.N.Y. Nov. 30, 2015) .....................................25

*Interlink Intern. Financial Services, Inc. v. Block*,
    145 F.Supp.2d 312 (S.D.N.Y. 2001).....................................................................................29

*International Business Machines Corp. v. Johnson*,
    629 F.Supp.2d 321 (2d Cir. 2009) .................................................................................20, 27

*Jayaraj v. Scappini*,
    66 F.3d 36 (2d Cir. 1995)......................................................................................................21

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
    295 F.Supp.2d 366 (S.D.N.Y. 2003)....................................................................................7, 8

*JTH Tax, LLC v. Agnant*,
    62 F.4th 658 (2d Cir. 2023) ...............................................................................................9

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996) ...........................................................................................14

*Knowyourmeme.com Network v. Nizri*,
    20-CV-9869 (GBD) (JLC), 2021 WL 3855490 (S.D.N.Y. Aug. 30, 2021) ...........................15

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*,
    14-MD-2542 (VSB), 14-MC-2542 (VSB),
    2014 WL 12993810 (S.D.N.Y. Oct. 28, 2014) .........................................................9

*Langenberg v. Sofair*, No. 03 CV 8339 KMK,
    2006 WL 2628348 (S.D.N.Y. Sept. 11, 2006). .............................................................13, 19

*Lee Myles Auto Group, LLC v. Fiorillo*,
    No. 10 Civ. 6267 (PKC), 2010 WL 3466687 (S.D.N.Y. Aug. 25, 2010)...............................20

*Levy v. Young Adult Institute, Inc.*,
    No. 13–CV–2861 (JPO), 2015 WL 170442 (S.D.N.Y. Jan. 13, 2015)................................7, 8

*Loveridge v. Pendleton Woolen Mills, Inc.*,
    788 F.2d 914 (2d Cir. 1986)...........................................................................................21

*Marblegate Asset Management v. Education Management Corp.*,
    75 F.Supp.2d 592 (S.D.N.Y. 2014) ................................................................................26, 27

*Marsh USA Inc. v. Schuhriemen*,
    183 F.Supp.3d 529 (S.D.N.Y. 2016)...............................................................................29

*N. Am. Olive Oil Assoc. v. Kangadis Food Inc.*,
    962 F.Supp.2d 514 (S.D.N.Y. Apr. 25, 2013). ...............................................................29

*N. Am. Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32
    (2d Cir. 2018)...............................................................................................................6, 9

*National Fire Protection Association, Inc. v. Swets Information Services Private*
    *Limited*, 18 Civ. 6029 (KPF), 2021 WL 1254424 (S.D.N.Y. Apr. 5, 2021)...........................8

*National Football League Management Council v. National Football League*
    *Players Association*, 296 F.Supp.3d 614 (S.D.N.Y. 2017).....................................................26

*New York v. U.S. Dep't of Homeland Security*,
    475 F.Supp.3d 208 (S.D.N.Y. 2020)................................................................................27

*Nicole Rose Corp. v. Comm'r*,
    320 F.3d 282 (2d Cir. 2003).........................................................................................12

*N.Y. ex rel. Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015).........................................................................................25

*Oliveira v. Frito-Lay, Inc.*, No. 96 CIV. 9289,
    1997 WL 324042 (S.D.N.Y. June 13, 1997) ..................................................................15

*Pereira v. Ruggerite, Inc.*,
   No. 03 Civ. 1071(TPG), 2004 WL 324847 (S.D.N.Y. Feb. 19, 2004) ...................................24

*Ray Legal Consulting Group v. DiJoseph*,
   37 F.Supp.3d 704 (S.D.N.Y. Aug. 8, 2014)........................................................................16

*Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*,
   754 F. Supp. 2d 616 (S.D.N.Y. 2010)................................................................................28

*RJR Nabisco, Inc. v. European Cmty.*,
   --- U.S. ---, 136 S. Ct. 2090 (2016).................................................................................. 14

*Ritchie Capital Mgmt., L.L.C. v. General Electric Capital Corp.*,
   121 F. Supp.3d 321 (S.D.N.Y. 2015).................................................................................17

*Scarsdale Cent. Serv. Inc. v. Cumberland Farms, Inc.*,
   No. 13-CV-8730, 2014 WL 2870283 (S.D.N.Y. June 24, 2014) .......................................28

*Schlaifer Nance & Co. v. Estate of Warhol*,
   119 F.3d 91 (2d Cir. 1997)................................................................................................14

*In re Sharp Intern. Corp.*,
   403 F.3d 43 (2d Cir. 2005).........................................................................................13, 19

*Sterling v. Deutsche Bank National Trust Company as Trustee for Femit Trust
   2006-FF6*, 368 F.Supp.3d 723 (2d Cir. 2019) ..................................................................21

*Students for Fair Admissions v. United States Military Academy at West Point*,
   --- F.Supp.3d ---, 2024 WL 36026 (S.D.N.Y. Jan. 3, 2024) .............................................22

*Sunni, LLC v. Edible Arrangements, Inc.*,
   No. 14 Civ. 461(KPF), 2014 WL 1226210 (S.D.N.Y. Mar. 25, 2014) ...............................20

*Sussman v. Crawford*,
   488 F.3d 136 (2d Cir. 2007). ..............................................................................................6

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
   No. 06 Civ. 14245(LTS) (MHD), 2007 WL 1296205 (May 2, 2007)..................................29

*Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc.*,
   60 F.3d 27 (2d Cir. 1995)...............................................................................................9, 23

*Toray International America, Inc. v. Nakayama*,
   No. 14 Civ. 3016 (GHW), 2014 WL 12543817(S.D.N.Y. Apr. 29, 2014)....................7, 8, 22

*Transperfect Translations Intern., Inc. v. Merrill Corp.*,
   No. 03 Civ. 10146 (LAP), 2004 WL 2725032 (S.D.N.Y. Nov. 30, 2004) ...........................24

*Villoldo v. BNP Paribas S.A.*,
    648 Fed.Appx. 53 (2d Cir. 2016) ............................................................................18

*Wag SPV I, LLC v. Fortune Global Shipping & Logistics, Ltd.*,
    612 F.Supp.3d 321 (S.D.N.Y. Mar. 27, 2020) ......................................................12

*Waldman Pub. Corp. v. Landoll, Inc.*,
    43 F.3d 775 (2d Cir. 1994). ...................................................................................28

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008) ...................................................................................................27

*Wisdom Imp. Sales Co. v. Labatt Brewing Co.*,
    339 F.3d 101 (2d Cir. 2003) .............................................................................20, 21

*Wolters Kluwer Financial Services Inc. v. Scivantage*,
    No. 07 CV 2352(HB), 2007 WL 1498114 (S.D.N.Y. May 23, 2007) ....................10

**State Cases**

*Gotlib v. Ratsutsky*,
    83 N.Y.2d 696 (1994). ..............................................................................................6

*McSpedon v. Levine*,
    158 A.D.3d 618 (2d Dep't 2018) ...........................................................................16

*Pappas v. Passaic's,*
    271 A.D.2d 420 (2d Dep't 2000) ...........................................................................16

*Rosenstiel v. Rosenstiel*,
    16 N.Y.2d 64 (1965) .................................................................................................6

**Rules**

Federal Rule of Civil Procedure 65 .............................................................................. 28

This Memorandum of Law is submitted by Emma "Duo" Liu ("Ms. Liu") and certain company and trust Defendants (the "Company Defendants")[1] in opposition to the Motion for a Preliminary Injunction (the "PI Motion," ECF No. 7) filed by Plaintiffs Huzhou Chuangtai Rongyuan Investment Management Partnership *et al.* (collectively, "Huzhou").

## **PRELIMINARY STATEMENT**

Huzhou's PI Motion is based on a variety of false predicates.  Huzhou assumes that an injunction is available here.  It is not.  Huzhou assumes that the judgment that they obtained against Defendant Hui Qin ("Mr. Qin") extends to his ex-wife, Ms. Liu.  It does not.  Huzhou also assumes that their cited transactions — which long pre-date the judgment issued by this Court – were driven by Huzhou's claims against Mr. Qin.  They were not; indeed, Ms. Liu did not even know of that legal dispute until after the effort to obtain a judgment began.  *See* Declaration of Ms. Liu ("Liu Decl."), ¶ 15.

