## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF
## NEW YORK

HUZHOU CHUANGTAI RONGYUAN
INVESTMENT MANAGEMENT
PARTNERSHIP, HUZHOU
HUIHENGYING EQUITY INVESTMENT
PARTNERSHIP, and HUZHOU
HUIRONGSHENG EQUITY INVESTMENT
PARTNERSHIP,

                Plaintiffs/Judgment-Creditors,

                v.

Judgment-Debtor HUI QIN (a/k/a MUK
LAM LI, LI MUK LAM, HUI HUI QIN,
KARL QIN, HUI QUIN), DUO LIU (a/k/a
EMMA LIU), XUEMIN LIU, RUOLEI LIU,
XUEYUAN HAN (a/k/a HANK HAN),
HANGYUAN ZHANG, BRYN MAWR
TRUST COMPANY OF DELAWARE,
TRIDENT TRUST COMPANY, ST. TOME
LLC, ST. FORTUNE GROUP LLC,
LUXURY TEAM, INC., ST. GRAND
CEREMONY LLC, KING FAME TRADING
(BVI), PH2003 UNIT LLC, APPLEGREEN
LLC, LUBAN CONSTRUCTION INC., ST
HUDSON GROUP LLC, GOLDEN
PEGASUS LLC, GOLDEN LITTLE
ELEPHANT INC., GOLDEN KIRIN LLC,
HARUSHIO LLC, GOLDEN LITTLE
DRAGON, GOLDEN MERMAID LLC,
HFRE, LLC, HATAKAZE LLC, QYNM
FAMILY HOLDING LLC, HS-QYNM
FAMILY, INC. QIN FAMILY TRUST, I
LOVE GLE TRUST, APPLEGREEN
FAMILY TRUST, MASTERPIECE
HOLDING GROUP LTD., NEW LAND
CAPITAL LLC, YOUYORK
MANAGEMENT LLC, GOLDEN LAND
FUNDS LLC, MAXIM CREDIT GROUP
LLC, HFRE, LLC, JOHN AND JANE DOES
1-20,

                Defendants.

Case No. 1:24-cv-02219-KPF
Related to Case No. 1:21-cv-0921-KPF

**REPLY MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFFS/
JUDGMENT CREDITORS' MOTION
FOR A PRELIMINARY INJUNCTION**

**Table of Contents**

I.   ARGUMENT ................................................................................................................ 1

   A.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ....................................1

   B.  PLAINTIFFS WILL SUFFER IRREPARABLE HARM ....................................................6

   C.  THE PUBLIC INTEREST AND BALANCE OF HARDSHIPS FAVORS
      GRANTING AN INJUNCTION ........................................................................................8

   D.  DEFENDANTS' REMAINING ARGUMENTS ARE WITHOUT MERIT ......................9

   E.  NO BOND, OR ONLY A NOMINAL BOND, SHOULD BE REQUIRED ...................11

II.  CONCLUSION ......................................................................................................... 12

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*4 K & D Corp. v. Concierge Auctions, LLC*,
  2 F.Supp.3d 525 (S.D.N.Y. 2014) .....................................................................................4

*In re 650 Fifth Avenue*,
  10 Civ. 2464, 2021 WL 1963803 (S.D.N.Y. May 17, 2021)...................................................9

*AngioDynamics, Inc. v. Biolitic AG*,
  711 F.3d 248 (1st Cir. 2013)...........................................................................................10

*United States v. Arlt*,
  252 F.3d 1032 (9th Cir. 2001) ..........................................................................................4

*Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC*,
  No. 07CV6665, 2009 WL 1803458 (S.D.N.Y. June 23, 2009)..................................................5

*Bd. of Trs. of the Local Union No. 373 United Ass'n of Journeymen v. Mid Orange Mech. Corp.*,
  No. 17-CV-2669 (NSR), 2024 U.S. Dist. LEXIS 48467 (S.D.N.Y. Mar. 18, 2024)................1

*Brenntag Int'l Chems., Inc. v. Bank of India*,
  175 F.3d 245 (2d Cir. 1999).............................................................................................7

*Chevron Corp. v. Donziger*,
  833 F.3d 74 (2d Cir. 2016)..............................................................................................11

*Elite Licensing, Inc. v. Thomas Plastics, Inc.*,
  250 F. Supp. 2d 372 (S.D.N.Y. 2003).................................................................................12

*Elsevier Inc. v. Grossmann*,
  No. 12 Civ. 5121, 2017 WL 5135992 (S.D.N.Y. Nov. 3, 2017) ..............................................3

