**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HUZHOU CHUANGTAI RONGYUAN INVESTMENT MANAGEMENT PARTNERSHIP, HUZHOU HUIHENGYING EQUITY INVESTMENT PARTNERSHIP, and HUZHOU HUIRONGSHENG EQUITY INVESTMENT PARTNERSHIP<br><br>Plaintiffs/Judgment - Creditors,<br><br>v.<br><br>Judgment-Debtor HUI QIN (a/k/a MUK LAM LI, LI MUK LAM, HUI HUI QIN, KARL QIN, HUI QUIN), DUO LIU (a/k/a EMMA LIU), XUEMIN LIU, RUOLEI LIU, XUEYUAN HAN (a/k/a HANK HAN), HANGYUAN ZHANG, BRYN MAWR TRUST COMPANY OF DELAWARE, TRIDENT TRUST COMPANY, ST. TOME LLC, ST. FORTUNE GROUP LLC, LUXURY TEAM, INC., ST. GRAND CEREMONY LLC, KING FAME TRADING (BVI), PH2003 UNIT LLC, APPLEGREEN LLC, LUBAN CONSTRUCTION INC., ST HUDSON GROUP LLC, GOLDEN PEGASUS LLC, GOLDEN LITTLE ELEPHANT INC., GOLDEN KIRIN LLC, HARUSHIO LLC, GOLDEN LITTLE DRAGON, GOLDEN MERMAID LLC, HATAKAZE LLC, QYNM FAMILY HOLDING LLC, HS-QYNM FAMILY, INC. QIN FAMILY TRUST, I LOVE GLE TRUST, APPLEGREEN FAMILY TRUST, MASTERPIECE HOLDING GROUP LTD., NEW LAND CAPITAL LLC, YOUYORK MANAGEMENT LLC, GOLDEN LAND FUNDS LLC, MAXIM CREDIT GROUP LLC, HFRE, LLC, JOHN and JANE DOES 1-20,<br><br>Defendants. | 1:24-cv-02219-KPF |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR A PRELIMINARY INJUNCTION**
**ON BEHALF OF XUEYUAN HAN, QYNM FAMILY HOLDING LLC,**
**HS-QYNM FAMILY, INC., AND HFRE, LLE**

CARTER LEDYARD & MILBURN LLP
Jeffrey S. Boxer
Madelyn K. White
Sarah H. Ganley
28 Liberty Street, 41st Floor
New York, NY 10005
Tel. (212) 238-8772
Fax. (212) 732-3232

*Attorneys for Defendant Xueyuan Han,*
*QYNM Family Holding LLC, HS-QYNM*
*Family, Inc. and HFRE, LLC*

11290640.8

## <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF CONTENTS ..................................................................................................................i

Preliminary Statement..................................................................................................................1

Statement of Facts .......................................................................................................................3

ARGUMENT.................................................................................................................................6

POINT I THE SCOPE OF THE PROPOSED PRELIMINARY INJUNCTION
GOES BEYOND THE COURT'S EQUITABLE POWERS, IS
OVERBROAD, AND LACKS THE REQUIRED SPECIFICITY ....................6

    A.    U.S. Supreme Court Precedent Bars Plaintiffs' Requested Injunction 6

    B.    The Proposed Injunction Is Overly Broad and Lacks the Required
Specificity ....................................................................................................9

POINT II PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY
INJUNCTION FREEZING MR. HAN'S AND THE HAN COMPANY
DEFENDANTS' ASSETS ............................................................................11

    A.    Plaintiffs Have Not Shown Irreparable Harm ......................................11

    B.    Plaintiffs Have Not Demonstrated a Probability of Success on the
Merits or Substantial Questions Regarding the Merits........................13

    C.    The Balance of Hardships Does Not Tip Decidedly in Plaintiffs' Favor
16

    D.    The Public Interest Does Not Support an Injunction ...........................18

POINT III PLAINTIFFS SHOULD BE REQUIRED TO POST SIGNIFICANT
SECURITY IF A PRELIMINARY INJUNCTION IS GRANTED...............18

CONCLUSION.............................................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re 650 Fifth Avenue and Related Properties*,
  No. 08 Civ. 10934, 2021 U.S. Dist. LEXIS 93464 (S.D.N.Y. May 17, 2021)........................7

*Coley v. Vannguard Urban Improvement Ass'n*,
  No. 12-CV-5565, 2016 U.S. Dist. LEXIS 172378 (E.D.N.Y. Dec. 13, 2016).....................8, 9

*Corning Inc. v. PicVue Elecs.*,
  365 F.3d 156 (2d Cir. 2004)...........................................................................................18

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
  594 F. Supp. 2d 308 (E.D.N.Y. Jan. 20, 2009).................................................................8, 15

*Dong v. Miller*,
  No. 16-CV-5836, 2018 U.S. Dist. LEXIS 48506 (E.D.N.Y. Mar. 23, 2018)...........................9

*Dreier v. Music Makers Grp., Inc.*,
  No. 73 Civ. 1470, 1973 WL 399 (S.D.N.Y. June 20, 1973)...................................................13

*Dynex Corp. v. Farrah*, No. 18 CV 7072, 2019 U.S. Dist. LEXIS 89048
  (S.D.N.Y. May 28, 2019).........................................................................................15, 16

*Empresas Cablevision, S.A.B. de C.V. v. JPMorgan Chase Bank, N.A.*,
  381 F. App'x 117 (2d Cir. 2010) .......................................................................................9

*ESPN, Inc. v. Quicksilver, Inc.*,
  586 F. Supp. 2d 219 (S.D.N.Y. 2008).................................................................................13

*Fischer Diamonds, Inc. v. Andrew Meyer Designs, L.L.C.*,
  No. 06 Civ. 2737, 2006 U.S. Dist. LEXIS 41362 (E.D.N.Y. June 21, 2006).......................7, 8

