UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HUZHOU CHUANGTAI RONGYUAN INVESTMENT MANAGEMENT PARTNERSHIP; HUZHOU HUIHENGYING EQUITY INVESTMENT PARTNERSHIP; and HUZHOU HUIRONGSHENG EQUITY INVESTMENT PARTNERSHIP,

    Plaintiffs,

-v.-

JUDGMENT-DEBTOR HUI QIN, a/k/a MUK LAM LI, LI MUK LAM, HUI HUI QIN, KARL QIN, and HUI QUIN; DUO LIU, a/k/a EMMA LIU; XUEMIN LIU; RUOLEI LIU; XUEYUAN HAN, a/k/a HANK HAN; HANGYUAN ZHANG; BRYN MAWR; TRUST COMPANY OF DELAWARE; TRIDENT TRUST COMPANY; ST. TOME LLC; ST. FORTUNE GROUP LLC; LUXURY TEAM, INC.; ST. GRAND CEREMONY LLC; KING FAME TRADING (BVI); PH2003 UNIT LLC; APPLEGREEN LLC; LUBAN CONSTRUCTION INC.; HUDSON GROUP LLC; GOLDEN PEGASUS LLC; GOLDEN LITTLE ELEPHANT INC.; GOLDEN KIRIN LLC; HARUSHIO LLC; GOLDEN LITTLE DRAGON; GOLDEN MERMAID LLC; HATAKAZE LLC; QYNM FAMILY HOLDING LLC; HS-QYNM FAMILY, INC.; QIN FAMILY TRUST; I LOVE GLE TRUST; APPLEGREEN FAMILY TRUST; MASTERPIECE HOLDING GROUP LTD.; NEW LAND CAPITAL LLC; YOUYORK MANAGEMENT LLC; GOLDEN LAND FUNDS LLC; MAXIM CREDIT GROUP LLC; HFRE, LLC; and JOHN AND JANE DOES 1-20,

    Defendants.

24 Civ. 2219 (KPF)

**ORDER MODIFYING PRELIMINARY INJUNCTION**

---

KATHERINE POLK FAILLA, District Judge:

8691436.3

The joint letter-motion of Duo Liu a/k/a Emma Liu ("Liu"), St. Grand Ceremony LLC ("St. Grand") and PH2003 Unit LLC ("PH2003," and collectively with Liu and St. Grand, the "Liu Parties") and Richard J. McCord, Esq. (the "Trustee"), as chapter 7 trustee of the estate of Hui Qin (the "Debtor/Defendant") came on for hearing before this Court.

On April 26, 2024, the Court entered an order (Dkt. #95, "Preliminary Injunction") granting a motion ("Preliminary Injunction Motion") filed by Huzhou Chuangtai Rongyuan Investment Management Partnership, Huzhou Huihengying Equity Investment Partnership, and Huzhou Huirongsheng Equity Investment Partnership (collectively, "Plaintiffs") and imposing a preliminary injunction against the defendants listed in Exhibit A to the Preliminary Injunction, which include the Liu Parties and the Debtor/Defendant.

On May 8, 2024, the Debtor/Defendant filed a voluntary petition for relief under chapter 7 (the "Chapter 7 Case") of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court"). Richard J. McCord, Esq. was appointed as Chapter 7 trustee in the Chapter 7 Case ("Trustee" and, together with the Liu Parties, "Parties").

One of several appeals of the Preliminary Injunction pending before the Second Circuit Court of Appeals is captioned *Huzhou Chuangtai Rongyuan Investment Management Partnership v. Liu*, CA2, 2024-cv-01282 ("Injunction Appeal"). The Injunction Appeal includes an interlocutory appeal of the Preliminary Injunction. On June 27, 2024, the Second Circuit entered an order staying the Injunction Appeal and several motions pending for decision within that appeal. *See* Injunction Appeal Dkt. # 40.1 (2d Cir. Jun. 27, 2024) ("Defendant Qin's bankruptcy petition automatically operates to stay this appeal pursuant to 11 U.S.C. § 362(a)(1).").

8691436.3

On July 2, 2024, this Court entered an Order (Dkt. # 163, "Stay Order") staying this action "in deference to Mr. Qin's bankruptcy proceeding in the Eastern District of New York."