Huzhou assumes that companies can be deemed "sham" entities just by saying that is what they are.  They cannot.  Huzhou also continues to assume that Ms. Liu's divorce from her ex-husband amounts to a "sham."  It is not, as Mr. Qin physically abused Ms. Liu, requiring her to obtain two court orders barring him from her home and from contacting her.  *Id*., ¶¶ 22-25.

The allegations in Huzhou's PI Motion intentionally conflate Mr. Qin and Ms. Liu throughout, seeking an indiscriminate restraint of Ms. Liu's assets.  *See id*., ¶¶ 19, 28, 34-37.  For the most part, Huzhou moves to restrain Ms. Liu's assets based on the conduct of Mr. Qin, Ms. Liu's abusive ex-husband, who is a felon awaiting sentencing and ultimate deportation.  *Id.*, ¶¶ 24-

---

[1] The Company Defendants include: St. Tome LLC; St. Fortune Group LLC; St. Grand Ceremony LLC; PH2003 Unit LLC; St. Hudson Group LLC; Golden Pegasus LLC; Golden Kirin LLC; Harushio LLC; Golden Mermaid LLC; Hatakaze LLC; Bryn Mawr Trust Company of Delaware; I Love GLE Trust; and Applegreen Family Trust.

27.  Having divorced her husband and walked away with a tiny fraction of their marital assets —

which Huzhou now wants — it is Ms. Liu who is being victimized here.[2]  Ms. Liu, an American

citizen, seeks to avoid Huzhou's further disruption of her daily life, including her responsibilities

caring for two children.  *Id.*, ¶¶ 28-30.

Huzhou flippantly contends that limiting Ms. Liu to spending $20,000 somehow imposes

no hardship on her.  ECF No. 10 at 29.  Yet Huzhou possesses information regarding Ms. Liu's

█████████████████████████████████████████████████████████████████  *See* Liu

Decl., ¶ 29.  Moreover, Huzhou does not even leave room for Ms. Liu to pay her counsel — seeking

to deny her legal representation before this case even starts.  *Id.*, ¶ 30.

What is more, Huzhou has made no showing of irreparable harm.  All Huzhou shows is

their ongoing difficulty enforcing a money judgment against Mr. Qin.  By its nature, that purported

injury is compensable in money damages.

In short, Huzhou's PI Motion is bereft of proof that Ms. Liu or the Company Defendants

did anything wrong.

## PROCEDURAL HISTORY

Huzhou consists of Chinese judgment creditors, who are enforcing an arbitration award of

the China International Economic and Trade Arbitration Commission ("CIETAC") Tribunal, dated

April 22, 2021 (the "Chinese Arbitration Award") against Mr. Qin.  Declaration of Stephen P.

Younger ("Younger Decl."), ¶ 3.

---

[2] For example, the divorce decree required Mr. Qin to pay his ex-wife approximately $50,000 per
month in child support.  Mr. Qin currently owes Ms. Liu an amount in excess of $2 million in
back support.  *See* Liu Decl., Ex. A.  Huzhou now seeks to squeeze the assets that Ms. Liu
received in the divorce to leave her with minimal money to support her family.

## **The First Action (Case No. 1:21-cv-09221-KPF)**

      To enforce the Chinese Arbitration Award, on November 8, 2021, Huzhou commenced the First Action by filing a Petition to Confirm and Enforce Arbitration. *See* First Action, ECF No. 1. By Order dated October 11, 2022, this Court confirmed the Chinese Arbitration Award against Mr. Qin, entering a money judgment (the "Judgment") in Huzhou's favor. *See* First Action, ECF No. 46. After entering the Judgment, this Court dissolved the automatic stay of Federal Rule of Civil Procedure 62(a) on October 28, 2022, and ordered expedited post-judgment discovery on November 1, 2022. *See* First Action, ECF Nos. 61, 64.

      As part of its post-judgment discovery, on June 9, 2023, Huzhou served Ms. Liu with a deposition subpoena (the "Subpoena"), which sought twenty separate categories of documents regarding her assets and those of her companies. Younger Decl., ¶ 10. On its face, the Subpoena was manifestly overbroad, including demands for Ms. Liu's ███████████████ ████████. *See* Younger Decl., Exhibit B. Huzhou obtained extensive paper discovery from Ms. Liu and discovery from her financial institutions all taken under a Protective Order. *See* First Action, ECF No. 92.

      To justify the Subpoena's sweeping requests, Huzhou claimed that they sought information regarding Mr. Qin's potential transfers of assets in order to satisfy the Judgment. *See* First Action, ECF No. 267 at 8. While Huzhou claimed that it was entitled to Ms. Liu's personal documents to locate Mr. Qin's assets, it is now obvious that Huzhou was focused on accessing Ms. Liu's personal accounts and information to pursue a lawsuit against her. *See* Younger Decl., Exhibit B. Huzhou pursued this tactic even though Ms. Liu was wholly uninvolved in the underlying CIETAC Arbitration (and subsequent Judgment) and has been divorced from Mr. Qin since December 10, 2020. *See* First Action, ECF Nos. 1, 46, Younger Decl., ¶¶ 4-5; Liu Decl., ¶ 18.

Despite Ms. Liu's objections to the overbroad Subpoena, this Court upheld Huzhou's document demands, ordering Ms. Liu to adopt Huzhou's additional search terms and directing Ms. Liu to produce all documents in her possession or control on or before March 25, 2024.  *See* First Action, ECF No. 365 at 11-12.

In response, Ms. Liu filed a Notice of Appeal on February 23, 2024.  *See* First Action, ECF No. 392.  On March 25, 2024, the Second Circuit Court of Appeals granted Ms. Liu's emergency motion for a temporary stay pending review, referring the stay motion to a three-judge panel on an expedited basis.  Dkt. No. 23.1.

### The Second Action (Case No. 1:24-cv-02219-KPF)

On March 19, 2024, Huzhou commenced the Second Action against Mr. Qin, Ms. Liu, Ms. Liu's parents, as well as various individuals and corporate entities, including the Company Defendants.  Younger Decl., ¶ 36.  When filing the case, Huzhou admitted that the Section Action was derived upon discovery obtained in the First Action.  *Id.*, ¶¶ 39-40.  Despite the parties' many prior communications through counsel, Huzhou filed an *ex parte* motion for an expedited schedule on their PI Motion, before Huzhou had even served Ms. Liu with the pleadings.  ECF No. 8; Younger Decl., ¶ 37, Liu Decl., ¶ 42.  Although Defendants had no opportunity to oppose Huzhou's motion for an expedited schedule, it was granted on March 29, 2024.  ECF No. 14.  In fact, Ms. Liu has yet to be properly served in this Action and it is not clear whether the Company Defendants have been served.  Liu Decl. ¶ 42.[3]

### STATEMENT OF FACTS

Ms. Liu is an American citizen, previously married to Mr. Qin.  Liu Decl., ¶¶ 3, 4, 18.

---

[3] Boxes of documents were left outside Ms. Liu's residence on the afternoon of March 29, 2024. Liu Decl., ¶ 42.  The boxes were not left with "a person of suitable age and discretion" as CPLR 308 requires.  *See id.*  To date, Ms. Liu has not received the requisite mailed copies.  *Id.*

In March 2017, Unit 2009 at the Plaza in Manhattan was purchased by Luxury Team, Inc., controlled at the time by Mr. Qin.  *Id.*, ¶ 9.  On February 5, 2020, Unit 2009 was transferred to St. Grand Ceremony LLC, owned by Ms. Liu.  *Id.*, ¶ 12.  On March 14, 2019, PH2003 Unit LLC, entirely controlled by Ms. Liu, purchased Unit 2003 at the Plaza.  *Id.*, ¶ 11.  Unit 2003 has *never* been owned by her ex-husband.  *See id.*

In March 2011, 39 Applegreen Drive in Old Westbury, New York, was purchased by King Fame Trading, then controlled by Mr. Qin.  *Id.*, ¶ 8.  On August 30, 2018, Mr. Qin transferred King Fame Trading to Ms. Liu's mother, Xuemin Liu (who had come to live at 39 Applegreen Drive). *Id.*, ¶ 10.  On May 21, 2020, Ms. Liu's mother deeded Ms. Liu a 50% interest in 39 Applegreen Drive, and the two became joint tenants with rights of survivorship. *Id.*, ¶ 13.  When these property transfers were made, Ms. Liu was unaware of the CIETAC arbitration that Huzhou had brought against Mr. Qin in China.  *Id.*, ¶ 15.  And the above property transfers occurred well before Huzhou filed the First Action, which was the first time that Ms. Liu learned of the underlying dispute.  *Id.*

Ms. Liu experienced extensive physical abuse at the hands of Mr. Qin, ultimately requiring two orders of protection which barred Mr. Qin from contacting her or going to her home.  *Id.*, ¶ 22-24; Ex. B. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Although Ms. Liu's divorce from Qin was delayed due to the COVID-19 pandemic, a divorce decree was issued in China effective December 10, 2020.  Liu Decl., ¶ 18; Liu Decl., Ex. A.  The divorce decree confirmed Ms. Liu's ownership of properties in her own name that were separate and distinct from the properties owned by Mr.