*Fall River Dyeing & Finishing Corp. v. N.L.R.B.*,
  482 U.S. 27 (1987)...........................................................................................................1

*Fed. Deposit Ins. Co. v. Malin*,
  802 F.2d 12 (2d Cir. 1986)................................................................................................5

*In re Feit & Drexler, Inc.*,
  760 F.2d 406 (2d Cir. 1985)..............................................................................................7

*FloodBreak, LLC v. Diego Tr., LLC*,
  No. 3:22-CV-840 (SRU), 2024 WL 897932 (D. Conn. Mar. 1, 2024)......................................9

*In re Focus Media, Inc.*,
   387 F.3d 1077 (9th Cir. 2004) ................................................................10

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
   527 U.S. 308 (1999) .........................................................................9, 10

*Gucci Am., Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014) .................................................................10

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
   492 U.S. 229 (1989) ..............................................................................3

*Husky Int'l Elecs., Inc. v. Ritz*,
   578 U.S. 355 (2016) ..............................................................................2

*Iantosca v. Step Plan Servs.*,
   604 F.3d 24 (1st Cir. 2010) ..................................................................10

*Katzman v. Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996) ...........................................................4

*Levy v. Young Adult Inst., Inc.*,
   No. 13-CV-2861, 2015 WL 170442 (S.D.N.Y. Jan. 13, 2015) ..................9

*McSpedon v. Levine*,
   158 App. Div. 3d 618 (2018) ..................................................................4

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*,
   704 F.Supp.2d 305 (S.D.N.Y. 2010) .....................................................12

*National Fire Protection Ass'n v. Swets Information Servs. Private Ltd.*,
   18 Civ. 6029, 2021 WL 1254424 (S.D.N.Y. Apr. 5, 2021) ......................11

*Navigator Bus. Servs. LLC v. Chen*,
   No. 23-CV-01551 (HG), 2023 WL 7386663 (E.D.N.Y. Nov. 8, 2023) ........8

*New Falls Corp. v. Soni Holdings, LLC*,
   No. 21-865-cv, 2022 WL 2720517 (2d Cir. July 14, 2022) ......................10

*New Falls Corp. v. Soni Holdings, LLC*,
   No. 219-CV-00449ADSAKT, 2019 WL 3712127 (E.D.N.Y. Aug. 7, 2019) ........9, 11

*NML Capital, Ltd. v. Republic of Arg.*,
   699 F.3d 246 (2d Cir. 2012) ..................................................................7

*NML Capital, Ltd. v. Republic of Argentina*,
   727 F.3d 230 (2d Cir. 2013) .................................................................10

*Nokia Corp. v. InterDigital, Inc.*,
  645 F.3d 553 (2d Cir. 2011)..................................................................12

*Paolangeli v. Cowles*,
  208 A.D.2d 1174 (3d Dept. 1994) ...........................................................2

*Paradigm Biodevices, Inc. v. Centinel Spine, Inc.*,
  No. 11 Civ. 3489, 2013 WL 1915330 (S.D.N.Y. May 9, 2013).....................10, 11

*Phelps v. Phelps*,
  128 A.D.3d 1545 (4th Dept. 2015) ...........................................................2

*Ray Legal Consulting Group v. DiJoseph*,
  37 F.Supp.3d 704 (S.D.N.Y 2014) ...........................................................4

*Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*,
  754 F.Supp.2d 616 (S.D.N.Y. 2010)........................................................12

*Schwimmer v. Sony Corp. of America*,
  677 F.2d 946 (2d Cir. 1982)...................................................................5

*Thomas v. Scutt*,
  27 N.E. 961 (N.Y. 1891)........................................................................2

*Toray Int'l Am., Inc. v. Nakayama*,
  No. 14 Civ. 3016, 2014 WL 12543817 (S.D.N.Y. Apr. 29, 2014)...................9

*Wisdom Imp. Sales Co., L.L.C. v. Labatt Brewing Co.*,
  339 F.3d 101 (2d Cir. 2003)....................................................................6

*Yegiazaryan v. Smagin*,
  599 U.S. 533 (2023) (Mem. ).................................................................3

## Statutes and Codes

United States Code
  Title 18, Section 1961 ....................................................................3, 4, 11

New York Debtor and Creditor Law
  Section 277(g)(3) ................................................................................5

## Rules and Regulations

Federal Rules of Civil Procedure
  Rule 9 ..............................................................................................5