*Freedom Holdings, Inc. v. Spitzer*,
  408 F.3d 112 (2d Cir. 2005).........................................................................................11, 12

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999)..................................................................................................*passim*

*Hua Xue v. Jensen*,
  No. 19-CV-1761, 2020 WL 6825676 (S.D.N.Y. Nov. 19, 2020)...........................................16

*Interlink Int'l Fin. Servs. v. Block*,
  145 F. Supp. 2d 312 (S.D.N.Y. 2001).................................................................................18

11290640.8

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*,
  295 F. Supp. 2d 366 (S.D.N.Y. 2003) .............................................................7, 8, 9

*Katzman v. Victoria's Secret Catalogue*,
  167 F.R.D. 649 (S.D.N.Y. 1996) ........................................................................15

*Kraft Gen. Foods, Inc. v. Del Monte Corp.*,
  No. 93 CV 4413, 1993 WL 557864 (S.D.N.Y. Sept. 22, 1993) ..........................18

*Merit Capital Grp., LLC v. Trio Indus. Mgmt., LLC*,
  No. 04 Civ. 7690, 2005 U.S. Dist. LEXIS 322 (S.D.N.Y. Jan. 10, 2005)............13

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
  883 F.3d 32 (2d Cir. 2018)...................................................................................11

*QBE Americas, Inc. v. Allen*,
  No. 22-cv-756, 2022 U.S. Dist. LEXIS 54398 (S.D.N.Y. Mar. 24, 2022)............13

*Rodriguez v. DeBuono*,
  175 F.3d 227, 233 (2d Cir. 1998). .......................................................................11

*Salinger v. Colting*,
  No. 09-2878-cv, 2010 WL 1729126 (2d Cir. Apr. 30, 2010) ...............................16

*SEC v. Cavanagh*,
  445 F.3d 105 (2d Cir. 2006).................................................................................18

*Students for Fair Admissions v. U.S. Military Acad.*
  No. 23-CV-08262, 2024 WL 36026 (S.D.N.Y. Jan. 3, 2024) ...............................11

*Sussman v. Crawford*,
  488 F.3d 136 (2d Cir. 2007).................................................................................11

*Toray Int'l Am., Inc. v. Nakayama*,
  No. 14 Civ. 3016, 2014 U.S. Dist. LEXIS 190101 (S.D.N.Y. Apr. 29, 2014)........6

*William Passalacqua Builders v. Resnick Developers South, Inc.*,
  933 F.2d 131 (2d Cir. 1991)...............................................................................7, 8

*Winter v. NRDC, Inc.*,
  555 U.S. 7 (2008)............................................................................................16, 18

## State Cases

*Alexander & Alexander of N.Y., Inc. v. Fritzen*,
  68 N.Y.2d 968 (1986) ...........................................................................................16

**Rules**

Fed. R. Civ. P. 65(c) ................................................................................................18

**Other Authorities**

13 Moore's Federal Practice § 65.23 [1] (3d Ed. 2010) .............................................13

iv

For the reasons set forth below, Plaintiffs' Motion for a Preliminary Injunction (the "PI Motion," ECF No. 7) should be denied as to Xueyuan Han ("Mr. Han"), QYNM Family Holding LLC ("QYNM"), HS-QYNM Family, Inc. ("HS-QYNM"), and HFRE LLC ("HFRE" and, together with QYNM and HS-QYNM, the "Han Company Defendants").

## PRELIMINARY STATEMENT

The instant action seeks to hold more than 50 defendants liable for the conduct of just one defendant (and the only judgment-debtor in this case): Hui Qin ("Mr. Qin"). As set forth in the Complaint (and reiterated in the PI Motion), Plaintiffs seek to collect on an award rendered by the China International Economic and Trade Arbitration Commission ("CIETAC") on April 22, 2021 against Mr. Qin (the "CIETAC Award")—and only Mr. Qin.  On October 11, 2022, this Court entered a judgment against Mr. Qin in *Huzhou Chuangtai Rongyuan Investment Management Partnership et al. v. Qin.*, No. 12 CIV. 9221 (KPF) (S.D.N.Y. Oct. 11, 2022) (the "Confirmation Action"), confirming the CIETAC Award and awarding Plaintiffs over $500 million (the "Judgment"). Mr. Han and the Han Company Defendants were not parties to the CIETAC arbitration or the Confirmation Action.

Plaintiffs allege Mr. Qin orchestrated a series of "sham" transactions transferring his assets to various individuals and shell companies acting as "shills" at his behest in an effort to avoid the Judgment and hide his assets. The allegations outlined in the Complaint—and the entire basis for the PI Motion—center almost exclusively on Mr. Qin's alleged conduct and wrongful acts. Indeed, the vast majority of allegations involve claims that Mr. Qin sought to evade the Judgment by transferring assets to his ex-wife, defendant Duo "Emma" Liu, her parents, defendants Xuemin Liu and Ruolei Liu, and certain alleged shell companies through a series of "sham" transactions.

1

In contrast, there are few allegations that even mention Mr. Han[1] or the Han Company Defendants, let alone that support Plaintiffs' request to freeze all their assets. There are, in fact, *no* factual allegations that Mr. Han or the Company Defendants currently possess, or ever even received, any of Mr. Qin's assets as a result of the "sham" transfers allegedly orchestrated by Mr. Qin to hide assets and evade enforcement of the Judgment.