St. Grand holds title to real property located at and known as One Central Park South, Unit 2009 ("Unit 2009").  PH2003 holds title to real property located at and known as One Central Park South, Unit 2003, New York, NY 10019 ("Unit 2003").  *I*t is alleged in the complaint filed by the Plaintiffs in this action that even with title to Unit 2009 being in the name of St. Grand and title to unit 2003 being in the name of PH2003, the Debtor/Defendant holds an alleged property interest in Unit 2009 and Unit 2003, with the Trustee also asserting the same.  The Liu Parties dispute those allegations.

Notwithstanding those disputes, the Trustee and the Liu Parties engaged in lengthy discussion to arrive at an agreement that would place the Apartments on the market for sale, with any litigation over entitlement to net proceeds from such sale(s) deferred.  The Liu Parties and the Trustee originally entered into a proposed settlement agreement in September 2024 which, after objection by the first mortgagee on the Apartments, the Bankruptcy Court denied approval of that agreement without prejudice.

On June 4, 2025, Precedent Asset Management 4B, LLC (the "PAM 4B"), the first mortgagee on the Apartments, filed in the Bankruptcy Court a *Motion For Determination of Inapplicability of the Automatic Stay, or, in the Alternative, Relief From The Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) and (2)* (the "PAM 4B Stay Relief Motion") [Bankr. 24-41955-ess, ECF Doc. No. 178], which motion was joined by the Residential Board of Managers of the Plaza Condominium (the "Board") through its *Joinder of the Residential Board of Managers of the Plaza Condominium to the Motion* [Bankr. 24-41955-ess, ECF Doc. No. 187] (the "Joinder).

The Trustee filed an objection to the PAM 4B Motion and Joinder. *See* Bankr. 24-41955-ess, ECF Doc. No. 192 (the "Trustee Objection").

On July 18, 2025, the Trustee filed with the Bankruptcy Court, by Notice of Presentment, a motion in the Bankruptcy Court under Bankruptcy Rule 4001(d) seeking entry of an order approving a stipulation (the "Stipulation") by and among the Liu Parties and the Trustee to modify the Section 362(a)(1) automatic stay recognized by this Court [Bankr. 24-41955-ess, ECF Doc. No. 195] (the "Trustee Stay Relief Motion"). On August 4, 2025, PAM 4B filed an objection to the Trustee Stay Relief Motion. *See* Bankr. 24-41955-ess, ECF Doc. No. 201 (the "PAM 4B Objection").

Thereafter, respective counsels to the Trustee, the Liu Parties, PAM 4B and the Board (collectively, the "Parties") engaged in extensive discussions to resolve the issues in the PAM 4B Motion, the Joinder, the Trustee Objection, the Trustee Stay Relief Motion and the PAM 4B Objection. As a result of those negotiations, the Parties entered into two separate proposed consent orders, one resolving the PAM 4B Stay Relief Motion and Joinder (the "PAM 4B Stay Relief Consent Order") and one resolving the Trustee Stay Relief Motion (the "Trustee Stay Relief Consent Order"). After several hearings before the Bankruptcy Court, on October 2, 2025, the Bankruptcy Court entered an order approving and adopting the PAM 4B Stay Relief Consent Order. *See* Bankr. 24-41955-ess, ECF Doc. Nos. 222 and 223. Thereafter, on October 14, 2025, the Bankruptcy Court entered the Trustee Stay Relief Consent Order. *See* Bankr. 24-41955-ess, ECF Doc. No. 226. Those orders were entered without objection by creditors and parties in interest in the Bankruptcy Case, including, but not limited to the Plaintiffs. The foregoing stay relief orders, including the Stipulation (collectively, the "Stay Relief Orders") are annexed hereto as Exhibit "A."

Taken together, the Stay Relief Orders encapsulate the agreements between the Parties, that include, but are not limited to, the following provisions directly applicable to a sale of the Apartments:[1]

(i) The automatic stay under Section 362(a)(1) of the Bankruptcy Code will be modified to permit the Liu Parties and the Trustee to seek relief consistent with the terms of the Preliminary Injunction to permit a sale process for the Apartments to move forward, with the Net Proceeds (defined below) of sale to be placed into escrow with the Trustee.

(ii) The automatic stay under Section 362(a)(1) of the Bankruptcy Code has been modified to permit PAM 4B and the Board to foreclose PAM 4B's first mortgage and the Board's lien on the Apartments;

(iii) "Net Proceeds" being expressly defined as meaning the proceeds from "any sale of the Apartments as used in seeking relief from this Court or any other Court concerning a sale of the Apartments does and shall mean only that amount of sale proceeds remaining after (i) payment of all Customary and Ordinary Closing Costs[2] for the sale of real property interests in the State of New York for residential properties similar in size and value of the Apartments incurred or required to close on a sale of the Apartments immediately at closing

---

[1] To the extent there is any inconsistency between the Stay Relief Orders and the description above, the Stay Relief Orders shall control.