Qin.[4]  Liu Decl., ¶ 19.  Ms. Liu was neither a party to the underlying CIETAC arbitration nor a party to the First Action domesticating the Chinese Arbitration Award.  *See* ECF Nos. 1, 46, 140. On October 2, 2023, Mr. Qin was arrested, and he has remained in federal prison pending sentencing on his guilty plea to criminal charges.  Younger Decl., ¶ 17; Liu Decl., ¶¶ 25-26.

Huzhou's PI Motion contains many allegations regarding Mr. Qin, only a few allegations about Ms. Liu, and even fewer allegations regarding the Company Defendants.  Huzhou's misstatements of facts and claims without any facts whatsoever, cannot be ignored.

## LEGAL STANDARD

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest."  *North American Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).  "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007).  Indeed, a preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies" and courts have cautioned that it should be "used with great care."  *Broker Genius, Inc. v. Zalta*, 280 F.Supp.3d

---

[4]  Huzhou repeatedly alleges that Liu's divorce from Qin was a sham.  However, Huzhou needs to make "[s]ome evidentiary basis to support the proposition that the particular divorce decree of the foreign country was the product of individualized fraud or coercion or oppression or rested on proximately related public policies fundamentally offensive and inimical to those of this State must be demonstrated."  *Gotlib v. Ratsutsky*, 83 N.Y.2d 696, 699-700 (1994).  Indeed, "balanced public policy … requires that recognition [of a foreign] divorce be given rather than withheld and such recognition as a matter of comity offends no public policy of this State."  *Rosenstiel v. Rosenstiel*, 16 N.Y.2d 64, 74 (1965).

495, 509–10 (S.D.N.Y. 2017) (citing *Hanson Tr. PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985)).

## ARGUMENT

Huzhou's PI Motion should be denied for several reasons: first, Huzhou's requested injunction is precluded by the U.S. Supreme Court's decision in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.* 527 U.S. 308 (1999); second, Huzhou's violation of the First Action's Protective Order;  third, Huzhou offers only unsupported allegations that Ms. Liu or the Company Defendants were parties to any schemes to shield assets; fourth, Huzhou fails to establish irreparable harm, as Huzhou's purported irreparable harm is wholly limited to claimed financial loss; fifth, Huzhou's delay in bringing the PI Motion counsels for its denial; And finally, not only does the balance of hardships tip decidedly in Ms. Liu's favor but the public interest also requires denial of Huzhou's requested injunction.

## I.    U.S. SUPREME COURT PRECEDENT BARS HUZHOU'S REQUESTED INJUNCTION.

Huzhou's "request for an injunction restraining [Liu's] assets is precluded by the [United States] Supreme Court's decision in *Grupo Mexicano*."  *Toray International America, Inc. v. Nakayama*, No. 14 Civ. 3016 (GHW), 2014 WL 12543817, at *2 (S.D.N.Y. Apr. 29, 2014) (citing *Grupo Mexicano*, 527 U.S. at 329).

In *Grupo Mexicano*, the U.S. Supreme Court held that a party seeking to freeze assets pending the outcome of litigation must show that they have a lien or equitable interest in the property to be frozen.  527 U.S. at 332-33.  "Lower courts have generally interpreted *Grupo Mexicano* to bar preliminary injunctions in cases that seek primarily legal remedies."  *Levy v. Young Adult Institute, Inc.*, No. 13–CV–2861 (JPO), 2015 WL 170442, at *6 (S.D.N.Y. Jan. 13, 2015) (citing *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295

F.Supp.2d 366, 389 (S.D.N.Y. 2003) ("A preliminary injunction in this case would be issued in aid of the collection of a money judgment, not final equitable relief, an outcome barred by *Grupo Mexicano*.")).  Courts in this district have denied injunctions brought for precisely the purpose sought here – *i.e.,* to enforce a judgment against a third party.  *In re 650 Fifth Avenue And Related Properties*, No. 08 Civ. 10934 (LAP), et al., 2021 WL 1963803, at *5 (S.D.N.Y. May 17, 2021) ("Courts within this Circuit have applied *Grupo* to bar preliminary injunctions sought by judgment creditors who bring actions to enforce their money judgments against third parties (i.e., those other than the judgment debtor)").

Because "district courts lack the authority to issue a preliminary injunction preventing a defendant from transferring assets pending adjudication of an action seeking monetary damages[,]" this Court lacks authority to issue the requested injunction.  *Toray*, 2014 WL 12543817 at *2.  Similarly, this Court "lacks the authority to impose a post-judgment asset restraint and transfer."  *National Fire Protection Association, Inc. v. Swets Information Services Private Limited*, 18 Civ. 6029 (KPF), 2021 WL 1254424, at *1 (S.D.N.Y. Apr. 5, 2021) (Failla, J.).  Accordingly, *Grupo Mexico* and its progeny preclude Huzhou's requested injunction.

## II.     HUZHOU CANNOT ESTABLISH LIKELIHOOD OF SUCCESS ON THE MERITS OR SUBSTANTIAL QUESTIONS REGARDING THE MERITS.

The Second Circuit requires a party seeking a preliminary injunction to show "either . . . likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (citation omitted).[5]  As

_____

[5] Huzhou's request to limit Ms. Liu's spending to $20,000 a month, ECF No. 10 at 16, amounts to a mandatory preliminary injunction because it would alter the status quo by restraining Liu's

described below, Huzhou's claims against Ms. Liu are unlikely to succeed and Huzhou has failed to show substantial questions going to the merits.

### A.  <u>Huzhou's Violation of the First Action's Protective Order.</u>

Huzhou's claims against Ms. Liu are derived from documents used in violation of the First Action's Protective Order and must, therefore, be stricken.  *See* Younger Decl., Ex. A.  That Order expressly required that documents produced be used *only in that litigation,* thereby precluding Huzhou's use of the documents in the Second Action.  *See id.*  Huzhou neither requested permission from the Court to use the confidential documents nor moved to modify the First Action's Protective Order, which wholly precludes their use here.  *See id.  See also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, 14-MD-2542 (VSB), 14-MC-2542 (VSB), 2014 WL 12993810, at *3 (S.D.N.Y. Oct. 28, 2014) (permitting plaintiffs to use previously produced document in an amended complaint only because the applicable protective order had been modified).  Striking this sanctionable content from the Second Action's Complaint leaves a bare-boned, conclusory pleading that is too flimsy to survive scrutiny.

---

spending.  *North American Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d at 37 ("we must ascertain the status quo–that is, 'the last actual, peaceable[,] uncontested status which preceded the pending controversy") (internal quotation marks and citation omitted); *In re Feit & Drexler, Inc.*, 760 F.2d 406, 415 n.2 (2d Cir. 1985) (classifying the "seizure of person or property for the purpose of securing satisfaction of the judgment" as a mandatory injunction).  Unlike a prohibitory preliminary injunction, where the typical injunctive relief seeks only to maintain the status quo pending trial on the merits, Huzhou seeks to "alter the status quo by commanding some positive act."  *Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995).  The Second Circuit has held "that a mandatory injunction should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'"  *Id.*  The Second Circuit imposes this heightened standard because mandatory injunctions "tend to be particularly burdensome to the defendants subject to them."  *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023).  Courts, therefore, show a "greater reluctance" to grant mandatory preliminary injunctions.  *Hurley v. Toia*, 432 F.Supp. 1170, 1175 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1291 (2d Cir. 1977).