<u>Other Authorities</u>

Opinion from Supreme People's Court of PRC on Further Deepening the Reform of Modes and Working Mechanisms of Family Trials (imposing fines or detention for falsifying property declarations in divorce proceedings), Article 44, *available at* http://gongbao.court.gov.cn/Details/bf4b36ae2dee44d9773636f4656593.html........................6

The Court has been asked to issue an injunction to prohibit Qin and his shills, including Ms. Liu, from dissipating assets during the case. In her Opposition ("Opp.") to the Motion for Preliminary Injunction ("Mem."), Ms. Liu and 13 entities she claims to control (the "Company Defendants"), allege "Huzhou offers only unsupported allegations that Ms. Liu and or the Company Defendants were parties to any schemes to shield assets." Opp. at 7. If that bold statement were true, she would win. However, the Opposition does not overcome the details of the 139-page Complaint, which are based mostly on Liu and Qin's admissions. The Opposition mischaracterizes the Complaint[1] and makes its own broad-brush claims without backing. The Confidentiality Order permits "enforcing and collecting the Judgment entered in this Action"—this suit is the obvious example of "enforcing and collecting the Judgment".

Plaintiffs are likely to prevail on the merits, as shown by the evidentiary support for the detailed allegations. The harm to Ms. Liu can be removed by tailoring the injunction to permit ordinary payments, while harm to Plaintiffs of the money being shuffled away is irreparable. Policy, equity, and law thus permit issuance of the injunction because there <u>is</u> a judgment and it is necessary to preserve the status quo. Liu cannot show harm from a tailored injunction that permits legitimate expenses and contains rapid judicial bypass. Thus, no bond is needed and the injunction (as tailored to avoid harm) should issue.

## I.     <u>ARGUMENT</u>

### A.     **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS**

Plaintiffs are likely to succeed on their claims, notwithstanding Liu's attempt to disregard the Complaint's allegations and Plaintiffs' case law. As to Count 1, courts look to the "totality of

---

[1] Though she claims there are only a handful of references to her, that is simply inaccurate. *See* Appendix B (chart detailing number of allegations in the Complaint referencing Liu and each of the Company Defendants).

the circumstances" to decide whether the evidence proves a transaction is a sham.[2] Contrary to Liu (Opp. at 11-13), no single factor or group of factors limit the Court's power to declare a sham transaction. The "totality of the circumstances" overwhelmingly supports Plaintiffs' claim.

Sham transfers, pretended sales, simulated sales, and the like are ancient methods of keeping assets from creditors by faking a transfer that was not, in substance, an intent to change title. They have been disregarded under New York law for over a century.[3] Fraudulent transactions to hinder creditors constitute "actual fraud" according to the Supreme Court.[4]

Evidence of sham transfers before this Court include, among other things, Liu's "taking the Fifth" each time she was asked about the underlying facts of the transfers or her intent to be a shill for Qin. Compl. ¶216. Likewise, Liu never responds to Plaintiffs' 14-page discussion of sham transactions. ECF No. 9.1. Additionally, there are extrinsic facts in support—both Qin and Liu's mother supposedly do not speak, read, or write English, yet they both signed legal documents in English to transfer the Applegreen Property worth millions of dollars. Compl. ¶¶314-320. It is likely Plaintiffs will prove Qin used his mother-in-law and Liu as shills and cut-outs to conceal his secret ownership. As further extrinsic evidence:

- Qin lived in the house for years after he purportedly transferred it to Liu and Qin's mother-in-law, Defendant Xuemin Liu. Compl. ¶¶128, 195; Mem. at 15.

- ███████████████████████████████████████████████████████████

---

[2] *Bd. of Trs. of the Local Union No. 373 United Ass'n of Journeymen v. Mid Orange Mech. Corp.*, No. 17-CV-2669 (NSR), 2024 U.S. Dist. LEXIS 48467, at *13-14 (S.D.N.Y. Mar. 18, 2024) ("totality of the circumstances" to determine sham sale void to evade ERISA obligations) citing *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27 (1987).

[3] "[F]raud, illegality, want of consideration, delivery upon an unperformed condition and the like may be shown by parol, not to contradict or vary, but to destroy a written instrument. Such proof does not recognize the contract as ever existing as a valid agreement and is received from the necessity of the case to show that that which appears to be, is not and never was a contract." *Thomas v. Scutt*, 27 N.E. 961, 962 (N.Y. 1891). *See also Paolangeli v. Cowles*, 208 A.D.2d 1174, 1175 (3d Dept. 1994) ("[W]hat appears to be a contractual obligation is, in fact, no obligation at all.") (alteration adopted); *Phelps v. Phelps*, 128 A.D.3d 1545, 1548 (4th Dept. 2015) (using phrase "sham transaction" in reference to holding in *Paolangeli*).