The PI Motion contends that because Mr. Han and the Han Company Defendants are alleged (without support) to have assisted Mr. Qin in secreting away certain of *his* assets to avoid enforcement of the Judgment, a total freeze on *all* of *their* assets is warranted. *See* Pls. Br. at 1-2. Plaintiffs' argument is wholly conclusory and utterly unsupported by any facts or evidence. As an initial matter, there is no evidence (or even allegation) that either Mr. Han or the Han Company Defendants are dissipating their own assets to avoid a potential money judgment. And indeed, Mr. Han maintains substantial assets in New York. Declaration of Xueyuan "Hank" Han ("Han Decl.") ¶ 21. Thus, Plaintiffs' claim that any asset freeze—much less a total asset freeze—is necessary to prevent Mr. Han and the Han Company Defendants from dissipating their assets is purely speculative and insufficient to support their request for a preliminary injunction.

Plaintiffs' requested relief flies in the face of Supreme Court authority, is grossly overbroad, and is premised upon conduct that has nothing to do with Mr. Han or the Han Company Defendants. Plaintiffs do not even come close to meeting their heavy burden on a motion for preliminary injunction. *First,* Plaintiffs fail to show they will suffer actual and imminent irreparable harm in the event Mr. Han's and the Han Company Defendants' assets are

---

[1] As explained below, *see infra* at p. 5, many of the references to an individual named "Han" in the Complaint are to a *different* individual with the same last name.

2

not frozen. Mr. Han maintains substantial assets in New York and there is no evidence that Mr.

Han or the Han Company Defendants have attempted to shield any of their assets to avoid a

potential monetary judgment, let alone that they would suddenly begin engaging in such conduct

in the absence of a freeze order. *Second,* Plaintiffs fail to show a likelihood of success or

sufficiently serious questions going to the merits of their claims against Mr. Han and the Han

Company Defendants. *Third*, Plaintiffs fail to make a clear showing that the balance of hardships

tips decidedly in their favor. Just the opposite is true. Plaintiffs readily admit that the only

hardship they could suffer would be their inability to fully collect on a money judgment owed by

Mr. Qin. In contrast, Mr. Han and the Han Company Defendants face potentially disastrous

effects should the Court grant the extraordinary relief sought by Plaintiffs. *Finally*, Plaintiffs fail

to make a clear showing that the preliminary injunction they seek is in the public interest.

Accordingly, the Court should reject Plaintiffs' broad and punitive asset freeze, which is

unjustified and would have a devastating impact on Mr. Han and the Han Company Defendants.

In the event the Court determines that some kind of asset freeze is appropriate, it must be

carefully limited and narrowly tailored to provide only that relief Plaintiffs have demonstrated

they are entitled to, and without which they will suffer imminent irreparable harm, and to allow

Mr. Han to continue to pay his normal living expenses.

## STATEMENT OF FACTS

Mr. Han is a citizen of the People's Republic of China and has been a resident of New

York since moving to the United States in 2018. Han Decl. ¶ 2. Neither Mr. Han nor the Han

Company Defendants were parties to the underlying CIETAC Arbitration or the Confirmation

Action. The Judgment in this case was entered against Mr. Qin and only Mr. Qin—Plaintiffs do

not have any judgment against Mr. Han or any of the Han Company Defendants.  Han Decl. ¶ 19.

Mr. Han directly or indirectly owns and controls a number of businesses in the United States and abroad, including the Han Company Defendants. Mr. Han is the sole member of QYNM. HS-QYNM is 100% owned by the QYNM Family Trust, a trust established by Mr. Han for the benefit of his children. HFRE, in turn, is 100% owned by HS-QYNM. Han Decl. ¶ 5. Mr. Qin does not have any position, ownership, or beneficial interest in any of the Han Company Defendants. Han Decl. ¶ 4.

Plaintiffs' allegation that "QYNM" is a deliberate misspelling of "Qin" is incorrect. Compl. ¶¶ 228, 291; ECF No. 10 ("Pls. Br.") at 9. "QYNM" and "HS-QYNM" are acronyms referring to Mr. Han and his four children. "QYNM" is an acronym consisting of the third letter of each of Mr. Han's four children's first names. With respect to HS-QYNM, the letter "H" refers to Mr. Han's name, and the letter "S" refers to his children's names, each of which starts with the letter "S." Han Decl. ¶ 6.

Plaintiffs make various unsupported allegations that Mr. Qin owns or resides at 377 Rector Place, Unit PH-B, New York, New York 10280 ("377 Rector Place").  Compl. ¶¶ 239 338-40; Pls. Br. at 9. 377 Rector Place is wholly owned by HFRE, which purchased the property on or about September 26, 2019 from an individual named Robert Chavez, a person then unknown to Mr. Han. Han Decl. ¶ 7.  Mr. Qin has no ownership or beneficial interest in that property. Mr. Qin does not reside—and has never resided—at 377 Rector Place. Han Decl. ¶ 8.

Neither Mr. Han nor the Han Company Defendants have any lien or other beneficial interest in 39 Applegreen Drive, Old Westbury, NY 11568 ("39 Applegreen Drive"). On or about December 29, 2020, Duo "Emma" Liu and Xuemin Liu secured a mortgage on 39

4

Applegreen Drive in the amount of $8 million with QYNM as mortgagee (the "Mortgage"). Han Decl. ¶ 12, Ex. A. On or about June 10, 2022, QYNM assigned the Mortgage to Applegreen Trust, thus extinguishing any lien or other interest QYNM had in 39 Applegreen Drive by reason of the Mortgage.[2] Han Decl. ¶ 13, Ex. B.  Both the mortgage and the assignment are public records. *See* Han Decl., Exs. A & B.