[2] "Customary and ordinary closing costs" includes the following: (i) the Real Estate Transfer Tax due to the State of New York, the Real Property Transfer Tax due to the City of New York, and any other real property transfer tax due to the City or State of New York (including, but not limited to, the so-called "mansion tax" and "supplemental tax"), payable under applicable law or under a purchase and sale agreement in connection with the sale of the Apartments by the Owners as sellers; (ii) all broker fees and commissions owing on account of the sale(s) of the Apartments, and (iii) other closing costs including, but not limited to condominium common charges and fees, title closing fees, real property taxes, valid liens owed with respect to the Apartments, any fees charged by the any escrow agent, and other similar closing related fees.

8691436.3

of any sale of the Apartments, including but not limited to customary closing costs such as any and all broker's fees and commissions, and all legal fees related to the sale and closing of the sale of the Apartments; (ii) payment in full of any and all outstanding real estate taxes owed as of the closing on any sale of the Apartments; (iii) PAM 4B being paid in full (including, without limitation, PAM 4B's reasonable attorneys' fees and costs), in first priority as the first lienholder, immediately at closing of any sale of the Apartments, with the amount sufficient to repay the Loan being paid directly to the PAM 4B at closing and not into escrow, which amount shall be comprised of (a) the amounts stated above that are due as of the Payoff Calculation Date, and (b) all valid amounts arising under the Loan Documents from the Payoff Calculation Date through and including the closing of the sale of the Apartments; (iv) the Board being paid in full, in an amount sufficient to repay all valid and undisputed amounts open as of the date of closing on the Apartments, immediately at closing of any sale of the Apartments; and (v) payment in full, or reservation in a separate account, immediately at closing of any sale of the Apartments, of any amounts necessary to pay in full any other liens against the Apartments existing as of the closing of any sale of the Apartments.

(iv) PAM 4B and the Board shall be apprised of all offers received from prospective purchasers of the Apartments during the sale process, and in all events, shall be advised of a scheduled closing date(s) no later than twenty-one (21) days prior to such date(s) scheduled.

8691436.3

(v) the Liu Parties and Trustee shall use their best efforts to cooperate in and effectuate a sale of the Apartments on or before December 31, 2025, and meet the following milestones in connection with those efforts (the "Sale Milestones"):

   a. the Trustee has filed by notice of presentment under Federal Rule of Bankruptcy Procedure 4001(d) a proposed stay relief order granting the Trustee and Owners relief from the automatic stay ("362(a)(1) Stay Relief Order"), to seek a modification of that certain Order Granting Preliminary Injunction entered on April 26, 2024 (the "PI Order"), in the action captioned *Huzhou Chuangtai Rongyuan Investment Management Partnership, et al. v. Hui Qin a/k/a Muk Lam Li, Li Muk Lam, Hui Hui Qin, Karl Qin and Hui Quin, et al.*, pending in the United States District Court, Southern District of New York, bearing Case No. 1:24-cv-02219-KPF (the "SDNY Action"), to permit a sale of the Apartments in accordance with this Order, and to permit payment to PAM 4B and the Board immediately at closing from the proceeds of the sale of the Apartments, the amount sufficient to repay all amounts open as of the date of closing in full;

   b. upon this Court granting stay relief in accordance with paragraph (i) above, and on or before three (3) business days after entry of a 362(a)(1) Stay Relief Order, the Trustee and/or the Liu Parties shall file a motion in the SDNY Action seeking an order modifying the PI Order to permit a sale of the Apartments and to pay to PAM 4B and the Board immediately at closing from the proceeds of the sale of the Apartments the amount sufficient to repay the open amounts in full (the "PI Modification Order"),