Huzhou expressly admitted to using documents obtained from Ms. Liu in flagrant violation of the First Action's Protective Order.[6]  Younger Decl., Ex. A at 7.  Therefore, as the Southern District of New York has held, "any allegation in [the Second Action's] complaint referencing said documents or factual assertion based solely on any information that is solely supported by any such document or documents is to be redacted from the complaint or affidavit or whatever pleading it appears in, being based on said willful violation of the Protective Order." *In re Biovail Corp. Securities Litigation*, 247 F.R.D. 69, 70 (S.D.N.Y. 2007).

Moreover, Huzhou should be "prohibited in the future from directly or indirectly using any material that is covered by the [First Action's] Protective Order . . . where a violation of the Protective Order is the sole source of information utilized by [Huzhou]." *Id.* at 71.  *See, e.g.*, *Hunt v. Enzo Biochem, Inc.*, 904 F.Supp.2d 337, 347 (S.D.N.Y. 2012) (restraining nonparty attorney from using material covered by the protective order); *Wolters Kluwer Financial Services Inc. v. Scivantage*, No. 07 CV 2352(HB), 2007 WL 1498114, at *8 (S.D.N.Y. May 23, 2007) (finding the "Protective Order in place in this action does not, and did not, allow the parties to this action to use 'confidential' … information in another action").

Accordingly, this Court should uphold the sanctity of the Protective Order and strike the offending portions of the instant Complaint.  *See* Younger Decl., Ex. A.  Once this information is stricken, Huzhou's claimed bases for the PI Motion wholly disappears.

---

[6] Indeed, Huzhou readily conceded that "[t]hrough post-judgment discovery in the Related Case, [Huzhou] discovered that [Mr.] Qin and various co-conspirators had engaged in a fraudulent scheme to hide and transfer [Mr.] Qin's assets to avoid his payment obligations to [Huzhou] in the underlying dispute that gave rise to the arbitration, and to avoid [Huzhou's] collection of the Judgment." *Id.*  Further, the Second Action's "Complaint contains and relies on key evidence discovered through post-judgment discovery in the Related Case and relies in depth on the factual background and prior rulings of the District Court in the Related Case." *Id.*

**B.      Each of Huzhou's "Counts" are Unlikely to Succeed on the Merits.**

Even despite Huzhou's flagrant violation of the Protective Order, Huzhou's claims are still unlikely to succeed on the merits, rendering the requested injunction inappropriate.  *Fratelli Italiani LLC v. Miranova*, 18 Civ. 7013 (CM), 2019 WL 3759160, at *9 (S.D.N.Y. Apr. 11, 2019) (requiring the movant to demonstrate that it is more likely than not to succeed on the merits).  Huzhou's Complaint alleges nine "counts"[7] against all of the named Defendants, each of which fails on the merits and cannot, therefore, form the basis for the extraordinary injunctive relief that Huzhou requests.

**1.      "Disregard of Sham Transactions" and "Declaration of Alter Ego"**

Huzhou's first claim is that Mr. Qin transferred assets to various entities and individuals without any real purpose or consideration, and that these transfers should be disregarded *in equity* as shams.  Huzhou's second claim seeks a declaration that Ms. Liu, various other individuals, and various entities are liable for Mr. Qin's debts as his alter egos, based on their purported participation in Mr. Qin's scheme.  Both claims are unlikely to succeed because Huzhou fails to offer sufficient proof to support its fraud, collusion, and domination allegations.  Huzhou relies on speculation, conjecture, and innuendo to impute Qin's liability to the other Defendants, without showing any actual evidence of wrongdoing or improper influence.

To support their first claim, Huzhou must supply facts showing that: (i) the transactions were shams, (ii) the entities and individuals involved were alter egos of Mr. Qin, and (iii) the transactions were made to hinder, delay, or defraud creditors.  A sham transaction is one that has no economic substance or business purpose and is designed to create the appearance of a

---

[7] Huzhou's claims for "Declaration of Alter Ego" and "Preliminary and Permanent Injunction" do not constitute valid causes of action because they are requests for relief.

legitimate transaction.  *Nicole Rose Corp. v. Comm'r*, 320 F.3d 282, 284 (2d Cir. 2003).

Huzhou's claim fails here because they lack support.  For example, Huzhou asserts that Mr.

Qin's transfer of 39 Applegreen Drive and both apartment units at the Plaza amount to sham

transactions.  ECF No. 10 at 12-15.  Huzhou does not, however, offer any facts to show that the

transactions were not supported by adequate consideration, for any business purpose, or that the

transactions were intended to deceive creditors.  In fact, these property transfers were made long

before the Second Action had been initiated and before Ms. Liu even knew of Huzhou's dispute

with Mr. Qin.  Liu Decl., ¶¶ 10, 12-15.  Moreover, Unit 2003 has *always been* in Ms. Liu's

control.  *Id.*, ¶ 11.

  Second, Huzhou does not show that Ms. Liu and the Company Defendants were alter

egos of Mr. Qin.  *Wag SPV I, LLC v. Fortune Global Shipping & Logistics, Ltd.*, 612 F.Supp.3d

321, 330-31 (S.D.N.Y. Mar. 27, 2020) (Failla, J.) ("a plaintiff must show that an alter ego was

used to perpetrate a fraud or was so dominated and its corporate form so disregarded that the

alter ego primarily transacted another entity's business rather than its own corporate business.")

(citations omitted).  For example, Huzhou alleges that Mr. Qin used multiple entities registered

at 39 Applegreen Drive as shams to hide his assets but fails to allege any facts showing that Mr.

Qin controlled the management, finances, or operations of these entities, or that he used them to

divert or conceal assets from Huzhou.  *See Wag SPV I, LLC*, 612 F.Supp.3d at 331 (noting that

allegations of common ownership, common directors, a single website, and a common LinkedIn

page were insufficient to show alter ego liability).  In support of its second claim, Huzhou relies

entirely on the conclusory statement that the entities were alter egos.  *See id.* ("Other than that,

the [Second Amended Verified Complaint] contains merely conclusory allegations.")

Third, Huzhou fails to tender any facts showing that Mr. Qin transferred assets with the actual intent to hinder, delay, or defraud creditors, or that the transfers were made without receiving a reasonably equivalent value in exchange and that Mr. Qin was insolvent or became insolvent as a result of the transfers. *In re Sharp Intern. Corp.*, 403 F.3d 43, 56 (2d Cir. 2005). *See* ECF No. 1. For example, Huzhou alleges that Mr. Qin used various bank accounts to transfer funds, including accounts to shield assets from creditors. ECF No. 1 at 91-102. Notwithstanding the existence of multiple bank accounts, Huzhou does not assert that Mr. Qin transferred funds with the actual intent to hinder, delay, or defraud creditors. Critically, the transfers of real property occurred before Huzhou obtained the Judgment against Mr. Qin. Liu Decl., ¶ 15; Younger Decl., ¶ 5. Moreover, Huzhou offers no proof that the transfers were made for lesser value or that the transfers rendered Mr. Qin insolvent.[8] *See In re Sharp Intern. Corp.*, 403 F.3d at 56. Huzhou merely asserts that the transfers were fraudulent, without providing any factual basis. Accordingly, Huzhou's claims for "Disregard of Sham Transactions" and "Declaration of Alter Egos" are unlikely to succeed.

## 2.     Racketeer Influenced and Corrupt Organizations Act ("RICO")

Huzhou's Civil RICO claim is unlikely to succeed on the merits for several reasons. Most significantly, a Civil RICO claim is unavailable to Huzhou because their alleged damages are foreign intangible property. Indeed, a Civil RICO claim requires "plaintiff to allege and prove a *domestic* injury to business or property and does not allow recovery for foreign injuries." *Aviles v S&P Global, Inc.*, 380 F.Supp.3d 221, 266 (S.D.N.Y. 2019) (emphasis added) (citing

---

[8] Huzhou's challenge to transfers made to Ms. Liu runs afoul of the need to recognize Ms. Liu's right to property received from her divorce. *See Commodity Futures Trading Com'n v. Walsh*, 3 F.Supp.3d 70, 76 (2d Cir. 2014); *Langenberg v. Sofair*, No. 03 CV 8339 KMK, 2006 WL 2628348, at *4 (S.D.N.Y. Sept. 11, 2006).