[4] *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355 (2016).



- Compl. ¶411.
- Compl. ¶¶245-248, 250-252, 256-258, 280-282, 285-286, 385; Mem. at 11-12.
- Compl. ¶¶154-158; Mem. at 4.

The totality of the evidence thus suggests Plaintiffs will prove many transactions Qin made, where he kept control after he supposedly transferred the asset, were shams.

Liu's arguments regarding Plaintiffs' RICO Count also fail. Liu's claim there is no domestic injury for Plaintiffs' RICO claim, "because [Plaintiffs'] alleged damages are foreign intangible property" (Opp. at 13-14), ignores controlling Supreme Court authority cited by Plaintiffs. *See Yegiazaryan v. Smagin*, 599 U.S. 533, 543-46 (2023) (Mem. at 23) (domestic injury sufficiently stated to establish RICO claim when foreign arbitral respondent fled to U.S. and acted there to frustrate petitioner's attempt to collect on U.S. judgment confirming arbitral award). Similarly, this Court has also focused on acts in the U.S. to find a RICO domestic injury alleged by a foreign corporate plaintiff. *Elsevier Inc. v. Grossmann*, No. 12 Civ. 5121, 2017 WL 5135992 (S.D.N.Y. Nov. 3, 2017). Plaintiffs allege numerous improper transactions involving funds in U.S. accounts and real property here as well as obstruction by Qin and Liu, which, like *Yegiazaryan*, state a domestic injury arising from Defendants' acts to frustrate the Judgment.

Liu's claim that Plaintiffs have not alleged "a pattern of racketeering activity that is continuous, related, and poses a threat of future criminal conduct" (Opp. at 14) is wrong. Here, Plaintiffs have alleged in detail that Liu established or served at entities that shielded Qin's assets, directly transferred funds to and from Qin, received real property from Qin without real consideration, refused service on Qin, and obstructed justice to stonewall Plaintiffs' execution. Compl. ¶¶ 187-189, 194, 195, 196, 199-217; 220; 241-244. The Supreme Court has held that

alleging continuity of a RICO violation may be demonstrated by "proving a series of related predicates extending over a substantial period of time" or showing that the racketeering predicates are "a regular way of doing business." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989). Here, Plaintiffs have done both.[5]

Liu's attack on Plaintiffs' conspiracy count likewise fails. The Complaint details a conspiracy for specific substantive causes of action (fraudulent transfers, fraud, misuse of business names, and equitable claims).[6] *See McSpedon v. Levine*, 158 App. Div. 3d 618, 621 (2018) ("a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort, and establish that those actions were part of a common scheme"). Plaintiffs are likely to succeed on the substantive causes of action for the reasons stated herein.[7] Liu's citation to this Court's opinion[8] dismissing a conspiracy claim when there was no underlying tort is not the case here. Liu's claim that Plaintiffs have not identified "any communications, meeting, or other evidence of coordination or collaboration among the co-conspirators" to show a conspiracy (Opp. at 16-17) is misdirection. Those communications will appear when produced. Liu never produced *a single* electronic communication, despite being ordered to do so (and after representing to this Court *tens of*

---

[5] Liu's cited authority is clearly distinguishable. *See 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F.Supp.3d 525, 540 (S.D.N.Y. 2014) (insufficient allegations that certain defendants made false or fraudulent statements); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (no allegations that representations as to discounts in mail order catalogue were false).

[6] Liu's assertion that Plaintiffs' GBL § 133 claim fails because Plaintiffs have not alleged that Defendants used *Plaintiffs' name* (Opp. at 15) is without merit, as the statute includes no such requirement. *See* GBL § 133 ("No person, firm or corporation shall, with intent to deceive or mislead the public, assume, adopt or use as, or as part of, a corporate, assumed or trade name, for advertising purposes … *or for any other purpose*, *any name* … which may deceive or mislead the public as to the identity of such person, firm or corporation.").

[7] Liu's assertion that the civil conspiracy claim should be dismissed as "duplicative" of the Civil RICO claim (Opp. at 16) is without merit. The two conspiracies are based on different object torts or offenses, and one does not affect the other. In any case, it is appropriate to bring separate counts for conspiracies with different objects. *See, e.g., United States v. Arlt*, 252 F.3d 1032, 1039 (9th Cir. 2001) (Double Jeopardy Clause did not preclude convictions for conspiracies under separate statutes).