Plaintiffs allege, without support, that Mr. Han owns and operates a Singaporean company called New Lido Theatre Restaurant ("Lido"). *See* Compl. ¶¶ 3 n.3, 142; Pls. Br. at 10. This is, once again, incorrect. Mr. Han does not work for, own, or have any control over Lido. Han Decl. ¶ 17. The "Boss Han" who the Complaint and PI Motion assert owns or controls Lido is not Mr. Han. Rather, "Boss Han" appears to refer to an individual named Han Ngi Kwang. Han Decl. ¶ 18. According to business records from the Accounting and Corporate Regulatory Authority of the Government of Singapore ("ACRA"), Han Ngi Kwang, a citizen of Singapore, is a director and/or shareholder of Lido and related companies. *See* Boxer Decl. ¶¶ 2-6, Exs. A - E; *see also* Han Decl. ¶ 18. Mr. Han has no ownership interest or other interest in Lido and had no involvement in the transactions alleged in the Complaint relating to Lido. Han Decl. ¶ 18.

Plaintiffs' proposed asset freeze would cause Mr. Han, his family, and his businesses considerable financial damage.[3] While the proposed order includes a "Carve-Out Amount" of $20,000 per month (ECF No. 7-1 ("Proposed Order") ¶ 4), Mr. Han's monthly expenses far

---

[2] Plaintiffs' conclusory claims regarding Mr. Han's alleged involvement in transfers of Suites 2003 and 2009 in the Plaza Hotel, located at 1 Central Park South, New York, NY 10019 (the "Plaza Suites") are also false. *See* Compl. ¶ 331; Pls. Br. at 6-7. Mr. Han was not involved with the transfers alleged in the Complaint relating to the Plaza Suites. Nor were the Han Company Defendants. Han Decl. ¶¶ 15-16.

[3] Plaintiffs' do not appear to have taken Mr. Han's or the Han Company Defendants' financial condition into consideration, as the PI Motion focuses only on the potential burdens to Mr. Qin and Emma Liu. *See* Pls. Br. at 23, 25.

exceed this amount. Han Decl. ¶ 22. The expenses Mr. Han personally pays each month include, but are not limited to, rent for the apartment he shares with his family, tuition for his children to attend school, and food and other necessary living expenses for himself and his family. Han Decl. ¶ 22. HFRE also pays monthly taxes and fees on 377 Rector Place, which exceed $12,000 per month. Han Decl. ¶ 22; Boxer Decl. ¶ 7, Ex. F. Plaintiffs' proposed spending cap of $20,000 per month would leave Mr. Han and the Han Company Defendants unable to pay numerous bills and invoices as they become due and would even prevent them from paying their lawyers or adequately defending themselves in this litigation. Han Decl. ¶ 23.

## ARGUMENT

### POINT I
### THE SCOPE OF THE PROPOSED PRELIMINARY INJUNCTION GOES BEYOND THE COURT'S EQUITABLE POWERS, IS OVERBROAD, AND LACKS THE REQUIRED SPECIFICITY

#### A.    U.S. Supreme Court Precedent Bars Plaintiffs' Requested Injunction

The scope of Plaintiffs' Proposed Order covering *all* of defendants' assets defies the clear edict of the United States Supreme Court. Under *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), a preliminary injunction to freeze a defendant's assets pending judgment on claims for money damages is only available with respect to assets in which the moving party has a contemporaneous "lien or equitable interest." *Id.* at 310, 333; *Toray Int'l Am., Inc. v. Nakayama*, No. 14 Civ. 3016, 2014 U.S. Dist. LEXIS 190101, at *3 (S.D.N.Y. Apr. 29, 2014). This is true regardless of whether a court is sitting in law or equity: "Even when sitting as a court in equity, we have no authority to craft a 'nuclear weapon' of the law" restraining civil defendants' assets in which the movant has no lien or equitable interest. *Grupo Mexicano*, 527 U.S. at 332.

Lower courts have generally interpreted *Grupo Mexicano* to bar preliminary injunctions in cases such as this that seek primarily legal remedies, such as money judgment or damages. *See, e.g.*, *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*, 295 F. Supp. 2d 366, 388-89 (S.D.N.Y. 2003). As the *Grupo Mexicano* Court explained, a plaintiff that has not yet proven the specific defendant's liability on a legal claim is a "general creditor" that "ha[s] no cognizable interest either at law or in equity, in the property of his debtor, and therefore c[an]not interfere with the debtor's use of that property." 527 U.S. at 319-20. The Supreme Court stressed that such injunctions would "manifestly be susceptible of the grossest abuse" and that a "more powerful weapon of oppression could not be placed at the disposal of unscrupulous litigants." *Id.* at 330. Accordingly, the Supreme Court adhered to the "general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property." *Id.* at 321.

To the extent Plaintiffs argue that *Grupo Mexicano* is inapplicable because they already have a money judgment against Mr. Qin, that argument has been soundly rejected by courts in this Circuit. *See, e.g.*, *In re 650 Fifth Avenue and Related Properties*, No. 08 Civ. 10934, 2021 U.S. Dist. LEXIS 93464, at *26-31 (S.D.N.Y. May 17, 2021) (applying *Grupo Mexicano* to bar preliminary injunction sought by judgment creditor who brought action to enforce money judgment against third party); *JSC*, 295 F. Supp. 2d at 388-90; *Fischer Diamonds, Inc. v. Andrew Meyer Designs, L.L.C.*, No. 06 Civ. 2737, 2006 U.S. Dist. LEXIS 41362, at *5-6 (E.D.N.Y. June 21, 2006). In *William Passalacqua Builders v. Resnick Developers South, Inc.*, 933 F.2d 131 (2d Cir. 1991), for example, the Second Circuit held that an action seeking to enforce a money judgment against third parties alleged to be a judgment debtor's alter egos sought relief that was legal in nature. The court reasoned: "Plaintiffs…seek enforcement of a money judgment

7

obtained against [the judgment debtor]. The fact that plaintiffs seek money indicates a legal action." *Id.* at 136.