8691436.3

      c.  upon the court in the SDNY Action entering a PI Modification Order, within three (3) business days thereafter, the Trustee shall file a motion (the "Sale Procedures Motion") with this Court for approval of the retention of a real estate broker for any and all interests the Estate has or may have in the Apartments, with PAM 4B and the Board reserving all rights to object to such retention and the sale procedures and the form of order granting the Sale Procedures Motion (the "Sale Procedures Order"),

      d.  upon entry of the PI Modification Order, and on or before October 15, 2025, the Apartments shall be placed on the market for sale in accordance with this Order, with such sale to be governed by this Order, the PI Modification Order and the Sale Procedures Order, and

      e.  the closing of the sale of the Apartments shall occur on or before December 31, 2025 (the "Closing Deadline"), with PAM 4B and the Board being paid in full, immediately at closing, with the amount sufficient to repay all valid and undisputed amounts outstanding at the closing being paid directly to PAM 4B and the Board or its designee at closing and not into escrow, and with the remaining Net Proceeds (defined below) being distributed in accordance with further order of this Court.

(vi)    that nothing in the Stay Relief Orders shall constitute a determination that (i) the Debtor does or does not have any legal or equitable interest in the Apartments, or (ii) the Apartments or the proceeds of the sale of the Apartments constitute or does not constitute property of the Debtor's Estate.

(vii)   that PAM 4B has a perfected, unavoidable lien and security interest in the Apartments, and that upon a sale of the Apartments, all valid amounts payable

    to PAM 4B shall be deemed allowed and payable at closing without the need for further approval of this Court, and PAM 4B shall not be required to file a proof of claim in this case to receive payment upon sale of the Apartments or otherwise.

(viii)  the automatic stay is hereby modified to permit the Trustee and/or the Liu Parties to seek such relief in the District Court provided that the Net Proceeds from the sale of Unit 2003 and Unit 2009 be "placed in a blocked account or other trust or escrow account requiring [District] Court approval for further transfers, sales, assignments, or dispositions to the Enjoined Defendants or others." (quoting Preliminary Injunction Order, ¶ 11).

(ix)  Each of the Liu Parties and the Trustee agree that they shall not seek the release to it or any of the other Enjoined Defendants (as defined in the Preliminary Injunction Order) of the Net Proceeds from the sale of Unit 2003 and/or Unit 2009 under paragraph 12 of the Preliminary Injunction Order prior to three (3) months from the date of the District Court's lifting of the Preliminary Injunction Order. Also, nothing in the Stipulation may or shall be construed to prohibit any of the Liu Parties and/or the Trustee, promptly following entry of an order approving the Stipulation, from seeking any relief from the District Court in connection with paragraphs 5 and 6 of the Preliminary Injunction Order and the proceeds from the sale of Unit 2003 and/or Unit 2009.

(x)  In the event the District Court permits the sale of Unit 2003 and/or Unit 2009 under the Preliminary Injunction Order, or other terms and conditions imposed by the District Court, then the Liu Parties and the Trustee shall, prior to the

effectuation of such sale, seek further relief from the Bankruptcy Court to the extent the proposed sale process involves the Trustee and the Debtor's Estate in any capacity beyond those discussed in paragraphs 1 and 2 of the Stipulation.

Following entry of the Stay Relief Orders, the Liu Parties and the Trustee filed a joint letter-motion seeking partial modification of the Preliminary Injunction consistent with the provisions of the Stay Relief Orders, including the framework for listing the Apartments for sale. The letter-motion provides that the proposed order presented with the letter-motion was reviewed and approved by each of the Parties prior to the filing of the Letter Motion. As provided for in Paragraph 12 of the Preliminary Injunction, the letter motion and proposed order were provided to counsel to the Plaintiffs on Friday, October 24, 2025, with the request for entry of the order set for Tuesday, October 28, 2025, the second business day after notice of the letter-motion was provided. Having considered the letter-motion and the Stay Relief Orders, and good cause appearing, the Court hereby GRANTS the letter-motion.

IT IS HEREBY ORDERED THAT:

1. The Preliminary Injunction is modified to allow the Liu Parties in consultation with the other Parties to sell the Apartments consistent with the provisions of the Stay Relief Orders which are adopted and incorporated herein. Nothing herein shall modify any terms of the Stay Relief Orders.