*RJR Nabisco, Inc. v. European Cmty.*, --- U.S. ---, 136 S. Ct. 2090, 2111 (2016)).  While the U.S. Supreme Court has yet to provide a framework for resolving "disputes [that] arise as to whether a particular alleged injury is 'foreign' or 'domestic,'" *id.*, the Second Circuit has adopted the "'locus-of-effects approach,' which 'focus[es] on where the plaintiff felt the effects of the injury.'"  *Elsevier Inc. v. Pierre Grossmann, IBIS Corp.*, No. 12 Civ. 5121, 2017 WL 5135992, at *4 (S.D.N.Y. Nov. 2, 2017) (alteration in original) (citation omitted).  Given the claimed harm to Huzhou's companies were felt in China, Huzhou's damages are foreign under the Second Circuit's "locus-of-effects approach," precluding Huzhou's Civil RICO claim.  *See Aviles v S&P Global, Inc.*, 380 F.Supp.3d at 267.

Similarly, Huzhou fails to assert an actionable racketeering claim, which requires proof of the "(1) conduct (2) of an enterprise (3) though a pattern (4) of racketeering activity." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (citation omitted).  To establish a "pattern" of racketeering activity, Huzhou must show "at least two predicate acts, [and] show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997).  Here, Huzhou merely asserts – repeatedly and without proof – that Mr. Qin and certain Defendants engaged in mail and wire fraud, money laundering, and obstruction of justice, without providing any specific details of the alleged predicate acts, such as the dates, contents, or recipients of the fraudulent communications, the amounts, sources, or destinations of the allegedly laundered funds, or the nature, extent, or consequences of the spoliated evidence.  *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996).  Such conclusory assertions are insufficient to show a pattern of racketeering activity that is continuous, related, and poses a threat of future criminal conduct.  *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F.Supp.3d 525,

540 (S.D.N.Y. Mar. 10, 2014).  Accordingly, Huzhou's claims for Civil RICO and racketeering are unlikely to succeed on the merits.

### 3.        Violation of N.Y. General Business Law ("GBL") § 133

Huzhou's claim for violation of N.Y. General Business Law § 133 is unlikely to succeed because GBL § 133 "protects *tradenames* from *unlawful infringement* by prohibiting the use of someone else's name, style[,] or symbol as part of one's own name with an intent to deceive the public." *Oliveira v. Frito-Lay, Inc.*, No. 96 CIV. 9289, 1997 WL 324042, at *6 (S.D.N.Y. June 13, 1997) (emphasis added).  To maintain a claim, Huzhou must show (1) that Mr. Qin used its name or symbol as part of Mr. Qin's "corporate, assumed or trade name" for (2) "purposes of advertising with an intent to deceive." *Id. See Knowyourmeme.com Network v. Nizri*, 20-CV-9869 (GBD) (JLC), 2021 WL 3855490, at *16 (S.D.N.Y. Aug. 30, 2021).

Here, Huzhou merely asserts that Defendants violated GBL § 133 by "misusing various corporate names to deceive the creditors and others about the true ownership of assets and the true purpose of assets."  ECF No. 1, ¶ 501.  Huzhou has not alleged that Defendants used *Huzhou's name* as part of Defendants' trade name "for purposes of advertising with an intent to deceive." *Oliveira v. Frito-Lay, Inc.*, 1997 WL 324042, at *6.  Huzhou's allegations that Defendants used multiple corporate entities are irrelevant to their proposed GBL § 133 claim, as Huzhou's allegations do not show that Defendants adopted the "corporate, assumed, or trade name of another." *Knowyourmeme.com Network v. Nizri*, 2021 WL 3855490, at *15. Accordingly, Huzhou's claim for N.Y. General Business Law § 133 is unlikely to succeed on the merits.[9]

---

[9] Not mentioned in the PI Motion is Huzhou's claim that the CivilizAsian Foundation ("CivilizAsian") is a sham charity.  Even if addressed, this claim would be unlikely to succeed as Huzhou has no standing to assert this claim.  Indeed, CivilizAsian was not included as a party to

4.      **Conspiracy**

Huzhou's conspiracy claim is also unlikely to succeed because New York does not

recognize a claim for civil conspiracy absent an underlying tort.  *Alexander & Alexander of New*

*York, Inc., 68* N.Y.2d 968 (1986); *McSpedon v. Levine*, 158 A.D.3d 618 (2d Dep't 2018);

*Pappas v. Passaic's,* 271 A.D.2d 420, 421 (2d Dep't 2000).

Even if Huzhou could maintain a separate tort, its conspiracy claim fails.  Huzhou baldly

asserts that Mr. Qin conspired to unlawfully "conduct and participate, directly and indirectly, in

the conduct of the affairs of the Hui Qin Enterprise *through a pattern of racketeering activity*."

ECF No. 1, ¶ 417 (emphasis added).  But "where the acts underlying a claim of conspiracy are

the same as those underlying other claims alleged in the complaint, the conspiracy claim is

dismissed as duplicative."  *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, No. 99-CV-9623,

2007 WL 1040809, at *26 (S.D.N.Y. April 4, 2007).  Huzhou's meritless Civil RICO claim

precludes any claim for civil conspiracy.  *Ray Legal Consulting Group v. DiJoseph*, 37

F.Supp.3d 704, 723 (S.D.N.Y. Aug. 8, 2014) (Failla, J.).  In other words, because Huzhou's civil

conspiracy claim is derivative of the failed Civil RICO claim, the civil conspiracy claim should

be dismissed as well.  *Hua Xue v. Jensen*, No. 19-CV-1761, 2020 WL 6825676, at *12 (S.D.N.Y.

Nov. 19, 2020).

What's more, Huzhou has not identified any communications, meetings, or other

evidence of coordination or collaboration among the co-conspirators that would support the

---

the Second Action, and Huzhou only alleges that Mr. Qin and Ms. Liu are associated with
CivilizAsian, referencing Ms. Liu's invocation of the Fifth Amendment during her deposition.
ECF No. 1, ¶ 212.  What is more, Huzhou is not a judgment creditor of CivilizAsian.  N.Y. Not-
for-Profit Corp. Law § 720(b).  *See Consumers Union of U.S. v. State*, 5 N.Y.3d 327, 350-51
(2005) ("Plaintiffs are not within any classes of parties authorized by the Not-For-Profit
Corporation Law to challenge the Board's conduct").

existence of a conspiracy.  Huzhou's assertions regarding the existence of a conspiracy are wholly conclusory, failing to specify the terms, scope, or objectives of any alleged agreement. *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy . . . are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.").   Huzhou has also failed to put forth any facts showing the co-conspirators intentionally participated in furtherance of the purported conspiracy. *Ritchie Capital Mgmt., L.L.C. v. General Electric Capital Corp.*, 121 F.Supp.3d 321, 339 (S.D.N.Y. 2015) ("a plaintiff must allege facts indicating that an overt act 'was done in furtherance of an agreement to commit unlawful acts.'") (omitting citation).  Huzhou's failure to maintain an actionable claim for civil conspiracy under New York law renders it unlikely to succeed on the merits.

### 5.   Claim for Actual Fraudulent Transfer

Huzhou's claim for actual fraudulent transfer is also unlikely to succeed for several reasons.  First, Huzhou has not shown that Mr. Qin had actual intent to hinder, delay, or defraud creditors.  *Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC*, No. 07CV6665(HB), 2009 WL 1803458, at *20 (S.D.N.Y. June 23, 2009) ("the several commission payments, though questionable, were not the type of extraordinary conveyance that betrays a clear intent to avoid a creditor's claim").  There is no evidence to support Huzhou's allegations that transfers were made to defraud them, as Ms. Liu never received property knowing that it was being transferred to avoid creditors.  The undisputed facts establish that Ms. Liu received the principal pieces of real property (the apartment and the Applegreen house) on February 5, 2020 and May 21, 2020, *long before* Huzhou initiated the First Action, dispelling any accusations of fraudulent conduct.

Moreover, Ms. Liu was given the right to keep these properties pursuant to her divorce decree, putting the transfers outside the statute of limitations for any claim of fraudulent transfer. *See Federal Deposit Ins. Co. v. Malin*, 802 F.2d 12, 20 (2d Cir. 1986) (determining that the conveyance of a house was effected by a separation agreement, prior to the date of the creditor's judgment lien, and that the wife had no knowledge of the fraud at the time of the conveyance). Ms. Liu did not even know about the arbitration until after the First Action was filed.  Liu Decl., ¶ 11.  As to money transfers, Huzhou has shown nothing to question that these are transfers between husband and wife.