[8] *Ray Legal Consulting Group v. DiJoseph*, 37 F.Supp.3d 704, 723 (S.D.N.Y 2014).

4

*thousands of electronic documents* responsive to the court-ordered search terms were reviewed). Lee Decl. ¶¶. Her "taking the Fifth" on each element is sufficient to show likelihood of success on the conspiracy claim.[9]

Plaintiffs also are likely to succeed on their fraudulent transfer counts. Liu's contention that the claim for actual fraudulent transfer fails to pass Rule 9 specificity muster (Opp. at 18) is specious. Liu simply ignores the 137-page, 543-allegation Complaint that goes into great detail about the date, value, and circumstances of the various transfers, motives, and facts showing fraudulent intent. It sets forth—and supports with citations to evidence—the who, what, where, when, and why of the fraud alleged. Liu's argument that there is "no evidence" that Qin had actual intent to hinder, delay, or defraud creditors (Opp. at 13, 17) again ignores the Complaint. Courts consider various "badges" of fraud for fraudulent intent, as well as other practical considerations, including "inadequacy of the consideration" for the transfer.[10] Nearly every badge is present here. *See* Appendix A (chart detailing allegations).

Likewise, Liu's argument that Plaintiffs cannot show a likelihood of proving insolvency at the time of the transfers (Opp. at 13, 18) ignores Plaintiffs' cited factual support. *See* Mem. at 18 (Qin's admission of insolvency). Qin's financial records demonstrate insolvency beginning in March 2017. Compl. ¶108. Qin's assertions coupled with his financial records prove his insolvency at all relevant times, and Liu's unsupported assertion is insufficient to negate that.

Finally, Liu argues she is entitled to ████████████████████████ (Opp. at 19), presumably as a good faith, bona fide transferee. But Liu has the burden of proof on the

---

[9] "Conspiracies, of course, are rarely evidenced by explicit agreements, but must almost always be proven by inferences that may be fairly drawn from the behavior of the alleged conspirators." *Schwimmer v. Sony Corp. of America*, 677 F.2d 946, 953 (2d Cir. 1982) (internal punctuation & citation omitted). Here Plaintiffs identified numerous transactions between Qin and Liu that show the requisite agreement. *See, e.g.,* Compl. ¶¶213, 214, 388.

[10] *Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC*, No. 07CV6665, 2009 WL 1803458, at *20 (S.D.N.Y. June 23, 2009).

defense for *each* transfer[11] and has failed to put forth any evidence of good-faith other than her own declaration that ignores her own deposition.[12] Worse, she provides ***no evidence of value or consideration at all***. There can be no good faith, bona fide transfer as part of a sham divorce. Consideration for a transfer requires a true divorce obligation. The decree contains reservations to protect creditors and does not describe any property except two Beijing apartments:



ECF No. 39.1 at 8 (emphasis added). This false "self-reported" information constitutes an illegal misrepresentation under PRC law, as expert testimony will demonstrate at trial.[13]

### B.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM

Liu's assertion that Plaintiffs cannot show irreparable harm[14] flatly ignores precedent holding that, despite the "general rule" that monetary losses are not irreparable, "federal courts have found preliminary injunctions appropriate where it has been shown that the defendant

---

[11] *Fed. Deposit Ins. Co. v. Malin*, 802 F.2d 12, 18 (2d Cir. 1986); N.Y. Debt. & Cred. Law § 277(g)(3).

[12] Related Case No. 1:21-cv-09221-KPF ("Related Case") ECF No. 314 (Liu Dep.) 23:14-24 ("Q. Qin would have had to tell you that he owed debts, did he? A. The Fifth. Q. Did Qin tell you about the debts that he owed my clients? A. The Fifth. Q. The debts that, you know, he owed my clients and the potential lawsuits, those were the primary reason for the sham divorce, right? A. The Fifth.").

[13] *See* Article 44 of the Opinion from Supreme People's Court of PRC on Further Deepening the Reform of Modes and Working Mechanisms of Family Trials (imposing fines or detention for falsifying property declarations in divorce proceedings), *available at* http://gongbao.court.gov.cn/Details/bf4b36ae2dee44d9773636f4656593.html.