Here, the ultimate relief sought by Plaintiffs is enforcement of a money judgment against Mr. Qin's alleged alter egos. Such relief is "legal, not equitable, in nature." *JSC*, 295 F. Supp. 2d at 389; *Passalacqua*, 933 F.2d at 136; *see also DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 328-29 (E.D.N.Y. Jan. 20, 2009) (preliminary judgment seeking to freeze defendants' assets to satisfy subsequent judgment "must be seen as largely in service of [plaintiff's] claims at law"). Accordingly, the preliminary injunction requested by Plaintiffs would be "issued in aid of the collection of a money judgment, not final equitable relief, an outcome barred by *Grupo Mexicano*." *JSC*, 295 F. Supp. 2d at 389; *see also Fischer*, 2006 U.S. Dist. LEXIS 41362, at *5-6 ("Although plaintiff here has already obtained a judgment against [the judgment debtor], this circumstance does not change the legal character of the instant action against [alleged alter ego] defendants.").

There can be no dispute that the ultimate relief sought here is enforcement of a money judgment against Mr. Qin's alleged alter egos (whose liability has not been established) and is, thus, legal in nature.[4] The fact that preliminary injunctions *may* be available under Plaintiffs' statutory claims (Pls. Br. at 20) does not change the overall nature of the case. *See Coley v. Vannguard Urban Improvement Ass'n*, No. 12-CV-5565, 2016 U.S. Dist. LEXIS 172378, at *14 (E.D.N.Y. Dec. 13, 2016) ("heart" of plaintiffs' complaint is "unquestionably legal" where "it primarily seeks damages"). Moreover, Plaintiffs do not appear to be seeking a preliminary injunction under the RICO statute. *See* Compl. ¶ 424 (requesting treble damages under RICO). The remaining statutory claims are inapplicable to Mr. Han and the Company Defendants and, in

---

[4] Plaintiffs also seek treble damages under RICO. Compl. ¶ 424.

any event, do not entitle Plaintiffs to freeze assets having no connection to the alleged "sham transactions." With respect to Count 4 (GBL § 133), any claim that Mr. Han or the Han Company Defendants misused "QYNM" has been rebutted. Han. Decl. ¶6. Count 5 (N.Y. Not-for-Profit Law § 720) is not alleged against Mr. Han or the Han Company Defendants.

To the extent injunctive relief is available under NYUVTA, plaintiffs fail to establish any nexus—let along a sufficient nexus—between any assets of Mr. Han or the Han Company Defendants and the fraudulent conveyances alleged. *See, e.g., JSC*, 295 F. Supp. 2d at 389 (court lacked power to issue a preliminary injunction where "equitable relief…including the setting aside of alleged fraudulent conveyances, is incidental to, and indeed contingent upon the success of, the plaintiff's alter ego action"); *Coley*, 2016 U.S. Dist. LEXIS 172378, at *15 (denying preliminary injunction where plaintiffs failed to show "nexus between the sweeping asset freeze" sought and equitable claims).

Put simply, Plaintiffs are unable to demonstrate that either Mr. Han or the Han Company Defendants possess any assets in which Plaintiffs have a lien or equitable interest, as required by *Grupo Mexicano* and its progeny.

## B.     The Proposed Injunction Is Overly Broad and Lacks the Required Specificity

Preliminary injunctions are "required to be 'narrowly tailored to fit specific legal violations' and to avoid 'unnecessary burdens on lawful commercial activity.'" *Empresas Cablevision, S.A.B. de C.V. v. JPMorgan Chase Bank, N.A.*, 381 F. App'x 117, 118 (2d Cir. 2010) (citation omitted). Moreover, there must be a sufficient nexus between the assets plaintiffs seek to freeze and the claims asserted in the complaint. *See Dong v. Miller*, No. 16-CV-5836, 2018 U.S. Dist. LEXIS 48506, at *2-3 (E.D.N.Y. Mar. 23, 2018) (preliminary injunction overly broad where plaintiff sought to "freez[e] Defendants' assets simply to ensure that Defendants

9

will be able to satisfy a judgment"; a court may issue an injunction only where there is a "sufficient nexus" between defendants' assets and plaintiffs' equitable claims).

The relief Plaintiffs request here—a broad freeze on more than 50 defendants' assets—is overly broad and includes assets having no nexus to Plaintiffs' claims. This is plainly improper and is particularly improper with regard to the attempt to freeze all of the assets of Mr. Han and the Han Company Defendants. Indeed, there are no factual allegations that either Mr. Han or the Han Company Defendants are in possession of, or ever received, any assets in which Mr. Qin has a beneficial interest as a result of the alleged "sham" transactions detailed in the Complaint. Mr. Qin does not have any position or ownership interest in any of the Han Company Defendants. Han Decl. ¶ 4. Nor does Mr. Qin have any beneficial interest in 377 Rector Place. Han Decl. ¶ 8. Nor is there any evidence that Mr. Qin transferred assets to Mr. Han or the Han Company Defendants at all, much less for the purpose of avoiding the Judgment. To the extent QYNM had an interest in 39 Applegreen Drive as a result of the Mortgage, any such interest was extinguished on June 10, 2022 upon assignment of the Mortgage to another party that is not related to Mr. Han or the Han Company Defendants. Han Decl. ¶¶ 12-14, Exs. A & B. Moreover, the Mortgage was entered on December 29, 2020, months before the CIETAC Award, and almost two years before the Judgment, and, thus, could not be part of Mr. Qin's efforts to avoid the Judgment. *See* Han Decl., Ex. A.

Finally, the scope of the relief requested in Plaintiffs' Proposed Order is unfounded. The Proposed Order would limit Mr. Han's and the Han Company Defendants' expenses to no more than $20,000 per month and would require Mr. Han and the Han Company Defendants to secure pre-approval from Plaintiffs or the Court before engaging in any transfer, sale, assignment, or disposition of any of their assets or property. Proposed Order ¶¶ 9-10. There is no basis for such

10

a draconian and punitive remedy, especially where Plaintiffs have failed to establish any nexus between the assets sought to be frozen and their claims.