2. The Parties shall be permitted to deduct from the gross proceeds of sale of the Apartments (i) payment of all Customary and Ordinary Closing Costs[3] for the sale of real property

---

[3] "Customary and ordinary closing costs" includes the following: (i) the Real Estate Transfer Tax due to the State of New York, the Real Property Transfer Tax due to the City of New York, and any other real property transfer tax due to the City or State of New York (including, but not limited to, the so-called "mansion tax" and "supplemental tax"),

interests in the State of New York for residential properties similar in size and value of the Apartments incurred or required to close on a sale of the Apartments immediately at closing of any sale of the Apartments, including but not limited to customary closing costs such as any and all broker's fees and commissions, and all legal fees related to the sale and closing of the sale of the Apartments; (ii) payment in full of any and all outstanding real estate taxes owed as of the closing on any sale of the Apartments; (iii) PAM 4B being paid in full (including, without limitation, PAM 4B's reasonable attorneys' fees and costs), in first priority as the first lienholder, immediately at closing of any sale of the Apartments, with the amount sufficient to repay the Loan being paid directly to the PAM 4B at closing and not into escrow, which amount shall be comprised of (a) the amounts stated above that are due as of the Payoff Calculation Date, and (b) all valid amounts arising under the Loan Documents from the Payoff Calculation Date through and including the closing of the sale of the Apartments; (iv) the Board being paid in full, in an amount sufficient to repay all valid and undisputed amounts open as of the date of closing on the Apartments, immediately at closing of any sale of the Apartments; and (v) payment in full, or reservation in a separate account, immediately at closing of any sale of the Apartments, of any amounts necessary to pay in full any other liens against the Apartments existing as of the closing of any sale of the Apartments.

       3.      All Customary and Ordinary Closing Costs are to be reasonable and documented, with such documentation provided to the Parties and the Plaintiffs ten (10) days prior to closing of the sale, and any Party and/or the Plaintiffs shall have until three (3) days prior to same to object to

---

payable under applicable law or under a purchase and sale agreement in connection with the sale of the Apartments by the Owners as sellers; (ii) all broker fees and commissions owing on account of the sale(s) of the Apartments, and (iii) other closing costs including, but not limited to condominium common charges and fees, title closing fees, real property taxes, valid liens owed with respect to the Apartments, any fees charged by the any escrow agent, and other similar closing related fees.

the reasonableness of such Customary and Ordinary Closing Costs. In the event of an objection, such expenses shall not be paid from the gross proceeds until the dispute is resolved consensually or by this Court.

4. The Net Proceeds of sale remaining after the satisfaction of the amounts in Paragraph 2, subject to Paragraph 3 above, shall be placed into a separate escrow account held by the Trustee ("Trustee Escrow"). The remaining funds in the Trustee Escrow shall only be released pursuant to (i) to terms of this Order, and (ii) any further order of any court of competent jurisdiction.

5. Consistent with paragraphs 5 and 6 of the Preliminary Injunction, the Liu Parties shall be permitted to use from the Net Proceeds of sale up to $25,000.00 in the aggregate amount per month to pay the following routine expenses to their legitimate creditors, with disclosure of each payment to the Trustee and Plaintiffs in writing: (i) tuition for minor children; (ii) legal fees; (iii) mortgage payments to banks; (iv) health insurance; (v) summer camp for minor children; and (vi) insurance payments on any currently in-force policies insuring property (collectively, "Expenses Funding").

6. From the Net Proceeds, at or within three days after the closing on the sale of the Apartments, the sum of $75,000.00 shall be transferred to and held by Nixon Peabody LLP, counsel to the Liu Parties. Nixon Peabody will be the escrow agent responsible for actually disbursing such monies to or for the benefit of the Liu Parties. When the amount held by Nixon Peabody is reduced to under $10,000.00, Nixon Peabody, on behalf of the Liu Parties, may request an additional $75,000.00 from the Trustee from the Trustee Escrow for the subsequent three-month period.

7.  Consistent with the above provisions, the logistics and mechanics for the Liu Parties' subsequent withdrawal in $75,000.00 increments from the Trustee Escrow of the Expenses Funding shall be as agreed between the Liu Parties and the Trustee, on notice to the Plaintiffs.

8.  Consistent with the Stipulation, neither the Liu Parties nor the Trustee shall move, within three months of entry of this Order, for an order granting release of the Net Proceeds in the Trustee Escrow from the sale of the Apartments beyond the Expenses Funding.

9.  Subject to the foregoing paragraph, this Order is issued without prejudice to the Parties seeking further, additional, or different relief as appropriate, including further equitable or legal relief.

10. Except as modified herein, the Preliminary Injunction remains in full force and effect, and this Order shall continue in full force and effect, in both cases until terminated or modified by this Court.

11. This Order shall become immediately effective upon its entry.

SO ORDERED.

Dated: October 29, 2025
       New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

8691436.3