Second, Huzhou has not shown that Mr. Qin was insolvent or that any transfer rendered him insolvent.  *Chen v. New Trend Apparel, Inc.*, 8 F.Supp.3d 406, 445 (S.D.N.Y. 2014) (dismissing plaintiff's actual fraudulent transfer claim because "[t]he operative reference point for determining insolvency is the time at which the transfer took place and insolvency of the transferor . . . cannot be presumed from subsequent insolvency[.]") (citations omitted).

And third, Huzhou's claim for actual fraudulent transfer does not properly specify the requisite particulars of the claimed transfers, specifically the property allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, or the consideration paid.  *See Villoldo v. BNP Paribas S.A.*, 648 Fed.Appx. 53, 56 (2d Cir. 2016) ("Conclusory allegations that defendants intended to frustrate creditors of Cuba . . . do not meet the heightened pleading standard" of Federal Rule of Civil Procedure 9(b)).

### 6.     Claim for Constructive Fraudulent Transfer

Huzhou's constructive fraudulent transfer claim is also meritless.  New York defines constructive fraudulent conveyances as "made without 'fair consideration'" if (1) "the transferor is insolvent or will be rendered insolvent by the transfer in question"; (2) "the transferor is

engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital"; or (3) "the transferor believes that it will incur debt beyond its ability to pay." *In re Sharp Int'l Corp.*, 403 F.3d at 53.  Huzhou has failed to meet this standard for several reasons.

First, Huzhou fails to show that Mr. Qin was engaged in or about to engage in a business or transaction that would leave him with unreasonably small capital at the time of the transfers. *See Innovative Custom Brands, Inc. v. Minor*, 15-CV-2955 (AJN), 2016 WL 308805, at *3 (S.D.N.Y. Jan. 15, 2016).  Second, Huzhou does not offer facts about Mr. Qin's intent to incur debt that he believed he could not pay.  *See id.*

What's more, under Ms. Liu's divorce decree, Ms. Liu was entitled to keep equity held in her name.  *See* Liu Decl., Ex. A.  Most of what she received in the divorce was shares in companies (including St. Grand Ceremony LLC and PH2003 Unit LLC) that hold properties. *See Commodity Futures Trading Com'n v. Walsh*, 3 F.Supp.3d at 76; *Langenberg v. Sofair*, 2006 WL 2628348, at *4.

Ultimately, Huzhou's wholly "conclusory allegations do not suffice to state a constructive fraudulent conveyance claim."  *DoubleLine Capital LP v. Odebrecht Finance, Ltd.*, 323 F.Supp.3d 393, 466 (S.D.N.Y. 2018); *Geo-Group Communications, Inc. v. Chopra*, 15 Civ. 1756 (KPF), 2016 WL 390089, at *5 (S.D.N.Y. Feb. 1, 2016).

**C.**     **Huzhou Presents No Substantial Questions Going to the Merits.**

Huzhou brazenly claims that it can "easily show 'substantial questions' on the merits of at least one of their claims" without even identifying the substantial question purportedly

presented.  ECF No. 10 at 29.[10]  However, because Huzhou "omit[s] discussion of any of these

serious questions," Huzhou's claim regarding their substantial questions is wholly unconvincing.

*Sunni, LLC v. Edible Arrangements, Inc.*, No. 14 Civ. 461(KPF), 2014 WL 1226210, at *17

(S.D.N.Y. Mar. 25, 2014) (Failla, J.).  Notwithstanding Huzhou's circular reasoning, as

demonstrated above, the PI Motion is not only conclusory but also devoid of any proof that Ms.

Liu or the Company Defendants engaged in any conduct warranting an injunction.  In sum,

Huzhou is unlikely to succeed on the merits of any claims against Ms. Liu and the Company

Defendants, and "has not demonstrated a sufficiently serious question regarding" Ms. Liu or the

Company Defendants to justify the requested injunction.  *Lee Myles Auto Group, LLC v.

Fiorillo*, No. 10 Civ. 6267 (PKC), 2010 WL 3466687, at *7 (S.D.N.Y. Aug. 25, 2010).

## III.    HUZHOU HAS FAILED TO ESTABLISH IRREPARABLE HARM.

        Huzhou has failed to show that it will be irreparably injured in the absence of a

mandatory preliminary injunction.  Irreparable harm is defined as "certain and imminent harm

*for which a monetary award does not adequately compensate*."  *Wisdom Imp. Sales Co. v. Labatt

Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003) (emphasis added).  "To determine whether

[Huzhou] has shown irreparable harm, the court must actually consider the injury [Huzhou] will

suffer if [they] lose[] on the preliminary injunction but ultimately prevail[] on the merits, paying

particular attention to whether the remedies available at law . . . are inadequate to compensate for

that injury."  *Hyde v. KLS Prof'l Advisors Grp., LLC*, 500 F. App'x 24, 25 (2d Cir. 2012)

(citation omitted).  "Irreparable harm is the single most important prerequisite for the issuance of

---

[10] The existence of substantial questions going to the merits requires two showings: (1) that there
are "questions so serious, substantial, difficult, and doubtful as to make them fair ground for
litigation and thus more deliberate investigation"; and (2) that the harm that it would suffer is
"'decidedly' greater" than the harm that its adversary would suffer.  *International Business
Machines Corp. v. Johnson,* 629 F.Supp.2d 321, 333 (2d Cir. 2009) (omitting citations).

a preliminary injunction." *Sterling v. Deutsche Bank National Trust Company as Trustee for Femit Trust 2006-FF6*, 368 F.Supp.3d 723, 727 (2d Cir. 2019) (citation omitted).

      A.    **Huzhou's Purported Irreparable Harm Focuses Solely on the Recovery of Money.**

      Huzhou's claimed irreparable harm focuses exclusively on recovering money from Mr. Qin, which does not amount to the requisite irreparable harm. *Wisdom Imp. Sales Co.*, 339 F.3d at 113. Huzhou claims that irreparable harm will result from "their inability to collect on the arbitral judgment." ECF No. 10 at 25. But "[i]t is well established that irreparable injury means injury for which a monetary award *cannot* be adequate compensation." *Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 917–18 (2d Cir. 1986) (emphasis added) (citation omitted). Moreover, the "mere injuries . . . in terms of money, time and energy necessarily expended . . . are not enough" to establish irreparable harm. *Id.* (quoting *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (citations omitted).

      Although Huzhou boldly claims that they will suffer irreparable harm absent an injunction – even in the face of contrary case law – Huzhou's claim for irreparable harm necessarily fails. Huzhou provides no evidence "that, upon the conclusion of this matter, [Huzhou] cannot be fully compensated through money damages for the alleged harm suffered." *Allstate Ins. Co. v. Harvey Family Chiropractic*, 677 Fed.Appx. 716, 718 (2d Cir. 2017). It is black letter law that "where monetary damages may provide adequate compensation, a preliminary injunction should not issue." *Jayaraj v. Scappini*, 66 F.3d at 39.

      Furthermore, Huzhou's purported irreparable harm is too speculative and remote to warrant a mandatory preliminary injunction. *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (requiring an injury "that is neither remote nor speculative, *but actual and imminent*, and one that cannot be remedied if a court waits until the end of trial to resolve the

harm") (emphasis added).  Huzhou claims that the "combination of [Mr.] Qin's scheme of transferring assets, contempt for judicial process, and his extensive means presents a *serious risk of irreparable harm*."  ECF No. 10 at 25 (emphasis added).  But Mr. Qin is in prison, will soon be deported, and cannot communicate with Ms. Liu due to the Orders of Protection against him.  Liu Decl., ¶¶ 24-27; Ex. B.  Accordingly, "there is no actual imminent harm" as Huzhou's purported irreparable harm is inherently hypothetical, relying on the *possibility* of Mr. Qin dissipating his assets.  *Students for Fair Admissions v. United States Military Academy at West Point*, --- F.Supp.3d ---, 2024 WL 36026, at *13 (S.D.N.Y. Jan. 3, 2024).

### B.   Huzhou's Claim for Irreparable Harm Focuses Almost Entirely On Mr. Qin's Actions, Not Those of Ms. Liu or the Company Defendants.