[14] Liu's cited authority for the basic proposition that "only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief" actually affirmed the injunction. *See Wisdom Imp. Sales Co., L.L.C. v. Labatt Brewing Co.*, 339 F.3d 101, 113–15 (2d Cir. 2003) (affirming preliminary injunction).

intended to frustrate any judgment on the merits by transferring its assets out of the jurisdiction." *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985) (alterations adopted) (quotation omitted); *accord NML Capital, Ltd. v. Republic of Arg.*, 699 F.3d 246, 262 (2d Cir. 2012) ("Even if damages are adequate in other respects, they will be inadequate if they cannot be collected by judgment and execution."). Nor does Liu acknowledge the principle that "courts have excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 250 (2d Cir. 1999).

Plaintiffs' injury cannot be remedied by an award of money damages because the very object of Defendants' scheme is to place all their financial assets beyond the Court's reach. Contrary to Liu's assertion, that harm is far from speculative. As Liu does not contest, Qin has explicitly stated ███████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████ Mem. at 3.[15] Nor is there any dispute that Qin is on the verge of insolvency and deportation, meaning that after judgment "the parties cannot be returned to the positions they previously occupied." *Brenntag*, 175 F.3d at 249. Indeed, Liu even claims ████████ ██████████████████████████████████████████████████████████████████ (ECF No. 39 ¶¶ 29, 38), further illustrating the likelihood that Defendants will enter insolvency and make it impossible for Plaintiffs to collect any money judgment.

Liu is also mistaken in asserting that she, or the Company Defendants, need not be enjoined in order to prevent Qin from causing irreparable harm to Plaintiffs. Opp. at 22–23. While Qin may have instigated of much of the misconduct at issue, fraudulent transfers require

---

[15] Qin's professed intention to continue frustrating this Court's judgment, along with the continuing pattern of fraudulent transactions involving all Defendants, belies any suggestion that this injunction rests only on past conduct. Opp. at 22 n.11.

two parties, and there is ample evidence that Liu and the Company Defendants are also engaged in transactions designed to frustrate this Court's judgment. Liu never disputes that the Company Defendants are controlled by her or Qin; she even confirms as much of Luxury Team, Inc., and St. Grand Ceremony LLC. ECF No. 39 ¶¶ 9, 11.

As for Liu herself, Plaintiffs documented myriad instances of her involvement in fraudulent transfer of assets, including, among other things, ███████████████████ ████████████████████████████ (Mem. at 13), additional ██████████████ █████████████████████ (*id.* at 13-14), Liu's role in the transfer of Qin's real property (*id.* at 6-9), apparently sham ██████████████████████████████ (*id.* at 11-13), ██████████████. *Id.* at 14. Whatever Liu's current relationship with Qin, she has been and continues to be one of the major participants and beneficiaries of the fraudulent transfer scheme, and she must be included in the injunction to prevent irreparable harm to Plaintiffs.

## C.     THE PUBLIC INTEREST AND BALANCE OF HARDSHIPS FAVORS GRANTING AN INJUNCTION

Liu's expressed concern that, if the injunction is granted, ████████████████████ ████████████████████████████████████████████████████████████ (Opp. at 26) is unfounded. The proposed injunction (EFC No. 7-1) would allow her to continue paying her legitimate monthly bills, and Plaintiffs are willing to expressly exclude certain expenses – ██████████████ and attorneys' fees – as well consider modifying the monthly "carve-out" amount as the Court sees fit. Lee Decl. ¶¶75-76. The preliminary injunction would only prevent Liu from secretly transferring her assets to others or otherwise dissipating her assets.

As Liu acknowledged, Plaintiffs are facing "the *potential* loss of recovery." This is precisely the cognizable harm that Plaintiffs will suffer if Liu is allowed to continue to move

assets beyond the Court's or Plaintiffs' reach. *See Navigator Bus. Servs. LLC v. Chen*, No. 23-CV-01551 (HG), 2023 WL 7386663, at *4 (E.D.N.Y. Nov. 8, 2023) ("balance of the hardships also favors [Judgment-Creditor]" because he "would suffer cognizable harm if [Defendants] are allowed to continue moving assets beyond [Judgment-Creditor's] reach"). Upholding the status quo is paramount to ensure Liu is prohibited from moving or dissipating her assets to Plaintiffs' detriment. "[T]he continuous risk that [defendant] will repeatedly and fraudulently transfer assets out of [plaintiff's] reach" tips the balance of hardships in Plaintiffs' favor. *FloodBreak, LLC v. Diego Tr., LLC*, No. 3:22-CV-840 (SRU), 2024 WL 897932, at *5 (D. Conn. Mar. 1, 2024).