## POINT II
## PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION FREEZING MR. HAN'S AND THE HAN COMPANY DEFENDANTS' ASSETS

Because a preliminary injunction is an "extraordinary and drastic remedy," it should not be granted unless the movant, "by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (emphasis in original). Thus, to be entitled to the extraordinary remedy sought here, Plaintiffs must clearly[5] establish (i) irreparable harm; (ii) likelihood of success on the merits or sufficiently serious questions going to the merits; (iii) a balance of hardships tipped in favor of Plaintiffs—decidedly so where there are serious questions going to the merits; and (iv) that the injunction is in the public interest. *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). Plaintiffs have not established any of these elements regarding the proposed injunction against Mr. Han and the Han Company Defendants.

### A.      Plaintiffs Have Not Shown Irreparable Harm

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1998)). Accordingly, "the

---

[5] The relief sought here amounts to a mandatory preliminary injunction because it: 1) requires Mr. Han and the Han Company Defendants to affirmatively seek pre-approval from Plaintiffs or the Court before engaging in any transfer, sale, assignment, or disposition of any assets or property covered by the Proposed Order; and 2) would alter the status quo by restraining Mr. Han's and the Han Company Defendants' spending. *See Students for Fair Admissions v. U.S. Military Acad.* No. 23-CV-08262, 2024 WL 36026, at *6-7 (S.D.N.Y. Jan. 3, 2024). Mandatory preliminary injunctions require a *clear showing* that the movant is entitled to the relief sought. *Id.* at *6. In any event, Plaintiffs fail to make *any* of the required showings and thus are unable to meet even the lower standard on a prohibitory injunction.

moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Id.* To satisfy the irreparable harm requirement, Plaintiffs must show that unless the injunction they request is entered, "they will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" *Id.* (citation omitted). Plaintiffs make no such showing.

In an effort to satisfy their heavy burden, Plaintiffs argue that they will be irreparably harmed absent a freeze of Mr. Han's and the Han Company Defendants' assets because they will dissipate Mr. Qin's assets to avoid paying the Judgment. Pls. Br. at 16. Plaintiffs' claim of irreparable harm, however, is focused exclusively on Mr. Qin—not Mr. Han or the Han Company Defendants. Plaintiffs rely on *Mr. Qin*'s past conduct, statements, and efforts to avoid the Judgment. Pls. Br. at 18. Plaintiffs' also point to *Mr. Qin*'s admission of insolvency and *Mr. Qin's* guilty plea and acquiescence to removal from the United States in a criminal case. Pls. Br. at 18-19. But none of these allegations have anything to do with Mr. Han or the Han Company Defendants or any of their assets.

There is simply no indication that Mr. Han or the Han Company Defendants are dissipating Mr. Qin's assets to avoid a money judgment against Mr. Qin. Indeed, except for their conclusory and erroneous allegations regarding ownership and control of the Han Company Defendants, Plaintiffs fail to allege that Mr. Han or the Han Company Defendants *even possess* any of Mr. Qin's assets. Put bluntly, Mr. Han and the Han Company Defendants cannot dissipate what they do not have.

Additionally, Plaintiffs have not alleged that Mr. Han or the Han Company Defendants are financially insolvent or on the verge of bankruptcy. To the contrary, Mr. Han and the Han

Company Defendants maintain significant assets in New York and the United States, which belies any inference that they are currently engaged in conduct intended to hide assets from Plaintiffs. Han Decl. ¶ 21. It is well-established that speculative and unsubstantiated assertions are insufficient to support a finding of imminent dissipation of assets. *Merit Capital Grp., LLC v. Trio Indus. Mgmt., LLC*, No. 04 Civ. 7690, 2005 U.S. Dist. LEXIS 322, at *7 (S.D.N.Y. Jan. 10, 2005) ("Plaintiff's speculative and unsubstantiated assertions" failed to support finding of imminent dissipation of assets); *Dreier v. Music Makers Grp., Inc.*, No. 73 Civ. 1470, 1973 WL 399, at *2 (S.D.N.Y. June 20, 1973) (denying motion for preliminary injunction where allegation of imminent dissipation of assets was unsupported). Plaintiffs have utterly failed to support their assertion that Mr. Han or the Han Company Defendants intend to dissipate Mr. Qin's assets or otherwise evade a potential money judgment and, thus, fail to show irreparable harm.

## B.   Plaintiffs Have Not Demonstrated a Probability of Success on the Merits or Substantial Questions Regarding the Merits

To obtain the extraordinary remedy of a preliminary injunction, the moving party must come forward with evidence that it is likely to succeed on the merits on at least one of its claims against *each* of the defendants. *QBE Americas, Inc. v. Allen*, No. 22-cv-756, 2022 U.S. Dist. LEXIS 54398, at *19 (S.D.N.Y. Mar. 24, 2022). The movant cannot rest on its pleadings, "but must offer *evidence* showing that it is likely to prevail on the merits at trial." *ESPN, Inc. v. Quicksilver, Inc.*, 586 F. Supp. 2d 219, 229 (S.D.N.Y. 2008) (emphasis added); 13 Moore's Federal Practice § 65.23 [1] (3d Ed. 2010) ("Allegations contained in an unverified complaint may not be considered in support of a motion for a preliminary injunction.").

Here, Plaintiffs fail to demonstrate probability of success on the merits of any claim against Mr. Han or the Han Company Defendants or any substantial questions regarding the merits of any claims against Mr. Han or the Han Company Defendants.  Instead, Plaintiffs offer

13

only conclusory and unsupported allegations that Mr. Han or the Han Company Defendants participated in a scheme to shield Mr. Qin's assets to avoid the Judgment. Plaintiffs have made no showing whatsoever—in this Motion or elsewhere—that they are likely to succeed on the merits of any of their claims against either Mr. Han or the Han Company Defendants.