Huzhou also utterly fails to show how a preliminary injunction against Ms. Liu, or the Company Defendants, would avert Huzhou's purported irreparable harm.  To demonstrate that Huzhou will be irreparably injured in the absence of a preliminary injunction, Huzhou claims that *Mr. Qin* intends to frustrate the underlying monetary Judgment in this action.  ECF No. 10 at 22.  Huzhou focuses primarily on *Mr. Qin's* activities, which could "frustrate [Huzhou's] ability to collect on the judgment.  *Id.*  For example, Huzhou states that Mr. "Qin has flatly refused to cooperate with depositions or produce documents as ordered, and he has repeatedly lied to the Court."  *Id.* at 24.  Huzhou then claims that Mr. "Qin has also freely admitted to destroying records by deleting messages."  *Id.*  But Mr. Qin's alleged obstructive activities *do not* justify Huzhou turning its focus onto Ms. Liu simply because she might be an easier target.[11]  And it is no grounds for an injunction against Ms. Liu.

---

[11] To justify their requested injunctive relief, Huzhou improperly refers the Court to Mr. Qin's past conduct.  However, "a court may not rest its finding of the likelihood of future harm solely on the past illegal conduct."  *Toray,* 2014 WL 12543817, at *1 (citing *Gelfand v. Stone*, 727 F.Supp. 98, 101 (S.D.N.Y. 1989) (omitting citation).  Here, Huzhou "relies almost entirely on

To support its broad injunction, Huzhou alleges that "collection will be rendered impossible by [Mr.] Qin and [Ms.] Liu's relentless scheme of transferring assets." *Id.* at 22. Huzhou's conclusory statement, however, is rebutted by Ms. Liu's divorce from Mr. Qin, which was effective on December 10, 2020, as well as the Orders of Protection that bar Mr. Qin from contacting Ms. Liu.  Liu Decl., ¶¶ 18, 24; Ex. B.  In other words, despite Huzhou's allegations of some alleged continuing scheme between Mr. Qin and Ms. Liu, it is abundantly clear that Ms. Liu has made every effort to disentangle herself from her abusive husband.  *Id.*, ¶¶ 23-24. Exemplifying this is Huzhou's claim that Mr. Qin is selling Ms. Liu's New York apartments.[12] Wrong.  It is Ms. Liu who is selling the apartments because she needs money to support herself and her family.  Liu Decl., ¶ 38.

Huzhou's clumsy attempt to impute Mr. Qin's behavior to Ms. Liu in the PI Motion — while only actually referencing Ms. Liu three times, twice by name and once when erroneously claiming that she is Mr. Qin's "(allegedly ex) wife" *see* ECF No. 10 at 22-25 — further supports denying the requested injunctive relief against Ms. Liu.

## IV.  HUZHOU'S DELAY PRECLUDES ANY PRELIMINARY INJUNCTION.

Huzhou's delay in moving for a preliminary injunction further precludes this Court from granting the requested injunctive relief.  "A district court should generally consider delay in assessing irreparable harm."  *Tom Doherty Associates, Inc. v. Saban Entm't. Inc.*, 60 F.3d at 39. A preliminary injunction implies an "urgent need for speedy action to protect the plaintiffs'

---

evidence of [Mr. Qin's] past fraudulent conduct in this context.  Absent from [Huzhou's] application is any evidence of '*on-going efforts to place . . . assets outside the reach of creditors*.'"  *Id.* (emphasis added) (citing *Gelfand v. Stone*, 727 F.Supp. at 101).

[12]  Contrary to Huzhou's PI Motion, which incorrectly stated that Mr. Qin listed Plaza Suite 2009 for sale, ECF No. 10 at 20-21, Ms. Liu listed the apartment for sale to fund her living expenses and support her family.  Liu Decl., ¶ 38.

rights." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985).  Delay, therefore, "indicates an absence of the kind of irreparable harm required to support a preliminary injunction."  *Id.* (finding a ten-week delay precluded any finding of irreparable injury).  *See, e.g.*, *Transperfect Translations Intern., Inc. v. Merrill Corp.*, No. 03 Civ. 10146 (LAP), 2004 WL 2725032, at *4 (S.D.N.Y. Nov. 30, 2004) ("A party's delay in moving for preliminary injunctive relief undercuts the sense of urgency that typically accompanies such a motion").

Here, on August 30, 2018, Mr. Qin transferred his interest in the 39 Applegreen Drive property to Ms. Liu's mother.  Liu Decl., ¶ 10.  On May 21, 2020, Ms. Liu's mother then transferred the property to joint ownership between Ms. Liu and herself.  *Id.*, ¶ 13.  On February 5, 2020, Mr. Qin's company transferred Plaza Unit 2003 to St. Grand Ceremony LLC, a company controlled by Ms. Liu.  *Id.*, ¶ 12.  As a result, by mid-2020, Huzhou had constructive notice of the property transfers that they now (with no real facts) claim to be fraudulent.  *See Pereira v. Ruggerite, Inc.*, No. 03 Civ. 1071(TPG), 2004 WL 324847, *3 (S.D.N.Y. Feb. 19, 2004) ("Constructive notice under New York law is such knowledge as would be revealed by examination of the record, reasonable inquiry to those in actual possession, or reasonable inquiry on the basis of all circumstances.") (omitting citation).

Huzhou initiated the First Action on November 8, 2021.  *See* First Action, ECF No. 1.  In the First Action, the Court granted the Judgment on October 11, 2022, and the Court dissolved the automatic stay of proceedings on October 28, 2022.  *See* First Action, ECF Nos. 46, 61.  Yet Huzhou never sought an injunction.

During Ms. Liu's deposition on October 3, 2023, Huzhou accused Ms. Liu of bank fraud, mail fraud, and wire fraud, all of which can be predicates for a RICO claim.  *See Binghampton Masonic Temple, Inc. v. Bares*, 189 F.3d 460, 460 (2d Cir. 1999) (recognizing mail fraud, wire

fraud, and bank fraud as predicate act) (citing 18 U.S.C. § 1961(1)(B)).  Despite Huzhou's

apparent beliefs about Ms. Liu's involvement in the underlying scheme, Huzhou initiated the

Second Action on March 28, 2024, over *four years* after the last property transfer by Mr. Qin and

more than five months after Ms. Liu's deposition.  *See* Second Action, ECF Nos. 1, 7.  Huzhou's

unexplained and protracted delay precludes this Court from granting Huzhou's PI Motion.

*Insurance Company of the State of Pennsylvania v. Lakeshore Toltest JV, LLC*, 15 Civ. 1436

(ALC), 2015 WL 8488579, *3 (S.D.N.Y. Nov. 30, 2015) ("At any rate, another reason exists

why, in the circumstances of this case, a mandatory preliminary injunction should not issue: the

delay with which ICSP acted in moving.").

## V.     THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN MS. LIU'S FAVOR

Considering Huzhou's failed showings, the Court is not required to consider the balance

of hardships.  *ICN Pharmaceuticals, Inc. v. Khan*, 2 F.3d 484, 490 (2d Cir. 1993).  But even if

this Court reaches it, the balance of hardships tips decidedly in Ms. Liu's favor.  *See N.Y. ex rel.*

*Schneiderman v. Actavis PLC*, 787 F.3d 638, 661 n.38 (2d Cir. 2015).

When the party moving for injunctive relief fails to demonstrate a likelihood of success

and can only demonstrate "sufficiently serious questions going to the merits to make them fair

ground for litigation," the "balance of the hardships" must tip decidedly toward the movant.  *ICN*

*Pharmaceuticals, Inc. v. Khan*, 2 F.3d at 490.  The balance of hardships inquiry "asks which of

the two parties would suffer most grievously if the preliminary injunction motion were wrongly

decided."  *Absolute Recovery Hedge Fund, L.P. v. Gaylord Container Corp.*, 185 F.Supp.2d 381,

388 (S.D.N.Y. 2002).  A "'balance of hardships tipping decidedly toward the party requesting

the preliminary relief' must mean real hardship from the denial of relief *pendente lite* — not

merely the showing of difficulty of measurement which may suffice to constitute 'irreparable

damage' where a plaintiff shows probable success." *Buffalo Courier-Express, Inc. v. Buffalo Evening News*, 601 F.2d 48, 58 (2d Cir. 1979) (omitting citation).