If Plaintiffs are ultimately successful but do not receive a preliminary injunction, all assets will be dissipated, rendering Plaintiffs' money judgment meaningless. *See New Falls Corp. v. Soni Holdings, LLC*, No. 219-CV-00449, 2019 WL 3712127, at *2 (E.D.N.Y. Aug. 7, 2019). If Liu is ultimately successful, the preliminary injunction will not cause her to lose anything at all. Liu admits the only hardship she might suffer is "inconvenience." Opp. at 27-28.

## D.    DEFENDANTS' REMAINING ARGUMENTS ARE WITHOUT MERIT

Liu asserts that *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), bars Plaintiffs from seeking injunctive relief. Opp. at 7-8. It does not. The Supreme Court simply applied "the well-established general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property." *Id.* at 321 (injunction improper where plaintiff did not satisfy "requirement that the creditor obtain a prior judgment"). Liu's pre-judgment cases are thus distinguishable.[16]

---

[16] *Levy v. Young Adult Inst., Inc.*, No. 13-CV-2861, 2015 WL 170442, at *1 (S.D.N.Y. Jan. 13, 2015) (pre-judgment motion for preliminary injunction); *Toray Int'l Am., Inc. v. Nakayama*, No. 14 Civ. 3016, 2014 WL 12543817, at *1 (S.D.N.Y. Apr. 29, 2014) (motion for temporary restraining order and preliminary injunction).The plaintiffs in *Levy* and *Toray* did not identify equitable claims that *Grupo Mexicano* would recognize as a basis for injunctive

*Grupo Mexicano* also looked to whether the injunction sought "was traditionally accorded by courts of equity." 527 U.S. at 318–19. The Second Circuit has recognized that "English chancery courts traditionally had power to issue injunctions and order specific performance when no effective remedy was available at law." *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 241 (2d Cir. 2013). As discussed in the Motion, a damages remedy is inadequate given Liu and the other Defendants' acts to, among other things, shuffle and conceal assets. Mem. at 16–19. The Second Circuit has held that, under *Grupo Mexicano*, a court may issue injunctive relief when (1) the plaintiff pursues equitable relief and the injunction requested is ancillary to that relief and (2) when the court has "specific statutory authority to do so." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 131 & n.11 (2d Cir. 2014). Plaintiffs have asserted both types of claims here.  *See* Mem. at 20 (listing basis for injunctive relief under each statute).

Plaintiffs' claims for actual and constructive fraudulent transfers (Counts 8-9) are equitable. *Grupo Mexicano* specifically declined to bar injunctive relief based on state statutory fraudulent transfer actions. 527 U.S. at 324 n.7. Since then, the Second Circuit has affirmed a preliminary injunction against transfer of real property based on a fraudulent transfer claim. *New Falls Corp. v. Soni Holdings, LLC*, No. 21-865-cv, 2022 WL 2720517 (2d Cir. July 14, 2022).[17] Thus, when plaintiff raises the "equitable claim" that a party "fraudulently transferred assets to" another, it "asserts an equitable interest in the property it alleges [the party] fraudulently

---

relief. The same is true for *In re 650 Fifth Avenue*, 10 Civ. 2464, 2021 WL 1963803 (S.D.N.Y. May 17, 2021), upon which Liu also relies.

[17] *See also Iantosca v. Step Plan Servs.*, 604 F.3d 24, 33 (1st Cir. 2010) (noting "courts have held that *Grupo Mexicano* thus exempts from its proscription against preliminary injunctions freezing assets cases involving fraudulent conveyances" (alteration and quotation omitted) (collecting cases)). For a state law statutory action for fraudulent conveyance, "where a creditor has a judgment against a debtor and can make a colorable claim that the debtor's funds have been fraudulently conveyed to other entities, the creditors do have a claimed lien interest to support a preliminary injunction freezing assets transferred to the other entities." *AngioDynamics, Inc. v. Biolitic AG*, 711 F.3d 248, 250–51 (1st Cir. 2013); *see also In re Focus Media, Inc.*, 387 F.3d 1077, 1085 (9th Cir. 2004) ("*Grupo Mexicano* thus exempts from its proscription against preliminary injunctions freezing assets cases involving bankruptcy and fraudulent conveyances").

transferred." *Paradigm Biodevices, Inc. v. Centinel Spine, Inc.*, No. 11 Civ. 3489, 2013 WL 1915330 at *3 (S.D.N.Y. May 9, 2013) (citing *AngioDynamics*, 711 F.3d at 250). Plaintiffs seek to void the fraudulent conveyances, which differs from a money judgment. Compl. ¶¶514, 537.