In particular, Count 1 (Disregard of Sham Transactions) is unlikely to succeed as to Mr. Han and the Han Company Defendants. Plaintiffs fail to offer any proof, let alone sufficient proof, to support the allegations that Mr. Han or the Han Company Defendants engaged in any sham transfers or that they are alter egos of Mr. Qin. Plaintiffs rely on speculation, conjecture, and innuendo to try to impute liability onto Mr. Han and the Han Company Defendants. For example, Plaintiffs assert that "the supposed transfers of Applegreen and purchase of the Penthouses are shams." Compl. ¶ 403. Plaintiffs offer no facts showing those transactions were shams or that Mr. Han or the Han Company Defendants had any involvement in those transactions.[6]

Count 2 (Declaration of Alter Ego)[7] and Count 5 (CivilAsian Foundation Is a Sham Charity) are not alleged against Mr. Han or the Han Company Defendants. Count 2 seeks a declaration that "Emma Liu, Qin, Xuemin Liu, and the various entities they control are liable for Qin's debts to Plaintiffs" and Count 5 alleges that "Liu and Qin use" the CivilAsian Foundation as a "sham charity." Compl. ¶¶ 408, 506. None of these claims have anything to do with Mr.

---

[6] Count 8 (Alternate Claim for Fraudulent Transfer) and Count 9 (Alternative Claim for Constructive Fraudulent Transfer) fail for the same reasons. Plaintiffs do not even allege—let alone offer proof—that either Mr. Han or the Han Company Defendant are in possession of, or ever received, property or assets belonging to Mr. Qin as a result of the "sham" transfers alleged in the Complaint. Nor is there any evidence that either Mr. Han or the Han Company Defendants were involved in any of these alleged transactions.

[7] In addition, Plaintiffs' claims for Declaration of Alter Ego (Count 2) and Preliminary and Permanent Injunction (Count 7) do not constitute valid causes of action because they are requests for relief.

Han or the Han Company Defendants. To the extent Plaintiffs assert Count 2 against Mr. Han or the Han Company Defendants, they offer no proof to support their allegations and the Han Declaration directly contradicts Plaintiffs' unsupported allegations that Mr. Qin has any position or ownership or other interest with or in the Han Company Defendants. Han Decl. ¶¶ 4-5. Thus, Plaintiffs cannot show a likelihood of success on the merits of Counts 2 or 5 as against Mr. Han or the Han Company Defendants.

Plaintiffs fail to show a likelihood of success on their RICO claim as against Mr. Han and the Han Company Defendants. Once again, Plaintiffs offer no proof or any specific details to support their allegations. Rather, Plaintiffs merely assert that Mr. Qin and certain of the defendants engaged in mail and wire fraud, money laundering, and obstruction of justice without providing any specific details of the alleged predicate acts. This sort of blunderbuss and conclusory pleading style is insufficient to state a RICO claim. *See DLJ Mort. Capital*, 594 F. Supp. 2d at 326 (plaintiff failed to state a claim where it "clump[ed] together the more than 20 RICO defendants" and alleged, "without any distinction among them," defendants committed all of the enumerated acts). Plaintiffs offer no basis to substantiate any claim that Mr. Han or the Han Company Defendants had any connection to or involvement with the predicate acts. Such conclusory assertions are insufficient to establish a RICO claim against Mr. Han and the Han Company Defendants. *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996).[8]

---

[8] With respect to establishing a RICO enterprise, Plaintiffs allege, at best, a "rimless hub-and-spoke" conspiracy, which has long been held by courts in this Circuit to be insufficient as a matter of law to constitute the requisite enterprise for a RICO violation. *See, e.g.*, *Dynex Corp. v. Farrah*, No. 18 CV 7072, 2019 U.S. Dist. LEXIS 89048, at *6-7 (S.D.N.Y. May 28, 2019) (there is no RICO association-in-fact "when defendant is alleged to have a relationship with a central figure, but the defendants are not *all* alleged to be connected in some overarching way"). Indeed there are no factual allegations suggesting Mr. Han and the Han Company Defendants have any

Plaintiffs have also failed to show a likelihood of success on any of the remaining causes of action as against Mr. Han and the Han Company Defendants. As to Count 4 (Violation of GBL § 133), any claim that Mr. Han or the Han Company Defendants misused "QYNM" has been rebutted. Han Decl. ¶ 6. Count 6 (Conspiracy) is also unlikely to succeed because New York does not recognize a separate claim for civil conspiracy absent an underlying tort. *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986).[9]

### C.      The Balance of Hardships Does Not Tip Decidedly in Plaintiffs' Favor

Even if the Court concludes that Plaintiffs have demonstrated sufficiently serious questions going to the merits of their claims as against Mr. Han or the Han Company Defendants, which they have not, Plaintiffs fail to demonstrate that the balance of hardships tips "decidedly" in their favor. *See, e.g.*, *Salinger v. Colting*, No. 09-2878-cv, 2010 WL 1729126, at *9 (2d Cir. Apr. 30, 2010) (where court relies upon showing of sufficiently serious question, balance of hardships must tip decidedly in plaintiff's favor). Before granting a preliminary injunction, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).

As an initial matter, Plaintiffs offer no support for their conclusory claim that they can "easily" show substantial questions on the merits. *See* Pls. Br. at 23. The PI Motion fails to identify *any* substantial questions going to the merits. Moreover, Plaintiffs readily admit that the

---

relationship with, or are even aware of, the vast majority of participants in the alleged RICO enterprise. *Id.* at *8.