Huzhou argues that absent a preliminary injunction, it will "lose the chance to recover any, or almost any, of the funds that [Huzhou] are entitled to." ECF No. 10 at 29. But these injuries are speculative and, if proven, only call for monetary damages. *See National Football League Management Council v. National Football League Players Association*, 296 F.Supp.3d 614, 625 (S.D.N.Y. 2017) (Failla, J.). What's more, the "punitive, non-economic motives expressed by [Huzhou] are relevant factors in assessing the balance of equities in this matter, and tip the equities against [Huzhou's] motion." *D'Arrigo Bros. Co. of New York, Inc. v. MLPP LLC*, No. 15–cv–2041 (RJS), 2015 WL 3526999, at *4 (S.D.N.Y. June 3, 2015).

Huzhou only faces the *potential* loss of recovery. In contrast, Ms. Liu risks the inability to pay her monthly bills while the Court determines whether Huzhou has any claim (it does not) to pursue Ms. Liu's personal assets. Huzhou's requested monthly restriction of $20,000 is a fraction of Ms. Liu's monthly bills and would leave her on the brink of bankruptcy. Liu Decl., ¶¶ 28-29. Huzhou's requested mandatory injunction would not even allow Ms. Liu to pay counsel much less her living expenses.[13] *Id.*, ¶ 30.

Ms. Liu's "perilous financial condition" should this Court grant Huzhou's PI Motion is sufficiently compelling "to find that the equities do not favor an injunction." *Marblegate Asset Management v. Education Management Corp.*, 75 F.Supp.2d 592, 609 (S.D.N.Y. 2014) (Failla, J.). Further, "given [Huzhou's] failure to show a likelihood of success on the merits [and] the significant hardship that [Ms. Liu] would suffer from the issuance of an injunctive order," the

---

[13] The injunction that Huzhou seeks would result in a denial of Ms. Liu's fundamental right to counsel.

balance of equities tips decidedly in Ms. Liu's favor.  *International Business Machines Corp. v. Johnson*, 629 F.Supp.2d 321, 337 (2d Cir. 2009).

## VI.    THE PUBLIC INTEREST ALSO FAVORS DENIAL OF THE REQUESTED PRELIMINARY INJUNCTION.

Finally, the Court "must ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  The public interest is not seriously implicated, as the Second Action consists of litigation between private parties.  *See Civil Rights Corps v. Pestana*, No. 21-cv-9128, 2022 WL 3445729, at *4 (S.D.N.Y. Aug. 17, 2022).

In support of its argument, Huzhou claims that the issuance of a mandatory injunction would serve the public interest because enforcement of legislation is generally beneficial to society.  ECF No. 10 at 30.  This puzzling logic would "effectively read the public interest prong out of the test for a preliminary injunction and run counter to the Supreme Court's admonition that 'courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction[.]'"  *Marblegate Asset Management*, 75 F.Supp.3d at 610 (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008)).  This Court should wholly disregard Huzhou's simplistic argument that enforcement of legislation automatically serves the public interest.

Further, Huzhou speciously claims that its requested mandatory injunction is "narrowly tailored to prevent further fraud while minimizing inconvenience to Defendants."  ECF No. 10 at 30.  But "[t]he scope of preliminary injunctive relief generally should be no broader than necessary to cure the effects of the harm caused by the violation."  *New York v. U.S. Dep't of Homeland Security*, 475 F.Supp.3d 208, 230 (S.D.N.Y. 2020) (citation omitted).  Huzhou's requested preliminary injunction is extraordinarily and unwarrantedly broad, imposing a

27

substantial inconvenience upon Ms. Liu.  ECF No. 10 at 29 ("any inconvenience to Defendants

would be minimal").  *See Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994).

The restraint of Ms. Liu's funds would be incredibly disruptive, not only forcing her to the brink

of insolvency but also denying her the ability to pay counsel.  Liu Decl., ¶¶ 28-30.  The public

interest does not favor the injunction sought by Huzhou.

## VII.    IF THIS COURT WERE TO GRANT HUZHOU'S PI MOTION, A SUBSTANTIAL BOND IS REQUIRED.

If the Court were to grant Huzhou's PI Motion, the Court should require a substantial

bond.  The purpose of the security is to "cover any damages that might result if it were later

determined that the applicant was not entitled to an injunction."  *Rex Med. L.P. v. Angiotech*

*Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 626-27 (S.D.N.Y. 2010) (citation omitted).

Federal Rule of Civil Procedure 65(c) allows courts to grant a preliminary injunction

"only if the movant gives security in an amount that the court considers proper to pay the costs

and damages sustained by the party found to have been wrongfully enjoined or restrained."

Accordingly, Rule 65(c) "allows a preliminary injunction to become effective only upon the

applicant's positing of an amount that the district court determines adequate."  *Corning Inc. v.*

*PicVue Electronics, Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004).  Rule 65(c) gives the district court

"wide discretion to set the amount of a bond."  *Id.* (quotation marks omitted).[14]

---

[14] When calculating the bond amount, the Court should consider both the likelihood of the enjoined party prevailing on the merits and the harm suffered by the enjoined party.  *See Scarsdale Cent. Serv. Inc. v. Cumberland Farms, Inc.*, No. 13-CV-8730, 2014 WL 2870283, at *6 (S.D.N.Y. June 24, 2014); *see also Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F.Supp.2d at 627 (considering the likelihood of the enjoined party prevailing on the merits).  As the Second Circuit explained, "[t]he injunction bond is designed to cover any damages that might result if it were later determined that [the applicant] was not entitled to an injunction." *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith*, 910 F.2d 1049, 1055 (2d Cir. 1990) (citation omitted).  The burden is on the party seeking security to establish a rational basis for the

Ms. Liu will suffer major damage if the mandatory preliminary injunction is granted, including a significant encumbrance on her valuable real estate that cannot be undone.  As pointed out by Huzhou, Ms. Liu's apartment is listed for sale, with an asking price of $40 million dollars.  ECF No. 10 at 13.  Ms. Liu listed her apartment for sale to fund her monthly living expenses and support her family.  Liu Decl., ¶ 29, 38.  Absent such a sale, Ms. Liu will lack funds to pay her bills and to pay lawyers.  *Id.*, ¶ 29-30.  She may even need to consider filing for bankruptcy.

Ms. Liu will likely be harmed if a bond is not posted, because if she wins on the merits, she will have been prevented from accessing her frozen funds, unable to recover the damages caused by Huzhou.  *See Marsh USA Inc. v. Schuhriemen*, 183 F.Supp.3d 529, 538 (S.D.N.Y. 2016).

Further, "[i]n setting the amount of security for a preliminary injunction, the trial court should err on the high side," since "an error on the low side may produce irreparable injury, because damages for an erroneous preliminary injunction may not exceed the amount of the bond."  *Interlink Intern. Financial Services, Inc. v. Block*, 145 F.Supp.2d 312, 318 (S.D.N.Y. 2001).  Accordingly, Huzhou should be required to post a bond sufficient to pay the damages that Liu will suffer if a preliminary injunction is wrongfully granted at least $40 million, as Ms. Liu would be prevented from selling her Plaza apartment.  This amount is not "unreasonable" considering the fact that the Court cannot "conclude that [Liu] would be totally unharmed by th[e] injunction."  *N. Am. Olive Oil Assoc. v. Kangadis Food Inc.*, 962 F.Supp.2d 514, 524 (S.D.N.Y. Apr. 25, 2013).

---

amount of the proposed bond. *Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06 Civ. 14245(LTS) (MHD), 2007 WL 1296205, at *3 (May 2, 2007).

## <u>CONCLUSION</u>

For all the foregoing reasons, the Court should deny Huzhou's Motion for a Preliminary Injunction.  Alternatively, should the requested mandatory injunction be granted, Huzhou should be required to post a bond of at least $40 million.


Dated: April 8, 2024
      New York, New York

                                    **NIXON PEABODY LLP**

                                    By: _____
                                        Stephen P. Younger

                                    Stephen P. Younger, Esq.
                                    Paul F. Downs, Esq.
                                    55 West 46th Street
                                    New York, NY 10036
                                    212-940-3085
                                    spyounger@nixonpeabody.com
                                    pdowns@nixonpeabody.com

                                    *Attorneys for Defendant*
                                    *Emma Duo Liu and the Company*
                                    *Defendants*