The Second Circuit has directly recognized that the RICO statute allows the court to grant injunctive relief to civil plaintiffs. *Chevron Corp. v. Donziger*, 833 F.3d 74, 137–39 (2d Cir. 2016). Here, the RICO count specifically alleges that Liu made improper transfers of real and other property that actually were controlled by Qin. Compl. ¶¶419, 421, 445–47, 451, 455, 457–59, 461-62, 466, 497, 499. An injunction is appropriate, as it is directly related to this claim.

Liu's assertion that Plaintiffs violated the Related Case's Protective Order because it "expressly required that documents produced be used *only in that litigation*" (Opp. at 9) (emphasis in original) is false. The Protective Order – specifically negotiated to apply in the *post-judgment* context – contains no such language. *See* Lee Decl. ¶¶63, 68 (documents "shall be used solely in connection with *enforcing* and *collecting* the Judgment *entered* in this Action"). The entire purpose of such discovery is to enforce and collect the judgment, including by initiating *new* actions. Liu knows this; Plaintiffs have been actively seeking post-judgment discovery from her for ten months, repeatedly citing *statutes of limitation* as one source of urgency. *Id.* at ¶¶70, 71. Any delay in bringing this action has been caused by Qin's and Liu's repeated refusal to abide by this Court's orders (*id.* at ¶¶72), and not grounds to deny the injunction. Opp. at 23-25. Faced with Liu's repeated stonewalling of discovery, Qin's recent plea deal and impending deportation, and imminent sale of significant real property, Plaintiffs are in urgent need of injunctive relief.

## E.    NO BOND, OR ONLY A NOMINAL BOND, SHOULD BE REQUIRED

"The party against whom a preliminary injunction is sought has the burden of establishing the amount of a bond necessary to secure against the wrongful issuance of the

injunction." *Elite Licensing, Inc. v. Thomas Plastics, Inc*., 250 F. Supp. 2d 372, 391 (S.D.N.Y. 2003). Liu has not disclosed where her accounts are, how she controls the entities, and who moves money. She took "the Fifth" when asked about this. One may assume that, without fulsome disclosure, she (and her affiliated entities) cannot meet the burden of proof, so the Court should not require a bond. The purpose of a bond is to assure "the enjoined party that it may readily collect damages from the funds posted in the event that it was wrongfully enjoined." *Nokia Corp. v. InterDigital, Inc*., 645 F.3d 553, 557 (2d Cir. 2011). Here, there is no proof that actual harm is likely from a wrongful injunction, let alone the $40 million claimed by Liu.

Indeed, Plaintiffs have a very strong case, which is relevant to Courts whether an injunction could harm an enjoined non-movant.[18] As described above, Plaintiffs are highly likely to prevail on the merits in this litigation and the hardship to Defendants from a preliminary injunction, if any, is therefore minimal.

Further, Plaintiffs are willing to tailor the injunction to avoid any potential for harm. As now proposed by Plaintiffs (Lee Decl. ¶¶76), all ordinary expenses would be permitted ███

████████████████████████████████████████████████████████████████

Also, extraordinary expenses are permitted on very short notice – the sort of delay a financial institution would impose on large transactions. So here, when there is no real potential damage for a wrongful injunction (as legitimate and customary operations continue), no bond is needed.

## II.     CONCLUSION

---

[18] *See N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc*., 704 F.Supp.2d 305, 345 (S.D.N.Y. 2010) (declining to require the posting of a bond where, inter alia, "the likelihood of [plaintiff's] success on the merits is overwhelming"); *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F.Supp.2d 616, 627 (S.D.N.Y. 2010) (finding it equitable to discount the harm non-movant would suffer, given that non-movant had, in the court's view, a less than 5 percent chance of succeeding on the merits at arbitration).

For the reasons above, Plaintiffs respectfully request that the Court grant the injunction to restrain Defendants from destroying documents and transferring or destroying assets.

Date: April 12, 2024
New York, New York

Respectfully submitted,

_/s/ Geoffrey Sant_____
Geoffrey Sant
Andrew C. Smith
Carol Lee
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, NY 10019
Tel: (212) 858-1000
Fax: (212) 858-1500
geoffrey.sant@pillsburylaw.com
andrew.smith@pillsburylaw.com
carol.lee@pillsburylaw.com
*Attorney for Plaintiffs/Judgment Creditors*
*Huzhou Chuangtai Rongyuan Investment*
*Management Partnership, Huzhou Huihengying*
*Equity Investment Partnership, and Huzhou*
*Huirongsheng Equity Investment Partnership*