[9] Even if Plaintiffs could maintain it as a separate tort, the conspiracy claim fails because the acts underlying this claim are the same as those underlying the other claims alleged in the Complaint, including the RICO conspiracy claim. *Hua Xue v. Jensen*, No. 19-CV-1761, 2020 WL 6825676, at *34 (S.D.N.Y. Nov. 19, 2020).

only harm they might suffer would be the inability to fully collect on the Judgment against Mr. Qin and on a hypothetical award of statutory damages. *See* Pls. Br. at 23. Plaintiffs have made no showing that Mr. Han or the Han Company Defendants could not satisfy a judgment, are on the brink of insolvency, or are likely to avoid enforcement of a money judgment.

In contrast, the relief Plaintiffs request would lead to considerable harm to Mr. Han and the Han Company Defendants. Plaintiffs seek to restrain *all* assets, limit expenditures to $20,000 per month,[10] and require Mr. Han and the Han Company Defendants to seek permission from Plaintiffs or the Court any time they seek to exceed the Carve-Out Amount or otherwise engage in a transaction involving assets covered by the Proposed Order. Proposed Order ¶¶ 2-4, 6-10. The proposed asset freeze would cause Mr. Han's family and his businesses considerable financial damage, as it would prohibit Mr. Han and the Han Company Defendants from making even ordinary course payments without prior authorization. Han Decl. ¶ 20, 22-23. Such a broad injunction would significantly disrupt Mr. Han and the Han Company Defendants and otherwise cause substantial hardship to both.

For the reasons set forth in the preceding paragraphs and Mr. Han's declaration, Plaintiffs' conclusory argument that "any inconvenience" to defendants as a result of the freeze would be "minimal" is incorrect. Pls. Br. at 23. Plaintiffs fail to even consider Mr. Han's or the Han Defendant Companies' financial condition in concluding that any harm to them would be "minimal." Plaintiffs' argument is premised entirely on assumptions about Mr. Qin's and Emma Liu's finances and has nothing to do with Mr. Han and the Han Company Defendants. *See* Pls. Br. at 23, 25.

---

[10] Mr. Han's monthly expenses far exceed this amount. Han Decl. ¶ 22.

17

Far from clearly tipping decidedly in Plaintiffs' favor, the balance of hardships here tip decidedly the other way. Accordingly, the Court should deny Plaintiffs' requested preliminary injunction against Mr. Han and the Han Company Defendants. *See Kraft Gen. Foods, Inc. v. Del Monte Corp.*, No. 93 CV 4413, 1993 WL 557864, at *43 (S.D.N.Y. Sept. 22, 1993) (balance of hardships weighs against party whose only (prospective) injury would be money, while other party would suffer immediate injury to its business).

### D.    The Public Interest Does Not Support an Injunction

Plaintiffs must make a clear showing that the preliminary injunction they seek is in the public interest. *See Winter*, 129 S. Ct. at 374. This showing is particularly difficult where, as here, the case involves only private parties. *See, e.g.*, *SEC v. Cavanagh*, 445 F.3d 105, 118 n.29 (2d Cir. 2006). Plaintiffs have made no such showing here.

### POINT III
### PLAINTIFFS SHOULD BE REQUIRED TO POST SIGNIFICANT SECURITY IF A PRELIMINARY INJUNCTION IS GRANTED

Rule 65(c) of the Federal Rules of Civil Procedure specifically requires that the movant post a bond in an amount determined by the Court to provide security for the payment of all "costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." *See also Grupo Mexicano*, 527 U.S. at 340-41 (1999) (Ginsburg, J., dissenting) (noting bond requirement as important safeguard). Accordingly, Rule 65(c) "allows a preliminary injunction to become effective only upon the applicant's posting of an amount that the district court determines adequate." *Corning Inc. v. PicVue Elecs.*, 365 F.3d 156, 158 (2d Cir. 2004). The Court has "wide discretion" to set the amount of a bond. *Id.* "In setting the amount of security for a preliminary injunction, the trial court should err on the high side," since "an error on the low side may produce irreparable injury." *Interlink Int'l Fin. Servs. v. Block*, 145 F. Supp. 2d 312, 318 (S.D.N.Y. 2001).

As explained above, the preliminary injunction Plaintiffs seek would result in serious hardship to Mr. Han and the Han Company Defendants, including by encumbering Mr. Han's and the Han Company Defendants' valuable assets. This would be disastrous for Mr. Han and his business. Moreover, the freeze would jeopardize Mr. Han's ability to provide for his family by encumbering his ability to make rent payments, pay tuition, and purchase other necessities. Han Decl. ¶¶ 20, 22-23. Thus, if the Court enters the requested relief, Plaintiffs should be required to post a significant bond. The bond should be in the amount of the current market value of the frozen assets, if any, including (at minimum) the current market value of 377 Rector Place, which was last listed on the market for $4.5 million. *See* Boxer Decl., Ex. F.

## CONCLUSION

For the reasons set forth above, the Court should Deny Plaintiffs' Motion for a Preliminary Injunction as to Mr. Han and the Han Company Defendants. If the requested injunction against Mr. Han and the Han Company Defendants is nonetheless granted, Plaintiffs should be required to post a bond in the amount of the current market value of the specific assets frozen.

11290640.8

Dated: New York, New York
      April 22, 2024

Respectfully submitted by,

CARTER LEDYARD & MILBURN LLP

By: _/s/ Jeffrey S. Boxer_____
       Jeffrey S. Boxer
       Madelyn K. White
       Sarah H. Ganley
28 Liberty Street, 41st Floor
New York, NY 10005
Tel. (212) 732-3200
Fax (212) 732-3232
Email boxer@clm.com/ white@clm.com/
ganley@clm.com

*Attorneys for Defendants Xueyuan Han, QYNM Family Holding LLC, HS-QYNM Family, Inc., and HFRE LLC*

20